UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

TUFAMERICA, INC.,                                  :

               Plaintiff,           :        Case No. 12 CV 3529 (AJN)

                          :

         v.                                        :

MICHAEL DIAMOND, ADAM HOROVITZ,      :
and ADAM YAUCH, p/k/a BEASTIE BOYS,
UNIVERSAL MUSIC PUBLISHING, INC.,          :
UNIVERSAL MUSIC PUBLISHING GROUP,      :
BROOKLYN DUST MUSIC, and CAPITOL
RECORDS, LLC,                                        :

              Defendants.          :

------------------------------------------------------------x

## REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
  Theodore C. Max, Esq. (TM-1742)
  Kenneth B. Anderson, Esq. (KA-9923)
  30 Rockefeller Plaza
  New York, New York 10112-0015
  (212) 635-8700
  *Attorneys for Defendants Michael Diamond,*
  *Adam Horovitz and Adam Yauch, p/k/a*
  *Beastie Boys, Brooklyn Dust Music and*
  *Capitol Records, LLC*

## **Table of Contents**

ARGUMENT ..................................................................................................................1

I.  PLAINTIFF TUFAMERICA'S ADMISSIONS THAT THE ALLEGED
    INFRINGEMENTS WERE "EFFECTIVELY CONCEALED" AND CAN ONLY
    BE HEARD AFTER "CAREFUL AUDIO ANALYSIS" AND DISSECTION
    MANDATE DISMISSAL OF THE AMENDED COMPLAINT ......................................2

II. DEFENDANTS APPLIED THE PROPER "SUBSTANTIAL SIMILARITY"
    TEST, WHICH, BASED UPON THE ADMISSIONS AND THE DE MINIMIS
    ALLEGED USES BY DEFENDANTS, REQUIRES DISMISSAL OF THE
    AMENDED COMPLAINT ..........................................................................................5

    A.  Plaintiff Concedes That Portions Allegedly Taken From Musical
        Compositions "Say What," "Let's Get Small," And "Good To Go" Are
        Not Copyrightable.............................................................................................6

    B.  Plaintiff's Allegations That Defendants Misapplied The Substantial
        Similarity Analysis Are Incorrect As A Matter Of Law And Fact ......................7

    C.  Even Under the Fragmented Literal Similarity Analysis, Plaintiff's Claims
        Fail ...................................................................................................................9

        1.  "Say What" And "Shadrach" Are Not Substantially Similar ....................9

        2.  "Drop the Bomb" And "Car Thief" Are Not Substantially Similar...........10

        3.  "Drop the Bomb" And "Hold It Now Hit It" Are Not Substantially
            Similar...................................................................................................12

        4.  "Drop the Bomb" And "New Style" Are Not Substantially Similar .........12

        5.  "Let's Get Small" And "Hold It Now Hit It" Are Not Substantially
            Similar...................................................................................................12

        6.  "Good to Go" And "B-Boy Bouillabaisse/A.W.O.L." Are Not
            Substantially Similar..............................................................................13

III. UNDER EITHER THE INJURY RULE OR DISCOVERY RULE, PLAINTIFF'S
     CLAIMS SHOULD BE LIMITED TO MAY 9, 2009 ....................................................13

CONCLUSION.............................................................................................................15

TABLE OF AUTHORITIES

Page(s)

Cases

Arnstein v. Porter
    154 F.2d 464 (2d Cir. 1946).................................................................................8

Chivalry Film Prods. v. NBC Universal, Inc.
    05 Civ. 5627 (GEL), 2006 U.S. Dist. LEXIS 1177 (S.D.N.Y. Jan. 11, 2006) .......................14

Dam Things From Denmark v. Russ Berrie & Co.
    290 F.3d 548 (3d Cir. 2002)..................................................................................4

EMI Records Ltd. v. Premise Media Corp. L.P.
    No. 601209/08, 2008 WL 5027245 (N.Y. Sup. Ct., N.Y. Cty. Aug. 08, 2008) ....................13

Gottwald v. Jones
    No. 11 Civ. 1432 (CM) (FM), 2011 U.S. Dist. LEXIS 103414 (S.D.N.Y. Sept. 12,
    2011) .......................................................................................................4, 8, 11

Gund, Inc. v. Russ Berrie & Co.
    701 F. Supp. 1013 (S.D.N.Y. 1988)....................................................................3, 4

Harold Lloyd Corp. v Witwer
    65 F.2d 1 (9th Cir. 1933) ....................................................................................4

Jackson v. Marion Cnty.
    66 F.3d 151 (7th Cir. 1995) .................................................................................2

Jean v. Bug Music, Inc.
    No. 00 Civ. 4022 (DC), 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002)...............................8, 11

