USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 10 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X
                                   :

TUFAMERICA, INC.,                  :
                                   :

               Plaintiff,       :         12 Civ. 3529 (AJN)

     -v-                     :        OPINION & ORDER
                                   :

MICHAEL DIAMOND, et al.,     :

                   Defendants.    :
------------------------------------------------------------X

ALISON J. NATHAN, District Judge:

      Plaintiff TufAmerica, Inc. ("TufAmerica") brings this copyright infringement action

against Defendants Michael Diamond ("Mike D"), Adam Horovitz ("Ad-Rock" or "King Ad-

Rock"), Adam Yauch ("MCA") (collectively, the "Beastie Boys"), Universal Music Publishing,

Inc., Universal Music Publishing Group, Brooklyn Dust Music, and Capitol Records, LLC

(collectively, "Defendants").  Plaintiff, the putative exclusive administrator and copyright-

licensee of a number of copyrights to the compositions and sound recordings of the musical

group Trouble Funk, alleges that the well-known musical group the Beastie Boys unlawfully

sampled a number of Trouble Funk's songs on the Beastie Boys' hit albums Licensed to Ill and

Paul's Boutique.  Defendants move to dismiss the complaint, pursuant to Federal Rule of Civil

Procedure 12(b)(6), for failure to state a claim upon which relief could be granted.  For the

reasons discussed below, Defendants' Motion to Dismiss is GRANTED in part and DENIED in

part.

## I.    Legal Standard

      When deciding a motion to dismiss for failure to state a claim pursuant to Federal Rule of

Civil Procedure 12(b)(6), the Court must accept as true all well-pleaded facts and draw all

reasonable inferences in the light most favorable to the non-moving party. *See Kassner v. 2nd Ave. Delicatessen, Inc.,* 496 F.3d 229, 237 (2d Cir. 2007). To survive a motion to dismiss, the plaintiff's pleading must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). In addition to the allegations of the pleading itself, the Court may consider documents attached as exhibits or incorporated by reference. *Halebian v. Berv,* 644 F.3d 122, 131 n.7 (2d Cir. 2011); *Chapman v. N.Y. State Div. for Youth,* 546 F.3d 230, 234 (2d Cir. 2008).

"If a document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *Poindexter v. EMI Record Grp. Inc.*, No. 11 Civ. 559 (LTS), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012) (citing *Barnum v. Millbrook Care Ltd. P'ship,* 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994)). "In copyright infringement actions, 'the works themselves supersede and control contrary descriptions of them,' including 'any contrary allegations, conclusions or descriptions of the works contained in the pleadings.'" *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (internal citation omitted) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 52 (2d Cir. 1986), and 3-12 MELVILLE B. NIMMER AND DAVID NIMMER, NIMMER ON COPYRIGHT § 14–01[B] (2012) ("NIMMER") § 12.10).

## II.   Background and Procedural History

Plaintiff commenced this suit on May 3, 2012, and timely effectuated service on August 6, 2013. Defendants initially moved to dismiss on November 21, 2012. In lieu of opposing Defendants' motion, on December 10, 2012, Plaintiff filed an Amended Complaint, which

Defendants moved to dismiss on January 4, 2013.  Unless otherwise noted, the following facts are taken from Plaintiff's Amended Complaint.

There are two musical groups whose works are involved in this dispute:  Trouble Funk, which is not a party to the dispute, and the Beastie Boys, whose individual members are named Defendants.  Trouble Funk, as the name partially implies, was a funk/R&B musical group, which registered copyrights for a number of recordings and musical compositions during the 1980s.  In relevant part, the recordings and musical compositions for the Trouble Funk songs at issue were registered with the United States Copyright Office between 1982 and 1986, alone or as parts of larger albums.  Am. Compl. ¶¶ 14-18.  In 1999, TufAmerica, also the owner of the Tuff City Music Group, a rap and hip hop label founded in 1981, became the exclusive administrator and licensee of the copyrights to the relevant Trouble Funk recordings and compositions.  Am. Compl. ¶¶ 12, 13, 19.

The Beastie Boys are an American hip-hop group, founded by three MCs:[1]  Defendants Mike D, Ad-Rock, and MCA.  The Beastie Boys' debut album, Licensed to Ill, which has since gone on to sell over nine million copies, was released in 1986 and featured, *inter alia*, the hit songs *Car Thief* and *Hold It Now Hit It*.  Am. Compl. ¶ 49; Def. Op. 1.  Their second album, Paul's Boutique, which has also gone on to sell millions of copies, was released in 1989 and featured, *inter alia*, the songs *Shadrach, The New Style,* and *B-Boy Bouillabaisse/A.W.O.L.*  Am Compl. ¶¶ 20, 35, 85; Def. Op. 1.

The case itself involves music "sampling," which the Oxford Dictionary defines as "the technique of digitally encoding music or sound and reusing it as part of a composition or

---

[1] An MC, in this context, is defined as a "Master of Ceremonies or Microphone Controller," or "[a] rapper who is either the host of an event" or "someone with enough flow and skill to be considered a master of the art of rap."  *See MC*, Urban Dictionary, http://www.urbandictionary.com/define.php?term=mc (last visited August 25, 2013).

recording."[2]  Specifically, Plaintiffs allege that these five Beastie Boys songs illegally

incorporate six separate samples from four Trouble Funk songs, as shown in the following chart:

| Claim # | Trouble Funk Song | Sample Location in Original | Duration | Beastie Boys Song | Occurrence(s) |
|---|---|---|---|---|---|
| 1 | *Say What* | :00, :51, and 2:54 | 1 Second | *Shadrach* | 3:04 |
| 2 | *Drop the Bomb ("DTB1")* | :10, 1:20, 2:50, and 4:30 | 4 Seconds | *Car Thief* | :00, 1:05 |
| 3 | *Drop the Bomb ("DTB2")* | :07 | 3 Seconds | *Hold It Now Hit It* | :00, :46, 1:31, 2:17, 3:02, and 3:14 |
| 4 | *Drop the Bomb ("DTB3")* | :10 (extended) | 6 Seconds | *The New Style* | :55 and 2:03 |
| 5 | *Let's Get Small* | :03, *et al.*[3] | 3 Seconds | *Hold It Now Hit It* | :08, :54, 1:39, 2:24, and 3:22 |
| 6 | *Good to Go* | :17 | 3 Seconds | *B-Boy Bouillabaisse / A.W.O.L* | 11:54 |

In the initial complaint, Plaintiff alleged four claims of copyright infringement, pursuant

to 17 U.S.C. §§ 501, *et seq.*, as well as claims for unjust enrichment and misappropriation, in

violation of New York State common law.  These four claims were for the alleged use of the *Say*

*What* sample, in *Shadrach*, and the three *Drop the Bomb* samples, in *Car Thief, Hold It Now Hit*

*It,* and *The New Style*, respectively.  In the amended complaint, Plaintiff no longer asserted the

common law violations, but included two additional copyright violations, for the alleged use of

the *Let's Get Small* sample, in *Hold It Now Hit It*, and the *Good to Go* sample, in *B-Boy*

*Bouillabaisse/A.W.O.L.*  Am. Compl. ¶¶ 104-107.  As to each sample, Plaintiff alleges that the

Beastie Boys' use of that sample infringed both the musical composition and the sound recording

of the sampled Trouble Funk songs.

---

[2] *See* Oxford English Dictionary Online (3d ed. 2012) (defining "sampling," *n.*); *see also id.* (defining "sample," *v.*, to "record or extract a small piece of music or sound digitally for reuse as part of a composition or song;" "sample," *n.*, "a sound created by sampling;" *Newton v. Diamond*, 388 F.3d 1189, 119 (9th Cir. 2004) (defining the "practice of 'sampling'" as "the incorporation of a short segment of a musical recording into a new musical recording").

