UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TufAmerica, Inc.,

    Plaintiff,

—v—

Michael Diamond, *et al.*,

    Defendants.

12-CV-3529 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff TufAmerica, Inc. ("TufAmerica") brings this copyright infringement action against Defendants Michael Diamond, Adam Horovitz, and Adam Yauch (the "Beastie Boys Defendants"), as well as Universal-Polygram International Publishing, Inc.[1] and Capital Records, LLC (the "UMG Defendants," and, collectively with the "Beastie Boys Defendants," the "Defendants"). In an Opinion and Order dated September 10, 2013, this Court Granted the Defendants' motion to dismiss TufAmerica's Second, Third, Fourth, and Sixth Claims. *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 609 (S.D.N.Y. 2013). Before the Court are the Defendants' motions for summary judgment as to TufAmerica's remaining First and Fifth Claims for copyright infringement of the pre-1990 sound recordings and compositions for the songs "Let's Get Small" and "Say What." Although the motions to dismiss were focused on whether certain Beastie Boys' songs infringed TufAmerica's alleged exclusive licenses to certain copyrights, the motions for summary judgment are focused on whether TufAmerica has standing to bring this copyright infringement action in the first place. For the reasons discussed below, the Court concludes that TufAmerica lacks standing to maintain this suit and GRANTS the Defendants' motions for summary judgment.

---

[1] Incorrectly named as Universal Music Publishing, Inc. and Universal Music Publishing Group.

1

I.  **LEGAL STANDARD**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, a court views all evidence in the light most favorable to the non-movant, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and "resolve[s] all ambiguities and draw[s] all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). Finally, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. In other words, "nonmoving parties must do more than simply show that there is some metaphysical doubt as to the material facts, and they may not rely on conclusory allegations or unsubstantiated speculation." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (internal citations and quotation marks omitted).

II.  **BACKGROUND**

The present action for copyright infringement is premised on the assumption that the owners of copyrights in the sound recordings and compositions for the songs "Say What" and "Let's Get Small" granted TufAmerica an exclusive license to those recordings and compositions. But that foundational assumption may not hold true in light of a number of agreements entered into in 1984, 1999, and 2012. As described below, the Defendants contend that the original copyright owners of "Say What" and "Let's Get Small" conveyed their interests in the sound recordings and compositions for these songs to third parties in 1984. While there is some dispute regarding the meaning and authenticity of the 1984 agreements, there is no dispute regarding the 1999 and 2012 agreements under which TufAmerica received a non-exclusive

license from two of the three original copyright owners and a right to sue from the third. Under longstanding copyright law, the 1999 and 2012 agreements are insufficient to convey the type of exclusive license necessary for TufAmerica to maintain this copyright suit.

### A. The Formation of the Band

In the mid-1970s, Robert "Dyke" Reed and Tony Fisher formed the musical group "Trouble Funk." SUF ¶¶ 2-3.[2] James Avery later joined the group in 1979. SUF ¶ 3. The members of Trouble Funk never had a formal agreement governing their relationship with each other, SUF ¶ 5, but in or around 1982, the band members formed a record label called D.E.T.T. to manufacture their sound recordings, SUF ¶ 7.[3] In 1982, the members of Trouble Funk released a single of "Let's Get Small" on the D.E.T.T. record label. SUF ¶ 11. Avery, Fisher, and Robert Reed were the authors and performers of "Let's Get Small." SUF ¶¶ 12, 107. And in 1983, the members of Trouble Funk released a single of "Say What" on the D.E.T.T. record label, SUF ¶ 13, which was also included on a double album called "In Times of Trouble" that was released later that year, SUF ¶ 14. Avery, Fisher, and Robert Reed were also the authors and performers of "Say What." SUF ¶¶ 16, 106.

### B. The 1984 Agreements

In 1984, a Washington, DC-based promoter named Carl "Maxx" Kidd began shopping for a distribution deal for Trouble Funk, SUF ¶ 10, 17, and he ultimately approached members of Trouble Funk about entering into a deal with Island Records, Inc. ("Island"). SUF ¶ 18. After discussions and negotiations, the members of Trouble Funk, T.T.E.D., and Island signed a series of inter-related agreements. SUF ¶ 22.

---

[2] SUF stands for Local Rule 56.1 Statement of Undisputed Facts. The parties submitted multiple Local Rule 56.1 statements, see Dkt. Nos. 76, 82, 95, 99, but the parties helpfully continued the sequential numbering of each Local Rule 56.1 statement and counterstatement. Unless otherwise noted, the Local Rule 56.1 Statement of Undisputed Facts cited herein refers to Dkt. No. 95, which contains TufAmerica's responses to the Defendants' Local Rule 56.1 Statements of Undisputed Facts.

