UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
TUFAMERICA, INC.,

        Plaintiffs

    - v -

MICHAEL DIAMOND, *et al.*,

        Defendants.
---------------------------------------------------------------X

Case No. 12 Civ. 3529 (AJN)

### MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF UNIVERSAL–POLYGRAM INTERNATIONAL PUBLISHING, INC. AND CAPITOL RECORDS, LLC FOR ATTORNEYS' FEES AND COSTS

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ............................................................................................................2

      A.      TufAmerica Failed to Perform Basic Diligence In Entering the 1999 Agreements. ............................................................................................................2

      B.      TufAmerica Failed to Confirm Its Rights Before Commencing Litigation.............4

      C.      TufAmerica's Objectively Unreasonable Litigation Conduct. ................................5

ARGUMENT...................................................................................................................................6

I.      THE DEFENDANTS ARE ENTITLED TO THEIR ATTORNEYS' FEES AS THE PREVAILING PARTIES IN THE ACTION. ....................................................................6

      A.      The Defendants Are Prevailing Parties..................................................................6

      B.      TufAmerica Filed a Frivolous Lawsuit and Maintained Objectively Unreasonable Legal and Factual Positions. ..............................................................7

      C.      Awarding Attorneys' Fees and Costs Will Deter Future Conduct By Ensuring Plaintiffs Secure Required Rights Before Initiating Litigation. ...............9

II.     THE FEES SOUGHT BY THE UMG DEFENDANTS ARE REASONABLE................10

      A.      The Rates of the UMG Defendants' Counsel Are Reasonable..............................11

      B.      The Number of Hours Counsel Expended Is Reasonable......................................12

III.    THE UMG DEFENDANTS ARE ENTITLED TO REASONABLE COSTS..................13

CONCLUSION..............................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*,
  No. 01 Civ. 10135, 2003 WL 22434153 (S.D.N.Y. Oct. 24, 2003) ..................10, 13

*Baker v. Urban Outfitters*,
  431 F. Supp. 2d 351 (S.D.N.Y. 2006)..................................................9, 10

*Broadcast Music, Inc. v. Pamdh Enters., Inc.*,
  No. 13-CV-2255, 2014 WL 2781846 (S.D.N.Y. June 19, 2014) ...........................11

*Crown Awards, Inc. v. Disc. Trophy & Co.*,
  564 F. Supp. 2d 290 (S.D.N.Y. 2008)....................................................8, 9

*Effie Film, LLC v. Murphy*,
  No. 11-cv-783, 2014 WL 3963204 (S.D.N.Y. Aug. 13, 2014).................................8

*Fogerty v. Fantasy*,
  510 U.S. 517 (1994)....................................................................9

*Harrell v. Van der Plas*,
  No. 08 Civ. 8252(GEL), 2009 WL 3756327 (S.D.N.Y. Nov. 9, 2009).........................9

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*,
  No. 03 Civ. 1548, 2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008) .......................10, 13

*Mallery v. NBC Universal, Inc.*,
  No. 07 Civ. 2250(DLC), 2008 WL 719218 (Mar. 18, 2008)..................................7

*Nat'l Football League v. PrimeTime 24 Joint Venture*,
  131 F. Supp. 2d 458 (S.D.N.Y. 2001)....................................................13

*Porto v. Guirgis*,
  659 F. Supp. 2d 597 (S.D.N.Y. 2009)....................................................8

*Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*,
  No. 13 Civ. 2493, 2014 WL 4792082 (S.D.N.Y. Sept. 24, 2014)......................10, 11

*Sub-Zero, Inc. v. Sub Zero N.Y. Refrigeration & Appliances Servs., Inc.*,
  No. 13-cv-2548, 2014 WL 1303434 (S.D.N.Y. Apr. 1, 2014) ..............................11

*Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.*,
  No. 95 Civ. 0246 SHS, 1997 WL 470114 (S.D.N.Y. Aug. 15, 1997).................7, 9, 10

*Video-Cinema Films, Inc. v. Cable News Network, Inc.*,
   No. 98 Civ. 7128, 2004 WL 213032 (S.D.N.Y. Feb. 3, 2004) .................................................13

**STATUTES**

17 U.S.C. § 505 ..............................................................................................................1, 7, 8, 13

**OTHER AUTHORITIES**

Fed. R. Civ. P. 54 ........................................................................................................................1, 13

Defendants Universal-Polygram International Publishing, Inc. ("UMG-Polygram"; incorrectly named as Universal Music Publishing, Inc. and Universal Music Publishing Group) and Capitol Records, LLC ("Capitol," together with UMG-Polygram, "UMG Defendants"), by their attorneys, respectfully submit this Memorandum of Law in support of their motion for attorneys' fees and costs pursuant to Section 505 of the Copyright Act and Rule 54 of the Federal Rules of Civil Procedure, together with such other and further relief as this Court may deem just and proper.