Laureyssens v. Idea Grp., Inc.
    964 F.2d 131 (2d Cir. 1992).................................................................................8

Lessem v. Taylor
    766 F. Supp. 2d 504 (S.D.N.Y. 2011)....................................................................11

Merchant v. Levy
    92 F.3d 51 (2d Cir. 1996)...................................................................................14

Newton v. Diamond
    388 F.3d 1189 (9th Cir. 2003), cert. denied, 519 U.S. 114 (2005) ...............................10

Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.
    602 F.3d 57 (2d Cir. 2010)..............................................................................2, 8, 9

Pyatt v. Raymond
    No. 10 Civ. 8764 (CM), 2011 U.S. Dist. LEXIS 55754 (S.D.N.Y. May 19, 2011) ...............11

Ringgold v. Black Entm't Television, Inc.
    126 F.3d 70 (2d Cir. 1997) ........................................................................................5

Sandoval v. New Line Cinema Corp.
    147 F.3d 215 (2d Cir. 1998) ..........................................................................5, 6, 8, 11

Sapon v. DC Comics
    00 Civ. 8992 (WHP), 2002 U.S. Dist. LEXIS 5395 (S.D.N.Y. Mar. 28, 2002) ......................14

Saregama India Ltd. v. Mosely
    687 F. Supp.2d 1325 (S.D. Fla. 2009), aff'd,
    635 F.3d 1289 (11th Cir. 2010) ............................................................................ passim

Sportsman's Warehouse, Inc. v. Fair
    576 F. Supp.2d 1175 (D. Colo. 2008) ...........................................................................4

Stone v. Williams
    970 F.2d 1043 (2d Cir. 1992) ...................................................................................14

Suthers v. Amgen Inc.
    441 F. Supp. 2d 478 (S.D.N.Y. 2006) ...........................................................................2

Tuff 'N Rumble Mgmt. v. Profile Records
    No. 95 Civ. 0246 (SHS), 1997 U.S. Dist. LEXIS 4186 (S.D.N.Y. Apr. 2, 1997) ....................4

Urbont v. Sony Music Entm't
    863 F. Supp. 2d 279 (S.D.N.Y. 2012) .........................................................................14

Williams v. Broadus
    No. 06 Civ. 5533 (MBM), 2001 U.S. Dist. LEXIS 12894 (S.D.N.Y. Aug. 24, 2001) ........8, 11

Worlds of Wonder, Inc. v. Vector Intercontinental, Inc.
    653 F. Supp. 135 (N.D. Ohio 1986) .............................................................................3

Statutes

17 U.S.C. § 101 .......................................................................................................12

## Preliminary Statement

Plaintiff TufAmerica, Inc.'s Memorandum of Law In Opposition To Defendants' Motion To Dismiss[1] ignores the law most pertinent to this Court's analysis and falsely claims that Defendants' Motion To Dismiss misreads both the Complaint and Amended Complaint.  No matter how much Plaintiff engages in factual and legal gymnastics to distance itself from its prior judicial admissions, Plaintiff cannot escape the fact that the admissions in its Complaint and Amended Complaint are fatal to its claims.  Nevertheless, even if this Court ignores Plaintiff's fatal admissions, the application of the substantial similarity test to Plaintiff's allegations demonstrates that the Amended Complaint should be dismissed.

## ARGUMENT

Plaintiff TufAmerica's response to Defendants' Motion to Dismiss is most noteworthy for what it fails to do.  First, Plaintiff does not refute the factual and judicial admissions contained in the Complaint and Amended Complaint.  Second, Plaintiff does not challenge, and in fact concedes, that the issue of substantial similarity can be resolved on a motion to dismiss.  Third, with respect to a number of its copyright claims, Plaintiff fails to rebut, and in fact concedes, that Defendants' arguments are correct with respect to musical compositions, taking exception only with respect to Defendants' arguments as to sound recordings.

Plaintiff claims that:  (1) Plaintiff's admissions in the Complaint and Amended Complaint are not controlling because "the works themselves supersede and control contrary descriptions of them"; (2) Defendants incorrectly confuse a "casual listener" with an "ordinary observer" and misread Plaintiff's Complaint and Amended Complaint; (3) Defendants fail to mention or apply the "fragmented literal similarity" test, which is controlling; and

---

[1]    Plaintiff's Memorandum Of Law In Opposition To Defendants' Motion To Dismiss is referred to herein as "Opp."

(4) Defendants' motion with respect to the statute of limitations should be denied, without

prejudice, because the "discovery rule" should apply.  Each of Plaintiff's contentions is without

merit.