[3] *See* Am. Compl. ¶ 75 (alleging that "[t]he sequence is repeated seventeen more times during the course of the recording").

### III.   Discussion

Defendants move to dismiss Plaintiff's Amended Complaint, pursuant to Rule 12(b)(6), for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6).  They argue that Plaintiff's allegations, in conjunction with the works themselves, cannot support a finding of actionable copyright infringement.  In addition, they argue that, to the extent any of Plaintiff's claims survive the motion to dismiss, the Court should apply the injury rule rather than the discovery rule for statute of limitations purposes, and that, pursuant to the injury rule, Plaintiff's claims should be limited to alleged acts of infringement that occurred after May 12, 2009, a date three years prior to Plaintiff's filing of this action.

Below, the Court will:  (1) discuss the relevant methods for determining whether actionable copyright infringement has occurred; (2) address Defendants' argument as to why certain statements from Plaintiff's original complaint can and should be used to defeat Plaintiff's claims in the amended complaint; (3) analyze the alleged acts of infringement in the above-listed songs; and (4) determine whether Plaintiff's remaining claims should be statutorily limited, as Defendants propose.  For the reasons discussed herein, Defendants' Motion to Dismiss is granted in part, denied in part, and the Court will apply the injury rule to the remaining claims.

### A.   *Prima Facie* Copyright Infringement

"To establish a *prima facie* case of copyright infringement, a plaintiff must demonstrate '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'" *Warner Bros. Entm't, Inc. v. RDR Books,* 575 F. Supp. 2d 513, 533 (S.D.N.Y. 2008) (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)); *see also Peter F. Gaito,* 602 F.3d at 63.  Because copyright ownership is not contested at this stage in the proceedings, the Court's inquiry will turn on the second prong of the *prima facie* requirement.

*See Gottwald v. Jones*, No. 11 Civ. 1432 (CM) 2011 U.S. Dist. LEXIS 103414, at *9 (S.D.N.Y. Sept. 12, 2011).

To satisfy the second prong, a plaintiff must demonstrate that: "(1) the defendant has actually copied the plaintiff's work; *and* (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Hamil Am. Inc. v. GFI,* 193 F.3d 92, 99 (2d Cir. 1999) (internal quotations omitted) (emphasis in original); *Poindexter*, 2012 WL 1027639, at *4. As with copyright ownership, the parties agree that for the purposes of this motion, the facts alleged are sufficient to demonstrate that Defendants "actually copied" Plaintiff's works. Def. Br. 11; Pl. Opp. 8. Because the Court assumes actual copying (a.k.a., "probative similarity"), only the second element, "substantial similarity" (a.k.a., "unlawful" or "improper" appropriation), is at issue. Because substantial similarity is "always a required element of actionable copying," "it is more properly used after the fact of copying has been established, as the threshold for determining that the degree of similarity suffices to demonstrate actionable infringement." *Ringgold v. Black Entm't Television, Inc.,* 126 F.3d 70, 74 (2d Cir. 1997). "That this case involves the practice of sampling prior music into a new composition does not alter this analysis." *Williams v. Broadus*, No. 99 Civ. 10957 (MBM), 2001 WL 984714, at *3 (S.D.N.Y. Aug. 27, 2001) (citing 4 NIMMER 13.03[A][2] at 13-49 to 13-50).

Finally, although "questions of non-infringement have traditionally been reserved for the trier of fact," if, as here, "the works in question are attached to a plaintiff's complaint, it is entirely appropriate for the district court to consider the similarity between those works in connection with a motion to dismiss." *Peter F. Gaito*, 602 F.3d at 64. "When a court is called upon to consider whether the works are substantially similar, no discovery or fact-finding is typically necessary, because 'what is required is only a visual [or aural] comparison of the

works.'" *Id.* (quoting *Folio Impressions, Inc. v. Byer Cal.,* 937 F.2d 759, 766 (2d Cir. 1991)).

"If, in making that evaluation, the district court determines that the two works are 'not

substantially similar as a matter of law,' the district court can properly conclude that the

plaintiff's complaint, together with the works incorporated therein, do not 'plausibly give rise to

an entitlement to relief.'" *Id.* (internal citation omitted) (quoting *Kregos v. A.P.*, 3 F.3d 656, 664

(2d Cir. 1993), and *Iqbal,* 556 U.S. at 679).   Courts in this district regularly consider audio files

in this context. *See Poindexter*, 2012 U.S. Dist. LEXIS 42174, at *4 n.5; *Gottwald*, 2011 U.S.

Dist. LEXIS 103414, at *17; *Pyatt v. Raymond*, No. 10 Civ. 8764 (CM), 2011 WL 2078531, at

*6 (S.D.N.Y. May 19, 2011); *Broadus*, 2001 WL 984714, at *3.

     B.  The Substantial Similarity Test

     "[A]n inquiry into the substantial similarity between a copyrighted work and the

allegedly infringing work must be made on a case-by-case basis, as there are no bright-line rules

for what constitutes substantial similarity." *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215,

217 (2d Cir. 1998). As such, the Second Circuit has recognized a number of different tests that

courts' can apply in determining the extent of similarity that will "constitute a *substantial*, and

hence infringing, similarity." *Peter F. Gaito*, 602 F.3d at 63 (emphasis in original); *see*

*generally Castle Rock Entm't, Inc. v. Carol Publ'g Grp., Inc.*, 150 F.3d 132 (2d Cir. 1998)

(describing and applying a number of different tests).   Indeed, the Second Circuit has "endorsed

the notion that, '[g]ood eyes and common sense may be as useful as deep study of reported and

unreported cases, which themselves are tied to highly particularized facts.'" *Hamil Am. Inc.*, 193

F.3d at 102 (quoting *Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.*, 490 F.2d 1092, 1093

(2d Cir. 1974)).   Here, Defendants argue that the Court should apply the "ordinary observer" test,

while Plaintiff argues that the Court should apply the "fragmented literal similarity" test.   For the

reasons discussed, below, the Court concludes that this is a case involving "fragmented literal similarity" and must be analyzed accordingly.

Defendants argue that the Court should apply "[t]he standard test for substantial similarity," used in most copyright infringement cases, which asks "whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'"[4] *Yurman Design, Inc. v. PAJ, Inc.,* 262 F.3d 101, 111 (2d Cir. 2001) (quoting *Hamil Am. Inc.*, 193 F.3d at 100). In the context of music plagiarism, the Second Circuit has described the "ordinary observer" -- here, listener -- test "as requiring proof that 'defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such . . . music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff.'" *Pyatt*, 2011 WL 2078531, at *4 (quoting *Repp & K & R Music, Inc. v. Webber,* 132 F.3d 882, 889 (2d Cir. 1997) (quoting *Arnstein v. Porter,* 154 F.2d 464, 473 (2d Cir. 1946))); *see also Muller v. Anderson*, 501 F. App'x 81, 83 (2d Cir. 2012). This analysis looks to the protectable elements of the work as a whole, rather than to any dissected portion thereof. *Peter F. Gaito*, 602 F.3d at 66 ("[W]e are principally guided by comparing the contested design's total concept and overall feel with that of the allegedly infringed work as instructed by our good eyes and common sense" (internal citations and quotation marks omitted)).