[3] The initials D.E.T.T. stood for Dyke (i.e., Robert Reed), Rio Edwards (the band's manager), Tony Fisher, and Taylor Reed (Robert Reed's brother). Fisher Dep. Tr. 30:9-19.

3

First,[4] Avery, Fisher, Robert Reed, and Taylor Reed signed an exclusive recording agreement dated October 11, 1984 with Kidd's company, T.T.E.D. (the "Recording Agreement"). SUF ¶ 24; Dkt. No. 80-7. Second, T.T.E.D. signed an agreement dated October 11, 1984 with Island, promising to deliver sound recordings created by Trouble Funk (and other performers not relevant here) under the Recording Agreement to Island. SUF ¶ 25; Dkt. No. 80-8. Third, Avery, Fisher, Robert Reed, and Taylor Reed signed a "Letter of Inducement" dated October 11, 1984 with Island. SUF ¶ 26. Later in 1984, Avery, Fisher, Robert Reed, and Taylor Reed signed another agreement with Island, SUF ¶¶ 44-45, which directed Island to pay "royalties and sums payable pursuant to paragraphs 7(a) through 7(d) of the Island Contract" partially to T.T.E.D. and partially to Trouble Funk pursuant to a formula set forth therein. SUF ¶ 47. Finally, Avery, Fisher, Robert Reed, and Taylor Reed all signed an agreement with Island dated November 30, 1989 that terminated "the agreements dated October 11, 1984." SUF ¶ 61; Dkt. No. 80-14.

Defendants also produced an agreement dated October 11, 1984 that purports to assign the copyrights in the musical compositions for "Let's Get Small," "Say What," and other songs to Farr Music (a company created by Avery, Fisher, and Robert Reed) and Z-Kidd Music (a company owned or controlled by Kidd). SUF ¶¶ 63-64.

Without going too far into the complicated details of these various agreements, the Defendants contend that, through them, Trouble Funk conveyed their copyrights in the sound recordings and compositions of "Let's Get Small" and "Say What" to third parties including Island and Z-Kidd Music, while TufAmerica advances competing interpretations of these agreements and questions their authenticity.

### C. The 1999 and 2010 TufAmerica Agreements

In 1999, TufAmerica became interested in entering a deal with the members of Trouble Funk under which TufAmerica would negotiate licenses or bring actions against parties for using

---

[4] TufAmerica disputes the sequencing of the agreements, but does not dispute that all three agreements were dated October 11, 1984. *See* SUF ¶¶ 24-26. The Court does not imply that the agreements were signed in any particular order, and merely uses ordinal numbers here for purposes of organization.

4

or exploiting Trouble Funk compositions and recordings without authorization. SUF ¶ 71. On December 23, 1999, TufAmerica entered into two administration agreements with Robert Reed and Fisher: one agreement governs master recordings (the "Master Administration Agreement"); the other agreement governs compositions (the "Composition Administration Agreement," and, together with the Master Administration Agreement, the "1999 Agreements"). SUF ¶ 72-73. Fisher did not sign the agreements himself, but he authorized Robert Reed to enter into the 1999 Agreements on his behalf. SUF ¶ 73. Through these agreements, Robert Reed and Fisher purported to sell, assign, transfer, and set over to TufAmerica the exclusive right to administer all of Trouble Funk's rights in the master recordings and compositions created before 1990 for, among other things, "Say What" and "Let's Get Small." SUF ¶¶ 75-78, 82.

TufAmerica later entered into a separate agreement, the "2012 Agreement," with Avery under which Avery "exclusively license[d] to [TufAmerica] his right to sue and recover on all accrued and future causes of action in connection with all of the Trouble Funk Copyrights." SUF ¶¶ 100-105; Dkt. No. 80-27. Reed passed away in 2008. SUF ¶ 83.

### III. DISCUSSION

Under the Copyright Act, "only two types of claimants [may] sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights." *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32 (2d Cir. 1982) (citing 17 U.S.C. § 501(b) (Supp. IV 1980); 3 M. Nimmer, *Nimmer on Copyright* § 12.02, at 12-25 (1982)), *superseded on other grounds as stated in Russian Entm't Wholesale, Inc. v. Close-Up Int'l Inc.*, 482 F. App'x 602, 606 (2d Cir. 2012) (summary order). In their motions for summary judgment, the Defendants raise two sets of arguments concerning (1) the 1984 Agreements and (2) the 1999 and 2012 Agreements. Broadly, the Defendants contend that in 1984 the members of Trouble Funk granted in whole or in part their copyrights in the sound recordings and compositions for "Say What" and "Let's Get Small" to third parties, so they lacked the necessary authority to grant an exclusive license in 1999 and 2012 to TufAmerica. Alternatively, the Defendants contend that even if the members of Trouble Funk

5

still retained their copyrights in "Say What" and "Let's Get Small" at the time of the 1999 and 2012 Agreements, those agreements still do not confer standing on TufAmerica because they are non-exclusive licenses or licenses that conferred merely a bare right to sue. As discussed below, the Court concludes that the latter argument disposes of the motion for summary judgment, so it need not (and does not) reach the former argument concerning the 1984 Agreements.