## PRELIMINARY STATEMENT

Even before filing suit, Plaintiff TufAmerica, Inc. ("TufAmerica") knew it had no standing to pursue the claims asserted in this action, and thus knew that its claims were objectively unreasonable. By filing suit anyways, TufAmerica forced the Defendants[1] to incur significant yet needless costs defending the action, simply to be able to learn through discovery what TufAmerica already knew: it had no standing.

In 1999, TufAmerica had all the facts necessary to conclude that by signing an agreement with only two of the three primary members of Trouble Funk, it would only be receiving a *non-exclusive* license. Moreover, TufAmerica was on notice of serious red flags as to the ownership rights of those two band members, given that the group's prior agreement with Island Records, Inc. ("Island") was expressly disclosed by the band members in their 1999 agreement with TufAmerica.

When TufAmerica finally reached an agreement with the third co-owner of the relevant recordings and compositions over a decade later, TufAmerica did not get an assignment of his

---

[1] The other defendants in this action are Michael Diamond, Adam Horovitz, and Adam Yauch (the "Beastie Boys Defendants," collectively with the UMG Defendants, the "Defendants").

rights but merely obtained a right to bring lawsuits on his behalf. At no time prior to the commencement of this action did TufAmerica perform any inquiries into the serious chain of title issues or the scope of the rights that the members of Trouble Funk could and did convey. Its failure to do so imposed significant costs on the Defendants and needlessly burdened this Court.

Once in litigation, TufAmerica continued to take baseless positions that needlessly imposed costs on the Defendants. For example, without any factual foundation, it denied that Island had released the Trouble Funk recordings at issue, only to be contradicted by the testimony of the members of Trouble Funk. Similarly, TufAmerica attempted to side-step the effect of the members' assignment of their rights to Island by questioning the authenticity of the contract documents. Again, the members of Trouble Funk confirmed they had entered into the agreements with Island and identified their signatures on all of the documents.

Given these circumstances, the UMG Defendants should be awarded their attorneys' fees and costs because: (A) TufAmerica should have known that its claims were objectively unreasonable when it filed the complaint; (B) TufAmerica maintained unreasonable factual and legal positions throughout the litigation; and (C) awarding fees and costs will serve the purposes of the Copyright Act by putting TufAmerica and similarly situated plaintiffs on notice that there are adverse consequences to bringing unreasonable claims.

## STATEMENT OF FACTS

**A.   TufAmerica Failed to Perform Basic Diligence In Entering the 1999 Agreements.**

The musical group Trouble Funk was formed in the mid-1970s. *See* Mem. & Op., ECF No. 101 ("SJ Op.") at 3. In the early 1980s, Trouble Funk released a number of recordings, including singles titled "Let's Get Small" and "Say What." *Id.* at 3. Tony Fisher, Robert Reed,

and James Avery are listed on copyright registrations as the original authors and performers for both singles. *Id.*; Declaration of Andrew H. Bart ("Bart Decl.") ¶ 8.

In 1984, the members of Trouble Funk entered into a series of agreements with Island and a label called T.T.E.D. (the "Island Agreements"). SJ Op. at 3. Despite TufAmerica's baseless assertion to the contrary, there is no longer any dispute that the members of Trouble Funk signed and entered into the agreements. *See id.* at 4; Bart Decl. ¶ 3.