I.  **PLAINTIFF TUFAMERICA'S ADMISSIONS THAT THE ALLEGED INFRINGEMENTS WERE "EFFECTIVELY CONCEALED" AND CAN ONLY BE HEARD AFTER "CAREFUL AUDIO ANALYSIS" AND DISSECTION MANDATE DISMISSAL OF THE AMENDED COMPLAINT**

Plaintiff's admissions are binding as factual and legal admissions.  See Suthers v. Amgen

Inc., 441 F. Supp. 2d 478, 482 (S.D.N.Y. 2006) (quoting Jackson v. Marion Cnty., 66 F.3d 151,

153 (7th Cir. 1995) ("[A] plaintiff can plead himself out of court by alleging facts which show

that he has no claim, even though he was not required to allege those facts.")).  Plaintiff cites

Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 64 (2d Cir. 2010), for the

proposition that, even if the allegations in the Complaint and Amended Complaint are considered

admissions, these admissions are not controlling because "the works themselves supersede and

control contrary descriptions of them."  Opp., p. 6.  Peter F. Gaito is inapposite because in that

case, the plaintiff made no admissions.  Rather, the plaintiff made certain purportedly self-

serving allegations describing its copyrighted work that had been allegedly infringed by the

defendant's work.  In contrast, the allegations in TufAmerica's Complaint are admissions against

its own interest which do not describe the works but instead go to the issue of substantial

similarity.  That distinction is key to the determination of this motion.  Jackson v. Marion Cnty.,

66 F.3d at 153, is on point.  In that case, the plaintiff, as here, pleaded facts which it believed

were necessary to plead its prima facie case, but which under applicable law constituted fatal

admissions against its own interest.

Plaintiff now contends its repeated admissions that "[t]he manner in which the

[TufAmerica] sample was incorporated as part of the words and music that make up the [Beastie

Boys'] recording effectively concealed to the casual listener the fact that the [TufAmerica]

Sample was part of the [Beastie Boys' recording]" do not refer to the "ordinary observer" or

anything of the sort but instead refer to someone who "lacks a high degree of interest" in what he

or she is hearing and who does not devote the same level of attention as the "ordinary observer"

or "average observer." Opp., p. 2-3. Plaintiff further contends that its repeated admissions that

"[o]nly after conducting a careful audio analysis . . . that included isolating the suspected portion

of the recording and comparing it with various parts of [the Beastie Boys' work] . . . was

TufAmerica able to determine that [the Beastie Boys' work] incorporates [the TufAmerica

work]" are consistent with the "ordinary listener" test and that "careful audio analysis is simply

another way of saying 'listening.'" Opp., p. 3.

Plaintiff's argument is both inconsistent with the plain meaning of the words and

nonsensical. Plaintiff admits that to "the casual listener," the words and music were "effectively

concealed," and repeats this allegation four times in the Complaint. This allegation would be

meaningless if the "casual listener" "simply is not devoting the same level of attention as is the

'ordinary observer' or 'average observer'" and if the "casual observer" has no relevance in the

context of the Complaint's copyright claims. Moreover, Plaintiff failed to effectively rebut the

cases cited by Defendants which equate the casual listener with the ordinary observer. In Worlds

of Wonder, Inc. v. Vector Intercontinental, Inc., 653 F. Supp. 135, 139-40 (N.D. Ohio 1986), the

two terms were used interchangeably. In Gund, Inc. v. Russ Berrie & Co., 701 F. Supp. 1013,

1019-20 (S.D.N.Y. 1988), Judge Grubin referred to the "casual observer" as the average person

as opposed to the Court. These cases are by no means isolated and the "casual observer" has

been cited in many other copyright cases in discussing substantial similarity.[2]  Moreover,

Plaintiff's equating its "careful audio analysis" of isolated portions with the ordinary observer

test misstates the substantial similarity test.  It is well established that the ordinary observer test

forbids "careful audio analysis" of the sort alleged in the Complaint, "includ[ing] isolating the

suspected portion of the recording and comparing it" with portions of musical compositions and

sound recordings. See Tuff 'N Rumble Mgmt. v. Profile Records, No. 95 Civ. 0246 (SHS), 1997

U.S. Dist. LEXIS 4186, at *16 (S.D.N.Y. Apr. 2, 1997) ("ordinary observer test" requires

looking at the work as a whole and does not either mandate or require a dissection of the work

into its constituent elements or features or enhancing the recordings); Saregama India Ltd. v.

Mosely, 687 F. Supp.2d 1325, 1338 (S.D. Fla. 2009), aff'd, 635 F.3d 1289 (11th Cir. 2010);

Gund, Inc. v. Russ Berrie & Co., 701 F. Supp. at 1021 ("[D]issection of dissimilarities is

inappropriate because it distracts a reasonable observer from a comparison of the total concept

and feel of the works.") (quoting Aliotti v. R. Dakin & Co., 831 F.2d 898, 901 (9th Cir. 1987));

Gottwald v. Jones, No. 11 Civ. 1432 (CM) (FM), 2011 U.S. Dist. LEXIS 103414, at *10, *17

(S.D.N.Y. Sept. 12, 2011) ("dissection and expert testimony are irrelevant" because the test for

unlawful appropriation is the "response of the ordinary lay observer").