Plaintiff argues, however, that because the copying in this case is an example of "fragmented literal similarity," the question of substantial similarity should turn on "localized"

---

[4] The Second Circuit and courts in this district provide slightly modified articulations of the "ordinary observer" test. *See Jean v. Bug Music, Inc.*, No. 00 Civ. 4022 (DC), 2002 WL 287786, at *4 (S.D.N.Y. Feb. 27, 2002) (copyright owner must show improper appropriation by "demonstrating that 'substantial similarities' as to the protected elements of the work would cause an average lay observer to 'recognize the alleged copy as having been appropriated from the copyrighted work'") (quoting *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 912 (2d Cir. 1980)); *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.),* 71 F.3d 996, 1002 (1995) ("[W]e ask whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'").

rather than "global" similarity between the two pieces.  Pl. Opp. 11-12.  As the Second Circuit

has noted, "[t]he Nimmer treatise helpfully refers to exact copying of a portion of a work as

'fragmented literal similarity,' in contrast to 'comprehensive nonliteral similarity,' which refers

to an alleged copy that is qualitatively but not exactly similar to a copyrighted work."  *Ringgold*,

126 F.3d at 75 n.3 (internal citations omitted) (noting also that the Second Circuit has "endorsed

th[is] taxonomy" (citing *Twin Peaks Prods.* , 996 F.2d 1366, 1372 n.1 (2d Cir. 1993))); *see also*

*Broadus*, 2001 WL 984714, at *3 ("Fragmented literal similarity exists where . . . parts of the

pre-existing work are copied . . . note for note . . ., [t]he similarity, although literal, is not

comprehensive" (internal citations and quotation marks omitted)).  Put slightly differently,

"[f]ragmented literal similarity exists where the defendant copies a portion of the plaintiff's work

exactly or nearly exactly, without appropriating the work's overall essence or structure."

*Newton*, 388 F.3d at 1194 (citing 4 NIMMER § 130.03[A][2], at 13-45).

　　　　Although there is a frankly surprising paucity of on-point precedent regarding literal

copying of the kind presented in this case, the Court agrees with Plaintiff that the copying here is

an example of "fragmented literal similarity."  In one of the few directly analogous cases from

this district, Judge Mukasey came to the same conclusion.  *See Broadus*, 2001 WL 984714, at

*3.  Unlike the majority of cases both parties cite, *Broadus* is comparable both factually and

procedurally:  it involved the use of an exact (or presumably exact) sample of one artist's song in

a second artist's song and, the court was addressing the infringement allegations at the motion to

dismiss stage.  *Compare id.*, *with Poindexter*, 2012 U.S. Dist. LEXIS 42174, at *10 (concluding

on a motion to dismiss that the use of a single note was *de minimis* for purpose of copyright to

musical composition), *and Pyatt*, 2011 WL 2078531, at *6-8 (comparing total look and feel of

original and allegedly infringing song where the plaintiff claimed the latter song was a version of

her original), *and Gottwald*, 2011 U.S. Dist. LEXIS 103414, at *17-18 (dismissing the plaintiff's claim that Ke$ha's song *TikTok* infringed the plaintiff's musical composition for the song *My Slushy* after comparing total look and feel of the two songs), *and Jean*, 2002 WL 287786, at *5-6 (addressing direct or near direct infringement but at the summary judgment stage). As in *Broadus*, the alleged infringement in this case involves the literal use of a small portion of the pre-existing work in the later work, which "is analogous to a direct quotation or close paraphrase," 2001 WL 984714, at *3, rather than the "parroting [of] properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art . . . are considered in relation to one another." *Peter F. Gaito*, 602 F.3d at 66 (quoting *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003)). Unlike this latter type of copying, in cases of fragmented literal similarity, there are no blurred lines between what was or was not taken. Accordingly, here, as in *Broadus*, the Court concludes that "th[e] copying is an example of 'fragmented literal similarity,'" and will conduct the substantial similarity inquiry accordingly. 2001 WL 984714, at *3 (quoting *Castle Rock*, 150 F.3d at 140).

Having determined that this case is best viewed as one involving "fragmented literal similarity," the question of substantial similarity is determined by an analysis of "whether the copying goes to trivial or substantial elements" of the *original work*. *Newton* 388 F.3d at 1195; *Broadus*, 2001 WL 984714, at *3. As when addressing substantial similarity in any respect, the question of "[s]ubstantiality is measured by considering the qualitative and quantitative significance of the copied portion in relation to the plaintiff's work as a whole." *Newton*, 388 F.3d at 1195 (citing *Worth v. Selchow & Righter Co.*, 827 F.2d 569, 570 n.1 (9th Cir. 1987), *Jarvis v. A & M Records*, 827 F. Supp. 282, 289-90 (D.N.J. 1993), and 4 NIMMER § 13.03[A][2], at 13-47 to 48 & n. 97). Because they involve literal copying, in cases of "fragmented literal

similarity," more so than under the "ordinary observer test," the copying of even a "relatively small" quantitative "portion of the pre-existing work may be substantial if it 'is of great qualitative importance to the [pre-existing] work as a whole.'" *Broadus*, 2001 WL 984714, at *3 (alteration in original) (quoting *Jarvis*, 827 F. Supp. at 291 (quoting *Werlin v. Readers Digest Assoc.*, 528 F. Supp. 451, 463 (S.D.N.Y. 1981))).

The real question at this stage -- more so than the question of how to label the relevant test -- is whether (as to each sample) Plaintiff has plausibly alleged that the sample is quantitatively and qualitatively important to the original work such that the fragmented similarity becomes sufficiently substantial for the use to become an infringement.  4-13 Nimmer § 1303[A][2][a] (noting that the question in these cases is: "[a]t what point does such fragmented similarity become substantial so as to constitute the borrowing an infringement").  Ultimately then, when determining substantial similarity, "a court considers whether 'the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred.'" *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 440 n.3 (S.D.N.Y. 2011) (Chin, *J.*) (quoting *Ringgold*, 126 F.3d at 75)); *see also Jean*, 2002 WL 287786, at *4.

C.  Quantitative and Qualitative Similarity

"The qualitative component concerns the copying of expression, rather than ideas, a distinction that often turns on the level of abstraction at which works are compared." *Ringgold*, 1216 F.3d at 75.  The quantitative component, on the other hand, "generally concerns the amount of the copyrighted work that is copied, a consideration that is especially pertinent to exact copying" and fragmented literal copying.  *Ringgold*, 126 F.3d at 75 (citing Nimmer § 13.03[A][2]) (discussing fragmented literal similarity)).  Because substantial similarity

necessarily "includes [a] quantitative component . . . the concept of *de minimis* is relevant to a defendant's contention that an indisputably copied work has not been infringed." *Id.* (citing NIMMER 13-46 & n.92.2).

"To establish that the infringement of a copyright is *de minimis,* and therefore not actionable, the alleged infringer must demonstrate that the copying of the protected material is so trivial 'as to fall below the quantitative threshold of substantial similarity, which is always a required element of actionable copying.'" *Sandoval*, 147 F.3d at 217 (quoting *Ringgold,* 126 F.3d at 74 (citing NIMMER § 13.03[A] at 13-27)); *see also Gottlieb Dev. LLC v. Paramount Pictures Corp.*, 590 F. Supp. 2d 625, 632 (S.D.N.Y. 2008). "In determining whether or not the allegedly infringing work falls below the quantitative threshold of substantial similarity to the copyrighted work, courts often look to the amount of the copyrighted work that was copied . . . ." *Ringgold,* 126 F.3d at 75; *Jean*, 2002 WL 287786, at *5. However, "[i]t is not possible to determine infringement through a simple word count; the quantitative analysis of two works must always occur in the shadow of their qualitative nature." *Nihon Keizai Shimbun, Inc. v. Comline Bus. Data, Inc.*, 166 F.3d 65, 71 (2d Cir. 1999) (concluding that a one-paragraph abstract of a six-paragraph article was not actionable because though "not at all qualitatively different," the abstract lacked "quantitative similarity"). *But see Poindexter*, 2012 U.S. Dist. LEXIS 42174, at *10-12 (granting motion to dismiss claim for copyright infringement of a musical composition where the sample consisted of "a single 'F-sharp' pickup note played on a piano" because, without any qualitative analysis, the court could conclude that the sampling was *de minimis*).