### A. The 1999 TufAmerica Agreement Did Not Convey an Exclusive License

The Defendants contend that, even assuming Avery, Fisher, and Robert Reed did not grant their copyrights in the sounds recordings and compositions at issue to Island in 1984, TufAmerica nonetheless lacks standing to pursue the present action because it is not an exclusive licensee of the copyrights in question. Based on the undisputed facts, and as explained below, the Court Agrees.

As Judge Failla recently observed, "[a] key distinction between the rights granted by nonexclusive and exclusive licenses—and one that is critical to the claims pending before this Court—is that '[a nonexclusive] license conveys no ownership interest, and the holder of a nonexclusive license may not sue others for infringement.'" *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 277 (S.D.N.Y. 2014) (quoting *Davis v. Blige*, 505 F.3d 90, 100 (2d Cir. 2007)). Indeed, despite TufAmerica's arguments to the contrary, the Second Circuit has made this distinction crystal clear: "Unlike the transfer of one co-owner's copyright interest to another person, which conveys only the co-owner's share of that interest, an exclusive license grants all co-owners' shares of a particular copyright interest to the exclusive licensee. Accordingly, a co-owner cannot unilaterally grant an exclusive license." *Davis*, 505 F.3d at 101 (citing *Maurel v. Smith*, 271 F. 211, 216 (2d Cir. 1921)); *see also Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1146 (9th Cir. 2008) ("[U]nless all the other co-owners of the copyright joined in granting an exclusive right to Sybersound, TVT, acting solely as a co-owner of the copyright, could grant only a nonexclusive license to Sybersound . . . .").

As noted, on December 23, 1999, TufAmerica entered into two administration agreements with Robert Reed and Fisher. SUF ¶ 72. Through these agreements, Robert Reed

and Fisher purported to sell, assign, transfer, and set over to TufAmerica the "exclusive right to administer all of Trouble [Funk]'s rights in the Masters," SUF ¶ 77, and "Compositions throughout the universe," SUF ¶ 78. Avery, who was a performer and co-author for both "Say What" and "Let's Get Small," did not sign the 1999 TufAmerica Agreements. Therefore, without the third co-owner, Robert Reed and Fisher could at best convey a non-exclusive license to TufAmerica.

In opposition, TufAmerica draws on semantics to avoid the longstanding rule that the holder of a nonexclusive license may not sue others for infringement. In essence, TufAmerica argues that because it received 100% of Robert Reed's ownership interest and 100% of Fisher's ownership interest, it received an "exclusive" license from each of them. The problem, as noted, is that Robert Reed and Fisher were co-creators with Avery of the sound recordings and compositions and are therefore *co-owners* with Avery of the copyrights in the sound recordings and compositions, so Robert Reed and Fisher could not convey an *exclusive* license in the copyrights. They conveyed at best a non-exclusive license to TufAmerica, "and the holder of a nonexclusive license may not sue others for infringement." *Davis*, 505 F.3d at 101.

### B. The 2012 Agreement Conveys Nothing but the Bare Right to Sue

Not to be deterred, TufAmerica presses the additional argument that it obtained an exclusive license from the members of Trouble Funk when it signed its agreement with Avery in 2012. Putting aside the issue of whether the 2012 Agreement and 1999 Agreements can be read together, the 2012 Agreement conveys nothing more than the bare right to sue. And it has long been the rule that "[w]here . . . an agreement transfers 'nothing more than a bare right to sue . . . [it] cannot be the basis for standing under the Copyright Act.'" *John Wiley & Sons, Inc.*, 998 F. Supp. 2d at 280-81 (quoting *Minden Pictures, Inc. v. John Wiley & Sons, Inc.*, No. C-12-4601 EMC, 2013 U.S. Dist. LEXIS 67887, at *5-6 (N.D. Cal. May 13, 2013)); *see also ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 944 F.2d 971, 980 (2d Cir. 1991) (noting "the Copyright Act does not permit copyright holders to choose third parties to bring suits on their behalf." (citing *Eden Toys*, 697 F.2d at 32 n.3).