In 1999, TufAmerica entered into administration agreements with two members of Trouble Funk, Mr. Fisher and Mr. Reed (the "1999 Agreements"). SJ Op. at 4-5; Bart Decl. ¶ 2. These agreements purported to sell, assign, transfer, and set over to TufAmerica the exclusive right to administer all of Trouble Funk's rights in master recordings and compositions created before 1990 including, "Say What" and "Let's Get Small." SJ Op. at 5; Bart Decl. ¶ 2. Despite being a co-owner of the recording and composition copyrights for "Say What" and "Let's Get Small," Mr. Avery never signed the 1999 Agreements. SJ Op. at 7; *see also* Bart Decl. Exs. A and B.

Significantly, the 1999 Agreements expressly put TufAmerica on notice of the Island Agreements. *See* Bart Decl. ¶ 4.

The missing co-owner and the disclosure of the group's prior deal with Island should have raised red flags at TufAmerica. But TufAmerica turned a blind eye to the warning signals. There is no evidence that TufAmerica conducted any due diligence into these issues, and it is clear no such due diligence was done. *Id.* ¶¶ 5-8. Free, publicly available information from the U.S. Copyright Office disclosed that Mr. Avery was an original co-owner of the "Say What" and "Let's Get Small" recordings and compositions, along with many other Trouble Funk recordings and compositions listed in the 1999 Agreements. *Id.* ¶ 8.

Nor is there any evidence to suggest TufAmerica investigated Island's ownership rights, despite the fact that the 1999 Agreements expressly refer to the group's agreements with Island. *Id.* ¶¶ 5-7. In fact, the owner and president of TufAmerica testified that he had never even seen the Island Agreements until the agreements were produced in this litigation. *Id.* ¶ 5. Indeed, had TufAmerica performed the basic task of searching the free copyright database, it would have discovered a registration by Island for the "Let's Get Small" recording. *Id.* ¶ 7.

### B. TufAmerica Failed to Confirm Its Rights Before Commencing Litigation.

During pre-litigation conversations with counsel for the Beastie Boys Defendants in 2010, TufAmerica's counsel was warned that there were gaps in TufAmerica's chain of title for the Trouble Funk works.[2] *Id.* ¶ 9. In those same exchanges, TufAmerica sent a copy of the copyright registration for "Say What," which clearly listed Mr. Avery as a co-author. *Id.*

When TufAmerica finally entered into a separate agreement with Mr. Avery in 2012 (the "2012 Agreement"), the only right TufAmerica obtained was the "right to sue and recover on all accrued and future causes of action in connection with all of the Trouble Funk Copyrights." SJ Op. at 5; Bart Decl. ¶ 10. Thus, the 2012 Agreement conveys only a bare right to sue, and no exclusive ownership interest.[3] SJ Op. at 7; *see also* Bart Decl. ¶ 10.

Discovery conducted during the litigation confirmed TufAmerica's failure to perform reasonable diligence before bringing suit. At his deposition, TufAmerica's general manager William Scott testified that, other than outside counsel, it was his responsibility to look for any

---

[2] At this pre-litigation stage, TufAmerica based its claims only on the recordings and compositions for "Drop the Bomb" and "Say What"; when it filed suit, TufAmerica added the recordings and compositions for "Let's Get Small" and "Good to Go."

[3] Moreover, the 2012 Agreement fails to identify the recordings and compositions it purportedly governed, stating only that Mr. Avery "owns or controls some of the copyrights in the master recordings and musical compositions recorded by Trouble Funk . . . ." *See* Bart Decl. Ex. M.

competing releases of sound recordings that could indicate issues with TufAmerica's ownership rights, for example by searching online discography databases. Bart Decl. ¶ 6. However, Mr. Scott testified that the first time he performed any such searches was a few weeks before his deposition. *Id.* Mr. Scott also reviewed the complaint before it was filed, but never checked to see if Island had released any of the recordings. *Id.* Simply put, TufAmerica initiated this action without performing any diligence and knowing that there were serious deficiencies in its standing to bring the action.

### C. TufAmerica's Objectively Unreasonable Litigation Conduct.

TufAmerica filed its original complaint on May 3, 2012. Compl., ECF No. 1. After the Defendants filed motions to dismiss the patently deficient pleading,[4] TufAmerica filed an Amended Complaint on December 10, 2012. *See* Am. Compl., ECF No. 25. Thereafter, the Defendants moved to dismiss the Amended Complaint. *See* Motion to Dismiss Plaintiff's Am. Compl., ECF No. 26; Joinder to Motion to Dismiss Plaintiff's Am. Compl., ECF No. 31. On September 10, 2013, the Court granted the motions in part, dismissing four out of the six claims for relief. *See* Op. & Order, ECF No. 43.

During discovery, TufAmerica and its counsel maintained untenable positions that added needless cost and expense. For example, after admitting that the recording "Let's Get Small" had been released by Island, counsel realized the damage that admission would do to his client's case and backtracked, questioning whether Island's 1985 recording of "Let's Get Small" was the same recording the members of Trouble Funk had released on their own D.E.T.T. label in 1982.[5]

---

[4] Motion to Dismiss Plaintiff's Compl., ECF No. 17; Joinder to Motion to Dismiss Plaintiff's Compl., ECF No. 21.

[5] In its requests for admission, TufAmerica defined the "Let's Get Small" recording at issue as the one embodied on the single released by D.E.T.T. on 1982 and on the EP "Trouble" released (footnote continued)

Bart Decl. ¶ 11. However, Mr. Fisher testified that the Island recordings were the same as the D.E.T.T. recordings. *Id.* ¶ 12. Thus, TufAmerica's counsel had no factual foundation for his revised position, and certainly never discussed it with Mr. Fisher, a witness presented and represented by TufAmerica.

TufAmerica also injected needless delay and expense by questioning the authenticity of the Island Agreements. In explaining why it would not withdraw its claims despite the evidence that Plaintiff had no standing, TufAmerica asserted that there were "still questions concerning the authenticity of the 'Exclusive Recording Agreement.'" *Id.* ¶ 13 & Ex. Q. However, at their depositions Mr. Avery and Mr. Fisher confirmed that they had entered into the Island Agreements and had signed all of the underlying agreements. Bart Decl. ¶ 13.

On March 24, 2015, the Court granted the Defendants' motions for summary judgment, holding that TufAmerica lacked standing to maintain the suit. SJ Op. at 1.

## ARGUMENT

### I. THE DEFENDANTS ARE ENTITLED TO THEIR ATTORNEYS' FEES AS THE PREVAILING PARTIES IN THE ACTION.

#### A. The Defendants Are Prevailing Parties.

The Copyright Act provides that attorneys' fees and full costs may be awarded to the prevailing party in a copyright infringement action. 17 U.S.C. § 505; *Mallery v. NBC Universal, Inc.*, No. 07 Civ. 2250, 2008 WL 719218, at *1 (S.D.N.Y. Mar. 18, 2008).

---

by the 4th & Broadway label in 1985. *See* Bart Decl. ¶ 11 & Ex. N. When Defendants pointed out that 4th & Broadway was an Island entity and that the 1985 release was therefore within the term of the Island Agreements, *id.* ¶ 11 & Ex. O, TufAmerica's counsel attempted to distance his client from the Island recording by redefining the recording as only the one embodied on the D.E.T.T. release, *id.* ¶ 11 & Ex. P. Counsel explained that "[m]y earlier designation of those recordings was not meant to define them for purposes of this case, but to define them for purposes of addressing objections raised by defendants." *Id.*

With all of TufAmerica's claims either dismissed in September 2013 or in March 2015, there can be no doubt that the Defendants are the prevailing parties. *See Mallery*, 2008 WL 719218, at *1-2 (holding defendant was prevailing party in copyright action after granting defendant's motion for summary judgment); *Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.*, No. 95 Civ. 0246 SHS, 1997 WL 470114, at *1 (S.D.N.Y. Aug. 15, 1997) (same).

> **B.    TufAmerica Filed a Frivolous Lawsuit and Maintained Objectively Unreasonable Legal and Factual Positions.**

In determining whether to award fees and costs under Section 505 of the Copyright Act, courts may consider "frivolousness, motivation, objective unreasonableness (both in factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Mallery*, 2008 WL 719218, at * 1 (quoting *Fogerty v. Fantasy*, 510 U.S. 517, 534, n.19 (1994)).  Here, TufAmerica filed a baseless lawsuit, which it knew or should have known was frivolous at the time, and thereafter maintained objectively unreasonably positions throughout the litigation.

As discussed above, TufAmerica purported to obtain "exclusive" administration rights pursuant to the 1999 Agreements, but it knew or could have easily discovered that many of the recordings and compositions it purported to govern were originally co-owned by a third member of Trouble Funk, Mr. Avery, who never signed the 1999 Agreements. Bart Decl. ¶¶ 2, 6, 8.

Even when it finally reached an agreement with Mr. Avery in 2012, that agreement failed to convey anything more than a bare right to sue. *See* SJ Op. at 7; Bart Decl. ¶ 10.  As the Court held, TufAmerica had no standing to pursue its action since "there is no dispute regarding the 1999 and 2012 agreements under which TufAmerica received a *non-exclusive* license from two of the three original copyright owners and a *right to sue* from the third." SJ Op. at 2-3 (emphasis added).

TufAmerica had knowledge of all the facts underlying the Court's holding before the case was filed. TufAmerica knew that Mr. Avery was a co-owner of many of the recordings and compositions at issue yet the 1999 Agreements were only with Mr. Fisher and Mr. Reed. Bart Decl. ¶¶ 2, 6, 8-9. Further, TufAmerica knew that its 2012 Agreement with Mr. Avery did not convey exclusive ownership rights. *Id.* ¶ 10.

In other words, TufAmerica knowingly filed a frivolous or objectively unreasonable lawsuit. This fact is a sufficient basis for an award of reasonable attorneys' fees and costs to the UMG Defendants. *Crown Awards, Inc. v. Disc. Trophy & Co.*, 564 F. Supp. 2d 290, 294 (S.D.N.Y. 2008) ("Objective unreasonableness of a party's claims or defenses is sufficient to subject a party to an award of attorneys' fees under § 505."); *Effie Film, LLC v. Murphy*, No. 11-cv-783, 2014 WL 3963204, at *1-2 (S.D.N.Y. Aug. 13, 2014) (holding infringement claim was objectively unreasonable and awarding nearly $500,000 in fees and costs). An award of attorneys' fees is even more appropriate here, where TufAmerica was expressly warned by opposing counsel of the serious questions in its chain of title. *See Porto v. Guirgis*, 659 F. Supp. 2d 597, 617 (S.D.N.Y. 2009) (awarding attorneys' fees based in part of "indicia of bad faith" including the fact that plaintiff's counsel "was warned, before any action had been filed, that there was no colorable copyright infringement claim").

Moreover, as explained above, even after filing its frivolous and objectively unreasonable suit, TufAmerica maintained objectively unreasonable positions, forcing Defendants to expend unnecessary resources to rebut these assertions. Bart Decl. ¶¶ 11-13. TufAmerica's objectively unreasonable litigation tactics support an award of attorneys' fees and costs to the UMG Defendants. *See Crown Awards*, 564 F. Supp. 2d at 296-97; *Harrell v. Van der Plas*, No. 08 Civ.

8252(GEL), 2009 WL 3756327, at *4 (S.D.N.Y. Nov. 9, 2009); *Tuff 'N' Rumble*, 1997 WL 470114, at *1.[6]

### C. Awarding Attorneys' Fees and Costs Will Deter Future Conduct By Ensuring Plaintiffs Secure Required Rights Before Initiating Litigation.

The Supreme Court has recognized that the "primary objective of the Copyright Act is to encourage the production of original literary, artistic, and musical expression for the good of the public." *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 524 (1994). "[A] successful defense of a copyright infringement action may further the policies of the Copyright Act every bit as much as a successful prosecution of an infringement claim by the holder of a copyright." *Id.* at 527. In particular, when a plaintiff pursues a meritless claim, a failure to impose a penalty on such plaintiff would "invite others to bring similarly unreasonable actions without fear of any consequences." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006).

As explained above, TufAmerica chose to pursue litigation without standing to do so. TufAmerica pursued this litigation knowing it was frivolous, and steadfastly refused to withdraw its claims even when faced with mounting evidence against it. In such circumstances, awarding attorneys' fees and costs is "crucial here, so as to defer this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs they can score big if they win and that there will be no adverse consequences if they

---

[6] *Tuff 'N' Rumble* shows that this is not the first time TufAmerica has engaged in unreasonable conduct that resulted in the award of attorneys' fees. In that case, the predecessor entity to TufAmerica brought a copyright infringement claim against certain defendants. *Tuff 'N' Rumble*, 1997 WL 470114, at *1; *see also* Bart Decl. Ex. E at 21:18-22:8 (testifying that Mr. Fuchs was president of Tuff 'N' Rumble Management, a predecessor entity to TufAmerica). After the defendants' motion for summary judgment was granted, the court then awarded the defendants with reasonable attorneys' fees, based in large part on "plaintiff's consistently obstreperous conduct in its prosecution of this case." *Tuff 'N' Rumble*, 1997 WL 470114, at *1. The court explained that the plaintiff had imposed unnecessary expenses on the defendants through its "failure to research properly the law or facts involved in its claims." *Id.*

lose." *Id.*; *Arclightz & Films Pvt. Ltd. v. Video Palace, Inc.*, No. 01 Civ. 10135, 2003 WL 22434153, at *3 (S.D.N.Y. Oct. 24, 2003) (awarding fees to deter parties from filing unreasonable actions without fear of any consequences, and to compensate defendants for being "forced to defend against such a baseless action"); *Tuff 'N' Rumble*, 1997 WL 470114, at *2 (same).

## II. THE FEES SOUGHT BY THE UMG DEFENDANTS ARE REASONABLE.

Courts assess the reasonableness of attorneys' fees using the lodestar method. *See Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13 Civ. 2493, 2014 WL 4792082, at *1-2 (S.D.N.Y. Sept. 24, 2014). A presumptively reasonable fee is the product of the "reasonable hourly rate" multiplied by the "number of hours reasonably expended." *Baker*, 431 F. Supp. 2d at 360. The court may adjust the lodestar upward or downward based on the specific circumstances at issue in the case. "Once the lodestar amount is established, there is a strong presumption that it is reasonable." *Id.* (internal quotation marks and citations omitted).

In sum, the UMG Defendants seek $245,752.30 in reasonable attorneys' fees, spanning the nearly three-year life of this case, which included briefing multiple motions to dismiss,[7] drafting responsive pleadings, engaging in lengthy discovery including multiple depositions, and briefing summary judgment motions.[8] Here, the accompanying declaration of Andrew H. Bart

---

[7] As described above, after Defendants moved to dismiss the original Complaint, TufAmerica chose to file an Amended Complaint, forcing the Defendants to write new briefs.

[8] The UMG Defendants are also entitled to the attorneys' fees and costs associated with briefing this motion, and intend to submit a supplemental declaration identifying and substantiating such costs with their reply. *See J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03 Civ. 1548, 2008 WL 4613752, at *12 (S.D.N.Y. Oct. 17, 2008) (awarding party its fees in preparing fee application).

and the exhibits thereto demonstrate that the fees sought by the UMG Defendants are reasonable. *See* Bart Decl. ¶¶ 14-23 & Exs. R, S, T, U, V.

### A. The Rates of the UMG Defendants' Counsel Are Reasonable.

Rates are deemed reasonable when they are in line with the rates prevailing in the district for similar services by lawyers of reasonably comparable skill, experience, and reputation. *Regulatory Fundamentals Grp.*, 2014 WL 4792082, at *1 (citation omitted). For prevailing parties with private counsel, the actual billing arrangement is also an important factor in determining whether rates charged are reasonable as it is a strong indication of what private parties believe is the reasonable fee to be awarded. *Broadcast Music, Inc. v. Pamdh Enters., Inc.*, No. 13-CV-2255, 2014 WL 2781846, at *6 (S.D.N.Y. June 19, 2014) (citing *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001)).

The qualifications for the primary members of the litigation team in this case are detailed in the Bart Declaration and accompanying exhibits. Bart Decl. ¶¶ 17-21 & Exs. T, U, V. These rates are in line with, and in many cases lower than, the rates charged by comparable law firms in this District with similar expertise. *See Regulatory Fundamentals Grp.*, 2014 WL 4792082, at *2 ("In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour . . . [and] for law firm associates in the range of $200 to $450 per hour.") (collecting cases); *Sub-Zero, Inc. v. Sub Zero N.Y. Refrigeration & Appliances Servs., Inc.*, No. 13-cv-2548, 2014 WL 1303434, at *8-9 (S.D.N.Y. Apr. 1, 2014) (collecting cases and accepting rates of $785 and $485 for two experienced attorneys). Here, three attorneys ran the UMG Defendants' defense, as summarized below:

- Andrew Bart is an experienced trial lawyer and is Co-Chair of Jenner & Block's Content, Media & Entertainment Practice. He has been the supervising partner for this case and has had ultimate decision-making responsibility since its inception. His

rates have ranged from $700 per hour to $720 per hour. The total fees sought for Mr. Bart's work are $84,780.00. Bart Decl. ¶¶ 18-19.

- Carletta Higginson is an experienced copyright litigation partner who had day-to-day responsibility for running the case from its inception until she left the firm in September 2013. Her rates ranged between $525 per hour and $580 per hour. The total fees sought for Ms. Higginson's work are $8,648.00. *Id.* ¶ 20.

- Nathaniel Benforado is an experienced litigation associate. Mr. Benforado took over the day-to-day responsibilities of the case after Ms. Higginson's departure in 2013. His rates have ranged from $429 per hour to $490 per hour. The total fees sought for Mr. Benforado's work are $147,280.90. *Id.* ¶ 21.

Importantly, these rates have already been discounted from Jenner & Block's standard rates and have also all been paid in full. *Id.* ¶¶ 14-16 & Ex. R.

### B. The Number of Hours Counsel Expended Is Reasonable.

The number of hours expended by counsel for the UMG Defendants is reasonable. All of the work reflected in the time records was necessary and justified to prevail in this action. *Id.* ¶ 22. With a lean team of two attorneys—one handling day-to-day responsibilities and one supervising the matter—all of the work was necessary and not redundant. *Id.* Along these lines, counsel for the UMG Defendants and Beastie Boys Defendants routinely coordinated efforts to avoid duplicative work. *Id.* ¶ 23. For example, the Beastie Boys Defendants took the lead on drafting the motions to dismiss, to which the UMG Defendants joined, whereas the UMG Defendants took the lead on drafting the summary judgment papers, to which the Beastie Boys Defendants joined. *Id.* This coordination between the Defendants is reflected throughout the time records. *See* Ex. R. Likewise, during depositions, the UMG Defendants took the lead on

deposing Mr. Fisher and Mr. Avery, whereas the Beastie Boys Defendants took lead on Mr. Fuchs and Mr. Scott. *Id.* ¶ 23.

**III.  THE UMG DEFENDANTS ARE ENTITLED TO REASONABLE COSTS.**

Pursuant to Section 505 of the Copyright Act and Rule 54 of the Federal Rules of Civil Procedure, the UMG Defendants are entitled to recover their full costs incurred defending this action. *See Arclightz*, 2003 WL 22434153, at *7 (under § 505 costs are "routinely award[ed]" to prevailing party in copyright cases); *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 483, 486 (S.D.N.Y. 2001) (awarding prevailing party full costs in copyright case under Section 505 of the Copyright Act and Rule 54(d)).

The UMG Defendants are seeking costs in the amount $10,543.90, all of which were necessary to the litigation of the case as set forth in the accompanying Bart Declaration. Bart Decl. ¶ 24. These costs include shipping charges, telephone expenses, out-of-town travel to Washington D.C. for the depositions of Mr. Fisher and Mr. Avery, court reporter and transcript charges for depositions, and photocopy and color printing charges. *Id.* at ¶ 24 & Exs. R, W. These costs are reasonable and should be awarded as they are not associated with routine office overhead, but rather are identifiable "out-of-pocket expenses incurred by attorneys *and ordinarily charged to their clients*." *J.S. Nicol*, 2008 WL 4613752, at *18 (emphasis in original) (citation omitted); *Video-Cinema Films, Inc. v. Cable News Network, Inc.*, No. 98 Civ. 7128, 2004 WL 213032, at *9 (S.D.N.Y. Feb. 3, 2004) (awarding costs in copyright case including charges for deposition transcripts, document duplication, and travel).

## CONCLUSION

For the reasons set forth above, the UMG Defendants respectfully request that their motion for attorneys' fees and costs be granted.

Dated: New York, New York
April 9, 2015

JENNER & BLOCK LLP

*/s Andrew H. Bart*
Andrew H. Bart
Nathaniel H. Benforado
919 Third Avenue
New York, New York  10022-3908
(212) 891-1645
*Attorneys for Defendants Universal–Polygram International Publishing, Inc. and Capitol Records, LLC*