---

[2]      See, e.g., Dam Things From Denmark v. Russ Berrie & Co., 290 F.3d 548, 565 (3d Cir. 2002) (troll dolls "are substantially similar in appearance, and a casual observer would be unable to differentiate the maker of these troll dolls"); Harold Lloyd Corp. v Witwer, 65 F.2d 1, 23 (9th Cir. 1933) ("[I]f it be assumed that there are such similarities between the story and the play as to provoke in the casual observer the consciousness that there is such a similarity between them, and that copying may be inferred therefrom, we are still confronted with the fact that mere similarity does not necessarily involve literary piracy or an infringement of a copyright."); Sportsman's Warehouse, Inc. v. Fair, 576 F. Supp.2d 1175, 1188 (D. Colo. 2008) (applying "ordinary observer" test under Tenth Circuit law and determining that "[t]he particular expression of live male elk in flehmen can be mistaken by the casual observer as elk bugling").

## II.   DEFENDANTS APPLIED THE PROPER "SUBSTANTIAL SIMILARITY" TEST, WHICH, BASED UPON THE ADMISSIONS AND THE DE MINIMIS ALLEGED USES BY DEFENDANTS, REQUIRES DISMISSAL OF THE AMENDED COMPLAINT

Plaintiff not only ignores the effect of its judicial and factual admissions but also erroneously contends that Defendants "ignore settled Second Circuit law that 'the concept of similarity embraces not only global similarities in structure and sequence, but localized similarity in language.'" Opp., p. 8.  Plaintiff contends that its admissions against interest are not controlling and that Defendants fail to apply the proper test for infringement because Defendants do not specifically mention the term "fragmented literal similarity."  This argument is a red herring.  Although Defendants' Motion to Dismiss may not have referenced the phrase "fragmented literal similarity," Defendants applied the correct legal test for substantial similarity.[3]

Given Plaintiff's admissions that the alleged infringements underlying its claims are not observable by the "casual listener" and without "careful audio analysis," this Court need not get to the fragmented literal similarity analysis for Plaintiff's claims in the Complaint.  In <u>Sandoval v. New Line Cinema Corp.</u>, 147 F.3d at 218-19, and <u>Ringgold v. Black Entm't Television, Inc.</u>, 126 F.3d at 76, the Second Circuit held that where the alleged unauthorized use of a copyrighted work was <u>de minimis</u> and falls below the threshold required for actionable copying, no cause of action will lie for copyright infringement and there is no need to undertake the determination as to whether or not the work constituted a fair use.  Here, the same principal applies, not only

---

[3]   Defendants' discussion and analysis of the "fragmented literal similarity" test takes place at pages 8-10 and footnotes 3 and 4 of Defendants' Memorandum of Law In Support of Motion to Dismiss.  Indeed, Plaintiff cites <u>Ringgold v. Black Entm't Television, Inc.</u>, 126 F.3d 70, 75 n.3 (2d Cir. 1997), for its analysis of the "fragmented literal similarity" test, which is the very same case that Defendants cited for their discussion.  Defendants specifically applied the <u>Ringgold</u> analysis, as well as the analysis in <u>Sandoval v. New Line Cinema Corp.</u>, 147 F.3d 215, 217-18 (2d Cir. 1998), including the <u>de minimis</u> test applied in those cases.  Def. Mem., p. 17-19.

because of Plaintiff's admissions in its Complaint, but also because the alleged use of the

copyrighted work is so quantitatively insubstantial as to fall below the threshold for actionable

copying.  Just as the photographs in <u>Sandoval</u> "appeared fleetingly and were obscured, severely

out of focus, and virtually unidentifiable,"  Plaintiff's musical compositions and sound

recordings here, by Plaintiff's own admissions, which have not been refuted or withdrawn, were

"effectively concealed to the casual listener" and could only be heard "after conducting a careful

audio analysis" that "included isolating the suspected portion of the recording and comparing it

with various parts" "to determine that the Defendant's [sound recording] incorporates" a portion

of the Plaintiff's sound recording.  (Compl., ¶¶ 25, 39, 52, 64).  As a result, there is no reason to

go beyond this quantitative analysis to the fragmented literal similarity analysis as Plaintiff

suggests.  However, even if the Court were to ignore Plaintiff's admissions regarding non-

observability and proceed under the ordinary observer test and the fragmented literal similarity

analysis, Plaintiff's claims nevertheless must fail.

A.   <u>**Plaintiff Concedes That Portions Allegedly Taken From Musical
Compositions "Say What," "Let's Get Small," And "Good To Go" Are Not
Copyrightable**</u>

At pages 17 through 21 of its Memorandum of Law In Opposition To Defendant's

Motion to Dismiss, Plaintiff concedes that its musical composition copyright causes of action

fail for "Say What," "Let's Get Small," and "Good to Go":  With regard to the phrase "SAY

WHAT" as embodied in the musical composition "Say What," Plaintiff concedes that the phrase

is not copyrightable and thus not subject to a claim for copyright infringement:

> [W]hile "common phrases" might not be protectable where written words are
> concerned, what defendants misappropriated was the unique expression of the
> words "SAY WHAT!" as performed by Trouble Funk, and as embodied in the
> recorded song of the same title.

Opp., p. 17.  The same is true for Plaintiff's musical composition "Good to Go," where Plaintiff

agrees with respect to the phrase "Now I want y'all to break this down" that "Defendants'

argument here is essentially the same as for the phrase 'Say What!'" Opp., p. 20-21.

Significantly, Plaintiff contends: "Even if that were the case with respect to the compositions,

what was appropriated was Trouble Funk's original creative expression of that phrase as

embodied in the Good to Go recording." Opp., p. 21. In "Let's Get Small," Plaintiff concedes

that for a musical composition, a single chord is "by definition, not subject to copyright

protection":

> The *Poindexter* case involved the alleged infringement of a musical *composition*,
> not a musical *recording*; the question was whether a single F-sharp note from the
> plaintiff's composition could support an infringement claim. In this case, it is not
> just the composition at issue; defendants misappropriated the actual recording.

Opp., p. 20 (emphasis in original). At the very least, given that Plaintiff admits that common

phrases and single chords, sounds, or notes are not capable of sustaining an infringement claim,

Plaintiff's musical composition copyright infringement claims regarding "Say What," "Let's Get

Small," and "Good to Go" should be dismissed. With respect to the balance of Plaintiff's

musical composition copyright infringement claims, Plaintiff's concedes that: "[I]t is the sound

recordings that embody the uniquely creative expressions of Trouble Funk that have been

misappropriated by defendants." Opp., p. 20 (emphasis added).

**B.    Plaintiff's Allegations That Defendants Misapplied The Substantial
        Similarity Analysis Are Incorrect As A Matter Of Law And Fact**

Plaintiff contends at page 15 of its Memorandum Of Law In Opposition that the specific

portions of the Trouble Funk songs allegedly appropriated are of materially qualitative

importance to each of Plaintiff's respective musical compositions and sound recordings as a

whole and, thus, Defendants' alleged incorporation of those specific portions of such songs,

without more, constitutes an unlawful misappropriation.

It is Plaintiff, rather than Defendants, who misapplies the standard for determining

substantial similarity. First, the substantial similarity test is the ordinary observer test, which

includes the fragmented literal similarity analysis and a consideration of the qualitative and quantitative importance of the allegedly misappropriated pieces. See, e.g., Peter F. Gaito, 602 F.3d at 66; Laureyssens v. Idea Grp., Inc., 964 F.2d 131, 141 (2d Cir. 1992); Arnstein v. Porter, 154 F.2d 464, 473 (2d Cir. 1946); Jean v. Bug Music, Inc., No. 00 Civ. 4022 (DC), 2002 WL 287786, at *4 (S.D.N.Y. Feb. 27, 2002); Williams v. Broadus, No. 06 Civ. 5533 (MBM), 2001 U.S. Dist. LEXIS 12894, at *13-14 (S.D.N.Y. Aug. 24, 2001). However, as noted above, this Court need not get to the fragmented literal similarity analysis if the alleged misappropriation is not recognizable. See Sandoval, 147 F.3d at 217-18.

TufAmerica incorrectly claims that Defendants focus on the quantitative component without regard to the qualitative value of each Trouble Funk song. First, as illustrated by Sandoval, where the alleged copying is "so trivial 'as to fall below the quantitative threshold of substantial similarity,'" which is the case here, a finding of a lack of substantial similarity is appropriate. Sandoval, 147 F.3d at 217-18. Second, Defendants did analyze the qualitative importance -- or lack thereof -- of each of the samples at issue in the discussion of the nature and extent of the portions that were allegedly used and noted that some of the portions are not by their nature protectable. Def. Mem., pp. 17-19. See Gottwald, 2011 U.S. Dist. LEXIS 103414, at *10 ("Where the points of dissimilarity exceed those that are similar and those similarities are -- when compared to the original work -- of small import quantitatively or qualitatively then a finding of no infringement is appropriate.") (internal citations omitted). In short, the portions are neither qualitatively (because of the unprotectable nature of the portions used) nor quantitatively important to the TufAmerica songs from which they were allegedly misappropriated. Saregama, 687 F. Supp. 2d at 1338 (in assessing a one-second snippet looped in the refrain of the song, the Court found that: "it is highly unlikely that the average lay observer could discern the source of the one-second snippet without prior warning. . . . To be sure, no reasonable jury, properly

instructed, would mistake PYOG for BMBH or conclude that the two works were substantially similar.").

In a last-gasp effort to save its Amended Complaint from dismissal, TufAmerica urges that the qualitative analysis requires a jury determination and is not ripe for resolution at this stage. This is contrary to established law in the Second Circuit, including <u>Peter F. Gaito</u>, 602 F.3d at 64, which held that "[i]t is well settled that in ruling on such a [Rule 12(b)(6)] motion, a district court may consider 'the facts as asserted within the four corners of the complaint' together with 'the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference.'" Such an analysis by the Court does not require discovery or fact finding and demonstrates that none of the protectable subject matter in the claimed samples is integral to the entirety of the original works.

Second, there is no legal basis for Plaintiff's contention that Defendants' alleged use of the portions of Plaintiff's musical compositions and sound recordings demonstrates that Defendants saw something of qualitative value in the Trouble Funk songs as a whole. The qualitative value analysis concerns the relative importance of the portion allegedly taken in relation to the original work. As a result, the mere fact that Defendants allegedly chose a particular portion of Plaintiff's song does not support a finding with respect to the alleged importance of that portion in relation to the original song. Putting aside Plaintiff's admissions and the key element of observability, Plaintiff's claims also fail even under the fragmented literal similarity analysis.

### C.     **Even Under the Fragmented Literal Similarity Analysis, Plaintiff's Claims Fail**

1.     <u>"Say What" And "Shadrach" Are Not Substantially Similar</u>

Plaintiff argues that "while 'common phrases' may not be protectable where written words are concerned, what defendants misappropriated was the unique expression of the words

'SAY WHAT!' as performed by Trouble Funk, and as embodied in the recorded song of the same title." Opp., p. 17-18.  Thus, as noted above, Plaintiff concedes that the words "Say What" are not protectable with respect to the musical composition copyright.  Plaintiff does not cite any case law for the proposition that the de minimis test does not apply with respect to sound recordings.  Instead, Plaintiff cites Newton v. Diamond, 388 F.3d 1189 (9th Cir. 2003), cert. denied, 519 U.S. 114 (2005), for the proposition that "[t]he contribution of the performer is often so great that s/he provides as much musical content as the composer" and that this applies with respect to the less than one-second sound recording of the spoken words "Say What."  Newton is distinguishable because the quote was in dicta and because liability for infringement of a sound recording was not at issue.  The Court explained that it "must remove from consideration all the elements unique to Newton's performance."  Id. at 1194.  The Ninth Circuit did not analyze the quantum of taking from the Newton sound recording.  That is not the case where, as here, the one-second two-word vocalized "Say What" is not distinctive and is the only part of Plaintiff's sound recording that allegedly appears in Defendants' "Shadrach" sound recording.  Saregama is on point.  Here, as in Saregama, where the one-second snippet of the unprotectable words "Say What" allegedly was used in a completely different song, "with different lyrical content, tempo, rhythms, and arrangements."  Further, the two musical compositions and sound recordings "are dissimilar as a whole" and therefore such alleged use is not actionable.  Saregama, 687 F. Supp. 2d at 1338.

        2.      "Drop the Bomb" And "Car Thief" Are Not Substantially Similar

Plaintiff argues that Defendants' alleged transformation of Plaintiff's musical composition and sound recording -- which is rendered unrecognizable as an entirely new series of sounds and rhythms -- "involves little more than alternatively raising and lowering the volume of the pirate sample, and so is 'slight to non-existent.'"  Opp., p. 18.  As Plaintiff's Complaint

admitted, the manner in which the alleged portion of the sound recording was incorporated "effectively concealed to the casual listener" any link between the two works.   Plaintiff also concedes in its Amended Complaint that the descending whistle sound effect in "Drop the Bomb," which is alleged to be sampled, is commonplace and generic, being "reminiscent of the descending-pitch sound that often accompanies a visual image of a falling object in cartoons or movies, such as when Wile E. Coyote falls off of a cliff in a 'Road Runner' cartoon."   (Am. Compl., ¶ 38).

Defendants contended previously and Plaintiff failed to refute, and now appears to concede, the first "Drop the Bomb" sound recording portion is non-copyrightable because it is a commonplace stock sound effects recording and thus not properly subject to the quantitative/qualitative analysis, which focuses solely on the copyrightable elements of a work. See Pyatt v. Raymond, No. 10 Civ. 8764 (CM), 2011 U.S. Dist. LEXIS 55754, at *23 (S.D.N.Y. May 19, 2011) (quoting Acuff-Rose Music, Inc. v. Jostens, Inc., 155 F.3d 140, 144 (2d Cir. 1998)); see also Gottwald, 2011 U.S. Dist. LEXIS 103414, at *16; Lessem v. Taylor, 766 F. Supp. 2d 504, 513 (S.D.N.Y. 2011) ("Common phrases are not subject to copyright protection."); Jean, 2002 WL 287786, at *6 (finding that the lyrical phrase "clap your hands" and the three notes accompanying it are so common and unoriginal that even when combined they are not protectable).   Similarly, where the accused unlawful appropriation is de minimis and not a substantial portion of the work allegedly taken, substantial similarity has not been found.   See Broadus, 2001 U.S. Dist. LEXIS 12894, at *12-13; Sandoval, 147 F.3d at 218;  Gottwald, 2011 U.S. Dist. LEXIS 103414, at *17.

A comparison of the two sound recordings demonstrates that "Drop the Bomb" is unrecognizable in "Car Thief."  Any descending-pitch tone source, when transformed as heard in "Car Thief," would, to any ordinary observer, sound nothing like Plaintiff's sound recordings.

Instead, the sounds heard in the Beastie Boys recording are distinctly different.  As a result, this portion of not only Plaintiff's musical composition, but also of the sound recording, is not copyrightable and should not be considered in analyzing Plaintiff's copyright infringement claims regarding "Drop the Bomb."

      3.    <u>"Drop the Bomb" And "Hold It Now Hit It" Are Not Substantially Similar</u>

Plaintiff argues that the allegedly appropriated portion of "Drop the Bomb" is qualitatively significant due to the fact that the allegedly sampled drum roll descends in the pitches of the drums.  Were this Court to find that this musical device, including "one . . . two . . . three," is subject to protection granting Plaintiff a monopoly, the free use of a very common musical tool would come to a halt.

      4.    <u>"Drop the Bomb" And "New Style" Are Not Substantially Similar</u>

Plaintiff does not dispute Defendants' conclusion with respect to the alleged use of Plaintiff's musical composition being <u>de</u> <u>minimis</u>.  Moreover, as noted above, the descending whistle sound effect in "Drop the Bomb" is commonplace and generic and therefore not subject to copyright protection.

      5.    <u>"Let's Get Small" And "Hold It Now Hit It" Are Not Substantially Similar</u>

Plaintiff concedes that one chord is not subject to copyright protection in the context of musical compositions in light of <u>Poindexter</u> and other case law, but suggests, again without any citation or explanation, that the <u>de</u> <u>minimis</u> standard does not apply with respect to sound recordings.  The allegedly appropriated portion of the sound recording[4] is one chord and there is no reason to distinguish between a chord in a musical composition and a chord in a sound

---

4      The definition of "sound recording" set forth in 17 U.S.C. § 101 is "works that result from the fixation of a <u>series</u> of musical, spoken, or other sounds. . . .") (emphasis added).

recording.  See Saregama, 687 F. Supp.2d at 1338.  Plaintiff has made no showing, nor can it,

that this single chord, even after applying the fragmented literal similarity test, is actionable.

      6.     "Good to Go" And "B-Boy Bouillabaisse/A.W.O.L." Are Not Substantially Similar

Plaintiff concedes that the phrase "Now I want y'all to break this down" is a common

phrase and not subject to copyright protection as a musical composition.  Plaintiff nevertheless

claims that such phrase is protectable as embodied in the sound recording and that the alleged de

minimis use does not apply to sound recordings.  Plaintiff again cites no case law to support its

proposition, nor can it.  This is contrary to the law.  Saregama, 687 F. Supp. 2d at 1338-42

(applying the same substantial similarity test to musical compositions and sound recordings,

noting that "the Eleventh Circuit imposes a 'substantial similarity' requirement as a consistent

element of all infringement claims" and observing that "there is no indication that Congress

sought to expand the scope of protection for original works by redefining the term 'derivative

work' to include all works containing any sound from the original sound recording, whether

those works bear substantial similarities to the original work or not."); see also EMI Records

Ltd. v. Premise Media Corp. L.P., No. 601209/08, 2008 WL 5027245, at *3 (N.Y. Sup. Ct., N.Y.

Cnty. Aug. 08, 2008).  At the very least, to the extent that Plaintiff concedes that common

phrases and single chords are non-copyrightable in musical compositions, Plaintiff's claims for

infringement of the musical compositions of "Say What," "Let's Get Small," and "Good to Go"

should be dismissed.

## III.    UNDER EITHER THE INJURY RULE OR DISCOVERY RULE, PLAINTIFF'S CLAIMS SHOULD BE LIMITED TO MAY 9, 2009

In its Opposition, Plaintiff argues that: (1) the discovery rule instead of the injury rule

should apply; and (2) under the discovery rule, the fact-specific analysis does not lend itself to

resolution on this motion.  Plaintiff is incorrect on both points.[5]  Even if the discovery rule

applies, accrual for Plaintiff's copyright infringement claims begins, at the latest, when Plaintiff

should have known of the alleged infringement.  Further, the inquiry is not fact-specific because

the Beastie Boys' musical compositions and sound recordings at issue are chart-topping hip-hop

classics.  "Licensed to Ill" was certified platinum by the Recording Industry Association of

America ("RIAA") on February 2, 1987 and was certified nine times multi-platinum on

September 5, 2001.  "Paul's Boutique" was certified platinum by the RIAA on April 5, 1995 and

double platinum on January 27, 1999.  Plaintiff or its predecessors clearly should have known of

the alleged infringement for decades given the renown and dates of release of each song at issue.

See Sapon v. DC Comics, 00 Civ. 8992 (WHP), 2002 U.S. Dist. LEXIS 5395, at *14 (S.D.N.Y.

Mar. 28, 2002) (finding that under either the injury or discovery rule, "there is no question that

[plaintiff] had access to and knowledge of DC Comics' Batman character" because of Batman's

"wide and longstanding renown"); Chivalry Film Prods. v. NBC Universal, Inc., 05 Civ. 5627

(GEL), 2006 U.S. Dist. LEXIS 1177, at *4 (S.D.N.Y. Jan. 11, 2006) ("[E]ven courts following

the contrary 'discovery rule' hold that the date of accrual is the date 'plaintiff knew or should

have known of the infringement. . . .' and there can be little doubt that Ardito should have known

---

[5]    District courts in this Circuit have rejected the discovery rule.  See, e.g., Urbont v. Sony
Music Entm't, 863 F. Supp. 2d 279, 283 (S.D.N.Y. 2012) (relying on Auscape Int'l v.
Nat'l Geographic Soc'y, 409 F. Supp. 2d 235 (S.D.N.Y. 2004), two Supreme Court
decisions, TRW Inc. v. Andrews, 534 U.S. 19 (2001) and Merck & Co. v. Reynolds, 130
S. Ct. 1784 (2010), and the legislative history of the Copyright Act).  While the cases
applying the discovery rule, Stone v. Williams, 970 F.2d 1043 (2d Cir. 1992) and
Merchant v. Levy, 92 F.3d 51 (2d Cir. 1996), have not been overruled, these cases have
been distinguished as relating to copyright ownership claims, rather than copyright
infringement claims.  See Urbont, 863 F. Supp. 2d at 283 ("Although the same limitations
provision governs all civil claims brought under the Copyright Act, the Second Circuit
has repeatedly emphasized the distinct nature of the accrual of infringement and
ownership claims.").  TufAmerica cites no post-Auscape Second Circuit cases applying
the discovery rule in a copyright infringement case.

of any infringement by 'Meet the Parents' at or shortly after the highly-publicized release of that film.") (internal citations omitted).  In fact, Plaintiff's argument that these alleged infringements were not discoverable for decades despite the indisputable popularity of the Beastie Boys works demonstrates, as Plaintiff admitted, that the alleged infringements were not discernible by the ordinary listener, mandating dismissal on that basis.[6]  However, even if this Court allows Plaintiff's claims to proceed, it should limit the copyright infringement claims to alleged infringements taking place after May 12, 2009.

## CONCLUSION

Based upon the foregoing and the papers submitted in support of the motion, Capitol and the Beastie Boys Defendants respectfully submit that Plaintiff TufAmerica's Amended Complaint be dismissed in its entirety.

Dated: New York, New York
February 19, 2013

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By: _____
Theodore C. Max, Esq. (TM-1742)
Kenneth Anderson, Esq. (KA-0023)
30 Rockefeller Plaza
New York, NY  10112-0015
*Attorneys for Defendants Capitol Records, LLC, Michael Diamond, Adam Horovitz, the Estate of Adam Yauch and Brooklyn Dust Music*

---

[6]  Plaintiff urges this Court to apply the discovery rule because Plaintiff was unable to bring any claim when the cause of action accrued because Plaintiff's musical compositions and sound recordings were "effectively concealed."  Plaintiff further contends that the admissions in its Complaint and Amended Complaint regarding "effective concealment" are relevant to the statute of limitations and willfulness.  Plaintiff cannot use its "effective concealment" admissions selectively; these admissions mandate dismissal.