Importantly, as briefly noted above, the relevant "question in each case is whether the similarity relates to matter that constitutes a substantial portion of [the pre-existing] work -- not

whether such material constitutes a substantial portion of [the allegedly infringing] work."
*Broadus,* 2001 WL 984714, at *3. Even if it is relatively small, the portion of the pre-existing
work may be substantial if it "is of great qualitative importance to the [pre-existing] work as a
whole." *Jarvis,* 827 F. Supp. at 291 (quoting *Werlin,* 528 F. Supp. at 463); *see also Warner
Bros., Inc. v. Am. Broad. Co., Inc.,* 720 F.2d 231, 242 (2d Cir. 1983) ("*Warner Bros. II*")
(describing the *de minimis* doctrine of fragmented literal similarity as allowing literal copying of
a small and usually insignificant portion of the pre-existing work); *Elsmere Music, Inc. v. Nat'l
Broad. Co., Inc.,* 482 F. Supp. 741, 744 (S.D.N.Y. 1980), (finding that copying was not *de
minimis* where the copied musical phrase went to "the heart of the [original] composition"),
*aff'd.* 623 F.2d 252 (2d Cir. 1980); 4 NIMMER § 13.03[A][2][a] ("[E]ven if the similar material is
quantitatively small, if it is qualitatively important, the trier of fact may properly find substantial
similarity.").

Before addressing the qualitative and quantitative import of the sampled pieces under the
various rubrics discussed above, the Court must first address Defendants' overarching argument
that the allegations in Plaintiff's complaint are -- effectively -- self-defeating. Because the Court
disagrees with Defendants on this point, it will then move on to a song-by-song analysis.

### D.   Use and Relevance of Statements from the Original Complaint

Defendants argue that Plaintiff's use of two phrases in the initial complaint, which were
omitted or altered in the amended complaint, effectively concedes the question of substantial
similarity. Specifically, in the original Complaint, Plaintiff used the following two phrases to
describe each of Defendants' allegedly infringing uses:  (1) that the manner in which the Beastie
Boys incorporated each of the four samples discussed in the initial complaint "*effectively
concealed to the casual listener* the fact that the [sample] was part of the [Beastie Boys'

recording]," *see, e.g.,* Compl. ¶ 24 (emphasis added); and (2) that Plaintiff was able to determine that Defendants had incorporated the sample *"[o]nly after conducting a careful audio analysis* of [each Beastie Boys song] *that included isolating the suspected portion of the recording and comparing it with various parts* of [the Trouble Funk song]," *see, e.g.,* Compl. ¶ 39 (emphasis added).

Defendants argue that these statements are "binding as factual and legal admissions," by which Plaintiff has effectively "plead his way out of court." Def. Reply 2 (citing *Suthers v. Amgen Inc.*, 441 F. Supp. 2d 478, 482 (S.D.N.Y. 2006) (quoting *Jackson v. Marion Cnty.*, 66 F.3d 151, 153 (7th Cir. 1995) (Posner, *J.*))). Prior to addressing the basis and merits of Defendants' arguments, it is first necessary to briefly address whether courts can rely upon facts alleged in an initial complaint, but omitted from an amended complaint, when addressing a motion to dismiss for failure to state a claim.

1. *Can the Statements be Used at this Stage*

Although, ultimately, Plaintiff has waived objection to this issue, before addressing the *relevance*, if any, of the omitted phrases at this point in the proceedings, it is worth first addressing the *propriety*, if any, of considering statements in non-operative complaints when determining whether the operative complaint fails to state a claim, pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). Although the parties agree that these statements are binding admissions even at this stage, the courts in this district are more discordant.

Pursuant to Second Circuit precedent, "[a] party's assertion of fact in a pleading is a judicial admission by which it normally is bound throughout the course of the proceeding," *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985); *Bakalar v. Vavra*, 619 F.3d 136, 151 (2d Cir. 2010) (Korman, *J.*, concurring with his own panel opinion), and

"[t]he amendment of a pleading does not make it any less an admission of the party." *Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989) (citing, *inter alia*, *U.S. v. McKeon*, 738 F.2d 26, 31 (2d Cir. 1984)). As a result, the facts alleged in a complaint or the documents attached thereto can be self-defeating. *See Pacheco v. Serendensky*, 393 F.3d 348, 354 (2d Cir. 2004) (noting that but for other errors, the district court could have granted the motion to dismiss where the facts alleged would have "put a lie to [the petitioner's] general allegation"); *Abrahams v. Incorporated Village of Hempstead*, 390 F. App'x 4 (2d Cir. Aug. 04, 2010); *White v. Wellington*, 627 F.2d 582, 591 (2d Cir. 1980) ("[P]arty invoking federal jurisdiction may plead himself out of court by averring facts which, if true, would foreclose the exercise of that jurisdiction.").

Citing to *Andrews*, Judge Sweet concluded -- as Defendant would have this Court conclude -- that because "[a]dmissions in earlier complaints remain binding . . . the Court may consider them on a motion to dismiss under Rule 12(b)(6)." *Sulton v. Wright*, 265 F. Supp. 2d 292, 295 (S.D.N.Y. 2003) (Sweet, *J.*) (internal citation omitted) (citing *Willsea v. Theis*, No. 98 Civ. 6773 (BSJ), 1999 WL 595629, at *4 (S.D.N.Y. Aug. 5, 1999)), *abrogated on other grounds by Richardson v. Goord*, 347 F.3d 431, 433 (2d Cir. 2003). While some courts in this district have adopted Judge Sweet's position, others have expressly rejected the applicability of the rule discussed in *Andrews* in the context of a Rule 12(b)(6) motion. *Compare Poindexter*, 2012 WL 1027639, at *2 (Swain, *J.*) ("[E]ven though the Amended Complaint is the operative pleading, the Court may still credit admissions in the original complaint and attached exhibits."), *with In re PXRE Grp., Ltd., Secs. Litig.*, 600 F. Supp. 2d 510, 525 (S.D.N.Y. 2009) (Sullivan, *J.*) ("[T]he court in *Sulton* failed to explain why the Second Circuit's ruling in *Andrews* regarding the admissibility of prior pleadings as evidence *at trial* -- where the jury is charged with resolving

disputed issues of fact -- bound the plaintiff to the facts alleged in his prior pleading at the motion to dismiss stage -- where the court is required to accept as true the facts alleged in the version of the pleading before the Court.").

The defendants in *In re PXRE*, as with Defendants here, argued that the court could "rely upon facts alleged in the initial [pleading] and omitted from the [subsequent pleading], but which [d]efendants deem[ed] relevant to their motion [to dismiss]." 600 F. Supp. 2d at 525. Judge Sullivan concluded that the court could not consider the previous statements at that point in the proceedings because doing so "runs contrary to the Federal Rules' pronouncements that leave to file amended complaints shall be freely given, *see* Fed. R. Civ. P. 15(a), and that '[a] party may state as many separate claims or defenses as it has, regardless of consistency.'" *In re PXRE*, 600 F. Supp. 2d at 525 (quoting Fed. R. Civ. P. 8(d)(3)); *see also Streit v. Bushnell*, 424 F. Supp. 2d 633, 640 n.4 (S.D.N.Y. 2006) (Marrero, *J.*) ("It would be a harsh rule of law indeed if a litigant were to change a statement in an amended pleading to repair a weakness cited by an adversary or by the Court, only to have the case dismissed because the conforming change in some way may conflict with an allegation in the earlier pleadings.").

As noted, however, the Court need not determine whether the approach in *Sulton*, *Poindexter*, and the other cases to which Defendants cite,[5] or the approach in *In re PXRE* and *Streit* is the correct one. Rather, because Plaintiff "does not take issue with [D]efendants'

---

[5] In addition to the cases discussed herein, Defendants cite to two additional district court cases in support of this position. In the first, *Colliton v. Cravath, Swaine & Moore LLP*, Judge Buchwald addressed contradictory -- not omitted -- pleadings, in the context of a motion for sanctions, and concluded that the plaintiff's "[s]elf-contradictory assertions . . . clearly lack[ed] reasonable evidentiary support, in violation of Rule 11(b)(3)." No. 08 Civ. 0400 (NRB), 2008 U.S. Dist. LEXIS 74388, at *37-39 (S.D.N.Y. Sept. 24, 2008) (citing *Polar Int'l Brokerage Corp. v. Reeve*, 196 F.R.D. 13, 18 (S.D.N.Y. 2000) (also addressing contradictory pleadings in the Rule 11 context), *aff'd in part, dismissed in part on other grounds sub. nom.*, *Corroon v. Reeve*, 258 F.3d 86 (2d Cir. 2001)). In the second case, *Dozier v. Deutsche Bank Trust Co. Ams.*, the Court noted that it "need not accept allegations that contradict allegations [the plaintiff] has consistently made in his pleadings since the inception of this litigation," and concluded that, as a result, the factual allegations in the plaintiff's second amended complaint were insufficient, but again did so in a case involving contradictory, not omitted, allegations, and cited only *Colliton*, 2008 U.S. Dist. LEXIS 74388, at *37-39, to support this position. *Dozier*, No. 09 Civ. 9865 (LMM), 2011 U.S. Dist. LEXIS 100467, at *10 (S.D.N.Y. Sept. 1, 2011).

16

arguments concerning the import of admissions made in the pleadings filed with the [C]ourt," Pl. Opp. 21, and instead argues that the so-called admissions will, at best, give rise to a question of fact to be determined by the jury, the Court will continue to construe Plaintiff's Amended Complaint as the operative pleading, but will consider the omitted facts in addressing Defendants' arguments both as to why these omissions are "fatal to [Plaintiff's] claims under the Copyright Act," and as to their effect within the broader context of the motion to dismiss.   Def. Br. 20.

      2.  *What Effect do the Statements Have*

Defendants would have the Court conclude that because the original complaint contains a "judicial admission" stating that the use was "effectively concealed to a casual listener," and required "careful audio analysis to discern," the claims fail to allege actionable copyright infringement under the ordinary observer test.  Plaintiff argues that a "casual observer" is not the same as an "ordinary observer," and that "a 'careful audio analysis' is simply another way of saying 'listening.'"  Pl. Opp. 2-3.

The Court need not opine on the denotational or etymological merits of either party's arguments, however, because Defendants' arguments focus on the wrong songs:  that is, in the context of fragmented literal similarity, the focus is on the quantitative and qualitative aspects of the allegedly infringed sample to the pre-existing work, not to the infringing work.  *See Warner Bros. II.*, 720 F.2d at 242 (noting that courts only allow "the literal copying of a small and usually insignificant portion of the plaintiff's work").  Put differently, the focus of the relevant inquiry is on whether the samples taken from the Trouble Funk songs constitute a substantial portion of the original song; it is not on the audibility or import of the Trouble Funk samples in the corresponding Beastie Boys' songs. *See Broadus*, 2001 WL 948714, at \*3; *c.f. Jean*, 2002

WL 287786, at *5; *Sandoval*, 147 F.3d at 127; *Nihon Keizai Shimbun, Inc.*, 166 F.3d at 70. As

such, whether the Beastie Boys "effectively concealed [the sample] to the average listener" or

whether the sample could only be discerned upon "close examination," is largely irrelevant to the

question of whether the protectable elements of the samples are quantitatively and qualitatively

significant to the original song. *See Newton,* 388 F.3d at 1195 (discussing at length why the

relevant focus in music sampling cases is on the plaintiff's, not the defendant's work).

    E.  <u>Defendants' Use of the Samples</u>

       Having determined that Defendants are not entitled to dismissal of Plaintiff's claims

based on the admissions in the original complaint, the Court must now address whether dismissal

is nonetheless appropriate because the alleged infringement falls below the requisite quantitative

and qualitative threshold. Defendants are entitled to dismissal if, after reviewing "the plaintiff's

complaint, together with the works incorporated therein," the Court can conclude as a matter of

law that a given Trouble Funk sample is not of sufficient quantitative or qualitative significance

to the original song to "plausibly give rise to an entitlement to relief" for copyright infringement.

*Peter F. Gaito,* 602 F.3d at 64. In addition, because the "*sine qua non* of copyright is

originality," *Feist,* 499 U.S. at 345, in addition to being "nontrivial," the "copied elements of the

works must be original . . . to constitute improper appropriation." *Jean,* 2002 WL 287786, at *5.

For purposes of copyright law, "original" means that "the work was independently created by the

author (as opposed to copied from other works), and that it possesses at least some minimal

degree of creativity." *Feist,* 499 U.S. at 345. "Common phrases are generally not susceptible to

copyright protection." *O'Brien v. Chappel & Co.*, 159 F. Supp. 58, 59 (S.D.N.Y. 1958);

*Stratchborneo v. ARC Music Corp.,* 357 F. Supp. 1393, 1405 (S.D.N.Y. 1973); *see also Acuff-*

*Rose Music, Inc. v. Jostens, Inc.,* 155 F.3d 140, 144 (2d Cir. 1998) ("[T]he prior usage of the

saying was sufficiently widespread as to make it exceedingly unlikely . . . that [the song's author] had . . . independently created the phrase.").

Finally, because Plaintiff alleges infringement of both the musical composition and the sound recording for each sample, the Court will address both, to the extent necessary. *See Poindexter*, 2012 U.S. Dist. LEXIS 42174, at *5 n.3 (noting that "[s]ound recordings and their underlying musical compositions are 'separate works with their own distinct copyrights'") (quoting *In re Cellco P'ship*, 663 F. Supp. 2d 363, 368-69 (S.D.N.Y. 2009) (Cote, *J.*)); *see also Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1197 n.3 (10th Cir. 2005)); 17 U.S.C. § 102(a). A musical composition "consists of rhythm, harmony, and melody, and it is from these elements that originality is to be determined." *James W. Newton v. Diamond*, 204 F. Supp. 2d 1244, 1249 (C.D. Cal. 2002) (internal citations omitted). "A musical composition's copyright protects the generic sound that would necessarily result from any performance of the piece." *Id.* "The sound recording, on the other hand, is 'the aggregation of sounds captured in the recording.'" *Poindexter*, 2012 U.S. Dist. LEXIS 42174, at *5 n.3 (quoting *Newton*, 204 F. Supp. 2d at 1249; *see also* 17 U.S.C. § 101 (sound recordings are "works that result from the fixation of a series of musical, spoken, or other sounds").

Finally, as required, the Court accepts as true all well-pleaded facts, except to the extent the works themselves compel otherwise, *Peter F. Gaito,* 602 F.3d at 64, and focuses only on the qualitative and quantitative importance of the infringed portion to the original song. *See Newton,* 388 F.3d at 1195.

### 1. The Say What Sample -- Used in Shadrach

Plaintiff's first claim relates to a "distinctive vocal sequence" from the Trouble Funk song *Say What*, which is roughly one-second long and consists of a single utterance of the

"shouted title lyric," i.e., the phrase "say what." Am. Compl. ¶ 23.  This sequence, the "*Say What* Sample," first occurs at the very beginning of original song, where it is repeated three times with percussive beats separating each repetition.[6]  This same thrice-repeated vocal sequence occurs at two more points in the original Trouble Funk song, at the :51, and 2:54 points of the recording.  In total, the *Say What* Sample itself -- that is, the one-second long, single utterance of the phrase "say what" -- occurs nine times in the original recording.  In the allegedly infringing Beastie Boys song, *Shadrach*, the *Say What* Sample is played a single time, at the 3:04 second point, as part of the *Shadrach* lyric, "and we love the hot butter, 'say what,' the popcorn." Pl. Compl. 24.

Quantitatively, the *Say What* sample constitutes less than nine seconds of the 8:11 minute-long Trouble Funk song.  Although this is a small portion of the original song, the Court cannot say, as a matter of law, that it is quantitatively so negligible as to necessarily be *de minimis*.  *See, e.g., Poindexter*, 2012 U.S. Dist. LEXIS 42174, at *10-11 (single musical note cannot support infringement); *Elsmere Music Inc.*, 482 F. Supp. at 744; 4-13 NIMMER § 13.03[A][2][a] n.108.2.  Rather, the Court must look to the qualitative importance of the sample to the original.

Plaintiff argues that the sample is qualitatively significant to the original because it "consists of what are arguably the two most important words in the entire piece:  the title, shouted exuberantly three times in a row at the very beginning of the piece and then repeated at two different points in the song."  Pl. Opp. 13.  Defendants argue that the words "say what," are not protectable as to the musical composition, and reiterate their argument, that the Court has already rejected, as to focusing on the overall look and feel of the two recordings.

---

[6] I.e., "Say What!" (dun/dun), "Say What!" (dun/dun), "Say What!" (dun/dun).

Having reviewed the Complaint, the parties' arguments, and the relevant portions of *Say What* and *Shadrach*, the Court cannot conclude that the sample used in *Shadrach* is substantively insignificant to *Say What*.  As Plaintiff's note, this is not simply a phrase in the song, but rather the title phrase of the song.  *See Elsmere Music*, 482 F. Supp. at 744 (noting that the "taking involved in th[e] action [was] relatively slight," but that "on closer examination it becomes apparent" that the music and lyrics taken were "the heart of the composition").  Furthermore, assuming, without concluding, that "say what" is a common phrase now, the Court cannot at the motion to dismiss stage conclude that this is in fact a common phrase or was a common phrase at the time *Say What* was recorded; this particular question is more appropriately answered at a later point in the proceedings.  *See Jean*, 2002 WL 287786, at *7 (concluding at the summary judgment stage that the phrase "clap your hands" was a common lyrical phrase); *Boone v. Jackson*, 2005 WL 1560511, at *4 (concluding on summary judgment that the phrase "holla back" was non-copyrightable); *Lil' Joe Wein Music, Inc. v. Jackson*, No. 06-200079-CIV, 2006 WL 5428227, at *5 (S.D. Fla. Oct. 27,2006) (concluding on summary judgment that the phrase "Go __, it's your birthday" was non-copyrightable), *aff'd* 245 F. App'x 873 (11th Cir. 2007).  Accordingly, Defendants' motion to dismiss Plaintiff's claims of copyright infringement as to both the composition and recording of the *Say What* Sample is denied.

   2.   *The First* Drop the Bomb *Sample  -- Used in* Car Thief

Plaintiff's second claim relates to a purely musical (i.e., non-lyrical) portion of the Trouble Funk song *Drop the Bomb*, which is approximately four-seconds long and consists of a "continuously descending synthesizer note with drums, percussion, and swelling voices underneath." Am Compl. ¶ 38. Because Plaintiff alleges that three separate portions of *Drop the Bomb* were sampled, the parties have referred to this piece as the first *Drop the Bomb* sample

21

(the "DTB1 Sample"), and the Court will as well.  The DBT1 Sample first occurs at the :10 second point in the original Trouble Funk song, and is repeated in *Drop the Bomb* in a similar fashion at the 1:20, 2:50, and 4:30 minute points.  Plaintiff alleges that the Beastie Boys manipulated the DTB1 Sample in a variety of ways and then incorporated the manipulated version of the DTB1 Sample into their song *Car Thief*, at the :00 and 1:05 points in that song.

Quantitatively, the DTB1 Sample constitutes at most 16 seconds of the 5:59 minute long Trouble Funk song, which is sufficient under the circumstances to merit analysis of the qualitative import.  As to that, Plaintiff alleges that the sample is qualitatively significant because it consists of a "descending synthesizer note . . . reminiscent of the descending-pitch sound that often accompanies a visual image of a falling object in cartoons or movies, such as when Wile E. Coyote falls off of a cliff in a 'Road Runner' cartoon, and its repeated use by Trouble Funk in *Drop the Bomb* is thus thematically consistent with the title of that recording."  Am. Compl. ¶ 38.

Although here, too, the Court would conclude that the substantive import is sufficiently alleged to allow the claims to proceed past the motion to dismiss stage, Defendants correctly note that Plaintiff's own allegation makes clear that the sample at issue is not copyrightable.  Def. Reply 11.  As Plaintiff notes, the sound effect played in the *Drop the Bomb* Sample is one that "often accompanies a visual image of a falling object in cartoons or movies."  Am. Compl. ¶ 38.  By Plaintiff's own admission, then, the sample at issue lacks the requisite originality to be afforded copyright protection.  *See Feist*, 499 U.S. at 345 ("The *sine qua non* of copyright is originality.  To qualify for copyright protection, a work must be original to the author . . . (as opposed to copied from other works).").  Indeed, Plaintiff's statements demonstrate that "the prior usage of the [sound effect] was sufficiently widespread to make it exceedingly

unlikely . . . that [Trouble Funk] had . . . independently created the [effect]." *Acuff-Rose Music,*

*Inc.*, 155 F.3d at 144; *see also Jean*, 2002 WL 287786, at *6 (noting that because the supposedly

copyrightable portion of the song at issue "appear[ed] frequently" in a variety of other songs and

recordings, "a reasonably jury could only conclude that it [was] an element of [the song] that is

not protectible"). Because Plaintiff's own allegations effectively concede that the sample was in

widespread use and appeared frequently in a number of different media, Plaintiff's copyright

claim as to the *Drop the Bomb* Sample fails to state a claim upon which relief can be granted.

*See Peter F. Gaito*, 602 F.3d at 65 ("[P]laintiff's complaint, together the works incorporated

therein, do not 'plausibly give rise to an entitlement to relief.'" (quoting *Iqbal*, 556 U.S. at 679)).

Accordingly, Defendants' motion to dismiss Plaintiff's claims of copyright infringement as to

both the composition and recording of the first *Drop the Bomb* Sample is granted.

### 3. *The Second* Drop the Bomb *Sample -- Used in* Hold It Now Hit It

Plaintiff's third claim also relates to a purely musical portion of the Trouble Funk song

*Drop the Bomb*. The second *Drop the Bomb* sample (the "DTB2 Sample") is a roughly three-

second long drum sequence "that consists of grouped drumbeats (each 'one...two/three') with a

generally descending pitch," which occurs a single time in the original song, at the :07 second

point. Am Compl. ¶ 52. Plaintiff alleges that the DTB2 Sample, like the DTB1 Sample, is

"consistent with the title of the recording," because it features a "generally descending pitch."

Am. Compl. ¶ 52. The DTB2 sample occurs in the allegedly infringing Beastie Boys song, *Hold*

*It Now Hit It*, on six separate occasions. Am. Compl. ¶ 53 (sample plays at :00, :46, 1:31, 2:17,

3:02, and 3:14 second points).

Unlike with the *Say What* Sample, the DTB2 Sample is neither a quantitatively nor

qualitatively significant portion of the original piece. *See Broadus*, 2001 WL 984714, at *3; *see*

*also Newton*, 388 F.3d at 1189 (concluding that the Beastie Boys use of a three-note sequence was *de minimis*).  Quantitatively, the sample consists of a three second drumbeat played once at the beginning of the song and constitutes at most three seconds of the 5:59 minute long song. Defendants claim that it is qualitatively significant because it introduces the first *Drop the Bomb* sample and "mirrors the concept of a falling object (such as a dropped bomb) with its descending drum pitches."  Pl. Opp. 14.

Contrary to Plaintiff's assertions, the DTB2 sample, if even remotely quantitatively significant, is inarguably not significant to the Trouble Funk song.  *See Newton*, 388 F.3d at 1189; *see also* 4-13 Nimmer § 13.03[A][2][a] ("If, however, the similarity is only as to nonessential matters, then a finding of no substantial similarity should result.").  Plaintiff tries to piggyback off of the arguments that may have been sufficiently persuasive as to the DTB1 sample, but fails to do so in any compelling manner.  The sequence is in no way "the heart of the composition," *see Elsmere Music*, 482 F. Supp. at 744, or in any other way qualitatively important or unique, and it is so insignificant quantitatively that together these factors preclude any finding of actionable infringement based on the use of this sample.  *See Stratchborneo*, 357 F. Supp. at 1404-05 (noting that copying that is small or common must be "especially unique or qualitatively important").  Accordingly, Defendants' motion to dismiss Plaintiff's claims of copyright infringement as to both the composition and recording of the second *Drop the Bomb* sample is granted.

### 4.   *The Third* Drop the Bomb *Sample -- Used in* The New Style

Like Plaintiff's second and third claims, Plaintiff's fourth claim also relates to a purely musical portion of the Trouble Funk song *Drop the Bomb*.  The third *Drop the Bomb* sample (the "DTB3 Sample"), is a roughly six-second long sequence that includes the entire four-second

long DTB1 Sample as well as an additional two second "kick and snare drum sequence." Am. Compl. ¶ 65. The DTB3 Sample occurs a single time at the :10 second point in the original Trouble Funk recording. Am. Compl. ¶ 65. Plaintiff again alleges that this sample is qualitatively important because it is "thematically consistent with the title of that recording." *Id.*

Quantitatively, the single occurrence of the DTB3 Sample in the original accounts for six seconds of the 5:59 minute long Trouble Funk song. Unlike the DTB1 Sample, which is repeated a number of times throughout the song, the DTB3 Sample -- which is little more than an extended DTB1 Sample -- is not repeated anywhere else in the recording. Indeed, the drum sequence does not even occur after any of the subsequent occurrences of the DTB1 Sample. Quantitatively, then, the sample at issue here represents a considerably smaller proportion of the overall piece than did the DTB1 Sample.

Qualitatively, the addition of the brief snare drum sequence after the DTB1 Sample -- itself non-copyrightable -- in no way makes this sample "thematically consistent" with the *Drop the Bomb* title. Rather, the use is both quantitatively and qualitatively insignificant, and no juror could conclude that there is substantial similarity amounting to actionable copyright infringement. Plaintiff effectively concedes this point, as to the composition, and it's argument as to the sound recording is unavailing. *See Broadus*, 2001 U.S. Dist. LEXIS 12894, at *12-13; *Gottwald*, 2011 U.S. Dist. LEXIS 103414, at *17. Accordingly, Defendants' motion to dismiss Plaintiff's claims of copyright infringement as to both the composition and recording of the third *Drop the Bomb* sample is granted.

> 5. *The* Let's Get Small *Sample -- Used in* Hold it Now Hit It

Plaintiff's fifth claim relates to a "distinctive orchestra sequence" from the Trouble Funk song *Let's Get Small*, which is roughly three-seconds long and "consists of a series of five

punchy ascending chords." Am Compl. ¶ 75.  This sequence, the *Let's Get Small* Sample, occurs

at about the :03 second point of the original song, and is "repeated seventeen more times during

the course of the recording." Am. Compl. ¶ 75.  Plaintiff alleges that the Beastie Boys

manipulated the *Let's Get Small* Sample in a variety of ways and then incorporated the

manipulated version of the Sample into their song, *Hold It Now Hit It*, at the :08, :54, 1:39, 2:24,

and 3:22 points in that song.  Defendants argue that the use of the *Let's Get Small* Sample in the

Beastie Boys' song, *Hold It Now Hit It*, (also the subject of Plaintiff's third claim), "consists of

one chord, which, by definition, is not subject to copyright protection." Def. Br. 19.

Quantitatively, the *Let's Get Small* Sample accounts for approximately 51 seconds of the

5:31 minute-long song. As such, the *Let's Get Small* sample is quantitatively more significant to

the original than any of the other samples at issue.  In addition, Plaintiff has sufficiently alleged

the qualitative import of the sample to the original, and these allegations are not contradicted by

the song itself. *See Peter F. Gaito*, 602 F.3d at 64.  Finally, although Plaintiff again largely

concedes that the substantive import of the sample largely adheres to the recording, rather than

the composition, the Court cannot conclude from the papers before it or the songs themselves

that the chord is not copyrightable.  And, although courts agree that sampling of a single note is

*de minimis* and "cannot support a claim of copyright infringement," *Poindexter*, 2012 U.S. Dist.

LEXIS 42174, at *12 (collecting cases), the sampling at issue here goes well beyond the use of a

single note.  Accordingly, Defendants' motion to dismiss Plaintiff's claims of copyright

infringement as to both the composition and recording of the *Let's Get Small* Sample is denied.

      6. *The* Good to Go *Sample -- Used in* B-Boy Bouillabaisse/A.W.O.L

Plaintiff's final claim relates to a "distinctive vocal and music sequence" from the

Trouble Funk Song *Good to Go*, which is roughly three-seconds long and "includes punchy

guitar chords backed by percussion under the distinctive shouted lyrics, 'Now I want y'all to break this down.'" Am. Compl. ¶ 87. This sequence, "the *Good to Go* Sample," appears a single time in the Trouble Funk song, "at approximately the :17 second point," and is allegedly used a single time in the Beastie Boys song, *B-Boy Bouillabaisse/A.W.O.L.*, at approximately the 11:54 point. Am. Compl. ¶¶ 86, 87. Defendants argue that the use of *Good to Go* sample in the Beastie Boys' song, *B-Boy Bouillabaisse/A.W.O.L,* consists of a phrase that "is not protectable since it is a common and unoriginal phrase." Def. Br. 19 (citing *Pyatt*, 2011 U.S. Dist. LEXIS 55754, at \*23).

Quantitatively, the *Good to Go* Sample accounts for only three seconds of the 6:20 minute-long original Trouble Funk song. The Sample is quantitatively small, even compared with the previous samples. Moreover, although the Court cannot conclude at this stage that the phrase is not-copyrightable, there is nothing in Plaintiff's Amended Complaint or the song itself to suggest that its value to the piece is so significant as to give qualitative value to an otherwise quantitatively minute portion. Unlike with the *Say What* Sample, where the sample was also the title of the song and was repeated emphatically at various points in the recording, there is nothing from which a juror could conclude that the *Good to Go* Sample is even thematically relevant and there is no repetition. Indeed, Plaintiff's Amended Complaint fails to allege any facts regarding why the Sample is qualitatively important to the original song, and instead improperly focuses on the importance of the Sample to the Beastie Boys song in which the Sample is used. Accordingly, Defendants' motion to dismiss Plaintiff's claims of copyright infringement as to both the composition and recording of the *Good to Go* Sample is granted.

## IV.    Claim Accrual Under 17 U.S.C. § 507(b)

Having concluded that Defendants are not entitled to dismissal of certain of Plaintiff's

claims, the Court must now address Defendants' contention that Plaintiff's copyright

infringement claims should be limited "to the statutory three-year period." Pl. Br. 23-25. The

relevant language from the Copyright Act states that "[n]o civil action shall be maintained under

this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b).

The question, then, is not *whether* to apply the "three-year period," as the Court is statutorily

bound to do so, but *how* to determine when a claim accrues: did "Congress intend[] courts to

apply the injury rule or the discovery rule when determining when an infringement claim

accrues." *Muench Photography, Inc. v. Houghton Mifflin Harcourt Publ'g Co.*, No. 09 Civ.

2669 (LAP), 2013 WL 4464002, at *5 (S.D.N.Y. Aug. 21, 2013). Defendants urge the Court to

follow the "injury rule," under which "a claim accrues at the time of each act of infringement,

regardless of the copyright holder's knowledge of the infringement." *Urbont v. Sony Music

Entm't*, 863 F. Supp. 2d 279, 281 (S.D.N.Y. 2012) (Buchwald, *J*). In contrast, "Plaintiff urges

the Court to follow the "discovery rule," under which "a claim for copyright infringement does

not accrue until the aggrieved party knows or has reason to know of the injury that forms the

basis of the claim." *Id.*

     "Neither the Supreme Court nor the Second Circuit has ruled on the appropriate accrual

rule for federal copyright infringement claims." *Urbont*, 863 F. Supp. 2d at 282. However, as a

number of courts in this district have recently discussed, the practice in this Circuit had been to

apply the discovery rule in copyright infringement cases; and "the Court of Appeals seemed to

have instructed as much through its holdings in *Stone v. Williams*, 970 F.2d 1043, 1048 (2d Cir.

1992), and *Merchant v. Levy,* 92 F.3d 51, 56 (2d Cir. 1996)." *Muench Photography, Inc.*, 2013

WL 4464002, at *5. Since the Supreme Court's decision in *TRW Inc. v. Andrews*, 534 U.S. 19

(2001), however, courts have begun "to reexamine whether *Stone* and *Merchant* continue to

govern the issue of when a copyright infringement claim accrues." *Muench Photography, Inc.*, 2013 WL 4464002, at *5.

The reexamination trend began with Judge Kaplan's 2004 decision in *Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235 (S.D.N.Y.2004). In *Auscape*, Judge Kaplan analyzed the Supreme Court's ruling in *TRW Inc.*, which he read as advising against the application of the discovery rule except in limited circumstances, and conducted an exacting review of the legislative history of the relevant statutory language. *Id.* at 242-47. Ultimately, he concluded that "Congress intended to adopt a three-year limitations period running from the date of the infringement, as a discovery rule would have defeated [the Act's] overriding goal of certainty." *Id.* at 247; *see also Urbont*, 863 F. Supp. 2d at 282 ("Judge Kaplan held that the injury rule is in fact the appropriate rubric to be applied to infringement claims under the Copyright Act.").

Since *Auscape,* a growing majority of the courts in the Southern District of New York to address this question have followed Judge Kaplan's lead and applied the injury rule to infringement claims. *See, e.g., Muench Photography, Inc.*, 2013 WL 4464002, at *6 (Preska, *J.*) ("[J]oin[ing] what is now the majority approach in this jurisdiction in adopting the injury rule for the purposes of evaluating whether copyright infringement claims are time barred."); *Urbont*, 863 F. Supp. 2d at 282 (Buchwald, *J.*) ("[W]e find the arguments advanced in favor of the injury rule to be persuasive and thus follow the majority approach within this jurisdiction."); *Harris v. Simon & Schuster, Inc.*, 646 F. Supp. 2d 622, 630 (S.D.N.Y. 2009) (Sweet, *J.*); *Broadvision Inc. v. Gen. Elec. Co.*, No. 08 Civ. 1478 (WHP), 2009 WL 1392059, at *6 (S.D.N.Y. May 5, 2009); *Med. Educ. Dev. Servs., Inc. v. Reed Elsevier Grp., PLC*, No. 05 Civ. 8665 (GEL), 2008 WL 4449412, at *10 (S.D.N.Y. Sept. 30, 2008); *CA, Inc. v. Rocket Software, Inc.*, 579 F. Supp. 2d

355, 360 (S.D.N.Y. 2008) (Spatt, *J.*); *Vasquez v. Torres-Negron,* No. 06 Civ. 619 (CM), 2007

WL 2244784, at *7 (S.D.N.Y. July 11, 2007); *Roberts v. Keith,* No. 04 Civ. 10079 (CSH), 2006

WL 547252, at *3 (S.D.N.Y. Mar. 7, 2006). *But see, e.g., Psihoyos v. John Wiley & Sons, Inc.,*

No. 11 Civ. 1416 (JSR), 2011 WL 4916299, at *5 (S.D.N.Y. Oct. 14, 2011) (noting that under

*Stone,* 970 F.2d at 1048, court is to apply the discovery rule and that the Supreme Court's

holding in *TRW Inc.* "did not change this"); *Newsome v. Brown,* No. 01 Civ. 2807 (TPG), 2005

WL 627639, at *5 (S.D.N.Y. Mar. 16, 2005).[7]

Having reviewed the parties' arguments and the relevant precedent on both sides of this

debate, the Court finds persuasive the approach in *Auscape,* as well as Judge Buchwald's recent

detailed and informative analysis of this question in *Urbont,* 864 F. Supp. 2d at 282-86, and joins

the majority within this district in applying the injury rule to questions of copyright infringement.

The Court will limit Plaintiff's claims, accordingly, to the alleged acts of infringement that

occurred after May 12, 2009, i.e., the date three years prior to Plaintiff's filing of this action

## V.    Conclusion

For the reasons discussed above, Defendants' motion to dismiss is GRANTED in part

and DENIED in part.  Plaintiff's Second, Third, Fourth, and Sixth Claims for Relief for

copyright infringement are dismissed, pursuant to Fed. R. Civ. P. 12(b)(6).  The remainder of

Plaintiff's claims are limited to alleged acts of infringement that have occurred since May 12,

2009. Within two weeks of the date of this order, the parties are to submit to the Court an

updated case management plan not inconsistent with, but to fully replace, the one previously

---

[7] Notably, outside of the Second Circuit, "the discovery rule has remained the consensus approach of courts to have addressed the issue." *Urbont,* 863 F. Supp. 2d at 282 (citing *William A. Graham Co. v. Haughey,* 568 F.3d 425, 437 (3d Cir. 2009); *Warren Freedenfeld Assocs., Inc. v. McTigue,* 531 F.3d 38, 44 (1st Cir. 2008); *Groden v. Allen,* 279 F. App'x. 290, 294 (5th Cir. 2008); *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC,* 477 F.3d 383, 390 (6th Cir. 2007); *Polar Bear Prods., Inc. v. Timex Corp.,* 384 F.3d 700, 705-06 (9th Cir. 2004); *Gaiman v. McFarlane,* 360 F.3d 644, 653 (7th Cir. 2004)).

ordered by the Court on November 16, 2012.  Dkt. No. 14.  This Order resolves Docket Number 26.

SO ORDERED.


Dated: September ___, 2013
       New York, New York

_____
        ALISON J. NATHAN
        United States District Judge