To explain, the 2012 Agreement provides that "Avery hereby exclusively licenses to Tuff City Records his right to sue and recover on all accrued and future causes of action in connection with all of the Trouble Funk Copyrights." SUF ¶ 88; Dkt. No. 80-27. It begins by noting that "[w]hereas Tuff City Records is experienced at litigating copyright infringement actions" and "[w]hereas Avery desires Tuff City Records to pursue copyright infringement actions involving the Trouble Funk Copyrights on Avery's behalf . . . the parties agree as follows." Dkt. No. 80-27. The agreement then provides that "Avery hereby exclusively licenses to Tuff City Records his right to sue and recover on all accrued and future causes of action in connection with all of the Trouble Funk Copyrights" and "[t]o the extent that exclusive licenses of any of Avery's copyrights in the Trouble Funk Copyrights . . . are necessary for 'standing' or similar reasons in connection with filing and maintaining a Trouble Funk Infringement Action, Avery hereby exclusively licenses such copyrights to Tuff City Records for the purpose of filing and maintaining Trouble Funk Infringement Actions." Dkt. No. 80-27. The rest of the agreement discusses the payment of costs and expenses associated with the anticipated litigations and how the net proceeds from the litigations would be distributed. Dkt. No. 80-27.

TufAmerica does not attempt to distinguish the legal authority noted above. Instead, it merely points out that the 2012 Agreement "specifically states that '[t]o the extent that exclusive licenses of any of Avery's copyrights in the Trouble Funk Copyrights . . . are necessary for 'standing' or similar reasons in connection with filing and maintaining a Trouble Funk Infringement Action, Avery hereby exclusively licenses to Tuff City Records for the purpose of filing and maintaining Trouble Funk Infringement Actions.'" Opp'n Br. 21-22 (quoting Dkt. No. 80-27 ¶ 3). It appears that TufAmerica believes that inserting the word "exclusive" into this sentence is sufficient to create an exclusive license. But the language is unambiguous: Even the purported contingent exclusive license is only "for the purpose of filing and maintaining Trouble Funk Infringement Actions." Dkt. No. 80-27.

Moreover, to "determin[e] whether an agreement confers standing, courts look to 'the substance of the agreement, not the labels it uses.'" *John Wiley & Sons, Inc.*, 998 F. Supp. 2d at

279 (quoting *Hyperquest, Inc. v. N'Site Solutions, Inc.*, 632 F.3d 377, 383 (7th Cir. 2011)). For example, in *Minden Pictures, Inc. v. Pearson Educ., Inc.*, the court noted that "[w]hen the contract is viewed as a whole, the clear and unambiguous intent of the parties was to assign to [plaintiff] the bare right to sue. 'Co-ownership' was merely a label intended to disguise the assignment of the cause of action as something else.'" 929 F. Supp. 2d 962, 968 (N.D. Cal. 2013) ("*Pearson*"). Unlike *Pearson*, this is not a situation where the parties attempted to hide their true intent through false labels or ambiguous language; rather, the clear and unambiguous intent of the parties to assign the bare right to sue permeates nearly every provision of the agreement. Moreover, inserting "exclusive license" into the grant of a bare right to sue—when it is clear from the agreement as a whole that this was all that was conveyed—is not sufficient to overcome this longstanding bar to suit. In *Righthaven LLC v. Hoehn*, for example, the Ninth Circuit confronted similar language in a licensing agreement, which granted "all copyrights requisite to have [licensee] recognized as the copyright owner of the Work for purposes of [licensee] being able to claim ownership as well as the right to seek redress for past, present, and future infringements of the copyright . . . in and to the Work." 716 F.3d 1166, 1168 (9th Cir. 2013). "[L]ook[ing] not just at the labels parties use but also at the substance and effect of the contract," the Ninth Circuit found that such a license conveyed nothing more than the bare right to sue, which was insufficient to confer standing. *Id.* at 1169. The 2012 Agreement as a whole similarly reveals that Avery conveyed to TufAmerica nothing more than the bare right to sue.

Therefore, even assuming that Robert Reed and Fisher still had rights in the sound recordings and compositions for "Say What" and "Let's Get Small" in 1999, they granted TufAmerica a non-exclusive license that does not permit TufAmerica to maintain an action for copyright infringement. The 2012 Agreement does not in any way reference the 1999 Agreements; instead, it merely purports to grant to TufAmerica a right to sue on Avery's behalf. Even assuming that the 2012 Agreement can be joined with the 1999 Agreements to create an exclusive license of some kind, all that was granted was an exclusive right to sue. Because "the Copyright Act does not permit copyright holders to choose third parties to bring suits on their

9

behalf," *ABKCO Music*, 944 F.2d at 980, TufAmerica lacks standing to maintain the present copyright infringement suit.

## IV. CONCLUSION

For the reasons stated herein, the Defendants' motions for summary judgment are GRANTED. This resolves Dkt. Nos. 74 and 83. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: March __, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge