UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                            :
TUFAMERICA, INC.,                           :
                                            :   Case No. 12 Civ. 3529 (AJN)
                Plaintiff,                  :
                                            :   **DECLARATION OF ANDREW H.**
        v.                                  :   **BART**
                                            :
MICHAEL DIAMOND, *et al.*,                  :
                                            :
                Defendants.                 :
                                            :
------------------------------------------------------------x

I, ANDREW H. BART, hereby make the following declaration:

1.    I am an attorney admitted to the Southern District of New York and am a partner at Jenner & Block LLP ("Jenner"), attorneys for Defendants Universal–Polygram International Publishing, Inc. (incorrectly named as Universal Music Publishing, Inc. and Universal Music Publishing Group) and Capitol Records, LLC (collectively, the "UMG Defendants"). I submit this declaration in support of the UMG Defendants' Motion for Attorneys' Fees and Costs.

## 1999 Agreements

2.    In 1999, TufAmerica, Inc. ("TufAmerica") entered into administration agreements with two members of the musical group Trouble Funk, Tony Fisher and Robert Reed. *See* Master Administration Agreement between TufAmerica, Robert Reed, and Tony Fisher dated December 22, 1999, attached hereto as Exhibit A; Publishing Administration Agreement between TufAmerica, Robert Reed, and Tony Fisher dated December 20, 1999, attached hereto as Exhibit B (together, the "1999 Agreements').

3.    There is no dispute that the members of Trouble Funk signed and entered into the Island Agreements. *See* Excerpts from Deposition of Tony Fisher, May 1, 2014 ("Fisher Tr."), attached hereto as Exhibit C, at 122:22-123:7, 125:10-130:12, 137:15-19, 166:21-167:10,

169:12-14; Excerpts from Deposition of James Avery, Apr. 30, 2014 ("Avery Tr."), attached hereto as Exhibit D, at 21:18-22:20, 25:7-26:6, 132:7-133:22, 139:5-140:2, 157:6-13, 161:14-21, 164:15-21, 195:10-15, 201:16-18.

4. The 1999 Agreements expressly disclose the group's prior agreements with Island Records, Inc. ("Island Agreements"). *See* Exhibit A at par. 2(i); Exhibit B at par. 2(i).

5. There is no evidence to suggest TufAmerica performed any meaningful investigation into Island's ownership rights. Aaron Fuchs, the owner and president of TufAmerica testified that he had never seen the Island Agreements until the agreements were produced by the UMG Defendants in this litigation. Excerpts from Deposition of Aaron Fuchs, May 20, 2014, attached hereto as Exhibit E, at 149:23-151:25.

6. TufAmerica's general manager testified that, other than outside counsel, it was his responsibility to look for competing releases of sound recordings that could indicate issues with TufAmerica's ownership rights, for example by searching online discography websites. Excerpts from Deposition of William Scott, May 6, 2014, attached hereto as Exhibit F, at 205:21-209:13. Mr. Scott testified, however, that the first time he performed any such searches was a few weeks before his deposition. *Id.* at 200:23-202:5. Mr. Scott also testified that he had never checked to see if Island had released any of the recordings. *Id.* at 203:17-204:13.

7. Had TufAmerica searched the public copyright database, it would have discovered a registration by Island for the recording of "Let's Get Small." *See* Copyright Registration No. SR 72-535, attached hereto as Exhibit G.

8. A third member of Trouble Funk, James Avery, was a co-owner of many of the recordings and compositions listed in the 1999 Agreements, including singles titled "Let's Get Small" and "Say What," as disclosed in publicly available information from the U.S. Copyright Office. *See* Copyright Registration No. PA 246-946, attached hereto as Exhibit H; Copyright

Registration No. SR 62-036, attached hereto as Exhibit I; Copyright Registration No. SR 45-535, attached hereto as Exhibit J.

**TufAmerica's Knowledge and Conduct Before Commencing Litigation**

9. In 2010, TufAmerica discussed a pre-trial settlement of claims with counsel for Michael Diamond, Adam Horovitz, and Adam Yauch (the "Beastie Boys Defendants") and, at the time, Capitol Records, LLC ("Capitol").[1] During these communications, counsel for the Beastie Boys Defendants warned TufAmerica that there were gaps in TufAmerica's chain of title for the Trouble Funk works. *See* Email from Y. Espinet on behalf of K. Anderson to B. Levenson, April 21, 2010, attached hereto as Exhibit K. In these same series of discussions, TufAmerica sent copies of the recording and composition copyright registrations for "Say What," both of which list Mr. Avery as a co-owner. *See* Email from B. Levinson to K. Anderson, May 19, 2010, attached hereto as Exhibit L.

10. TufAmerica entered into a separate agreement with Mr. Avery in 2012. Agreement between TufAmerica and James Avery, effective date January 1, 2012 ("2012 Agreement"), attached hereto as Exhibit M. The 2012 Agreement conveys to TufAmerica Mr. Avery's "right to sue and recover on all accrued and future causes of action in connection with all of the Trouble Funk Copyrights." *Id.* at par. 2. The 2012 Agreement also provides that "[t]o the extent that exclusive licenses of any of Avery's copyrights in the Trouble Funk Copyrights . . . are necessary for 'standing' or similar reasons in connection with filing and maintaining a Trouble Funk Infringement Action, Avery hereby exclusively licenses such

---

[1] Initially, Defendant Capitol Records, LLC ("Capitol") shared representation with the Beastie Boys Defendants. After Universal–Polygram International Publishing, Inc. and Capitol came under common ownership, Jenner was substituted as counsel for Capitol, in addition to its existing representation of Universal-Polygram International Publishing, Inc. Stipulation for Substitution of Counsel on Behalf of Capitol Records, LLC, Dec. 11, 2013, ECF No. 58.

copyrights to Tuff City Records *for purposes of filing and maintaining Trouble Funk Infringement Actions*. *Id.* at par. 3 (emphasis added).

### TufAmerica's Litigation Conduct

11. In its requests for admission, TufAmerica defined the "Let's Get Small" recording at issue as the one embodied on the single released by D.E.T.T. in 1982 and on the EP "Trouble" released by the 4th & Broadway label in 1985. *See* Email from K. Talcott to T. Max attaching TufAmerica's First Requests for Admission (Amended), Mar. 13, 2014, attached hereto as Exhibit N. Defendants pointed out that 4th & Broadway was an Island entity and that the 1985 release was therefore within the term of the Island Agreements. *See* Email from N. Benforado to K. Talcott, Apr. 11, 2014, attached hereto as Exhibit O. In response, counsel for TufAmerica backtracked, questioning whether Island's 1985 recording of "Let's Get Small" was the same recording the members of Trouble Funk had released on their own D.E.T.T. label in 1982. *See* Email from K. Talcott to N. Benforado, Apr. 14, 2014, attached hereto as Exhibit P.

12. However, just a few weeks later, Mr. Fisher—a witness presented and represented by TufAmerica—testified that the Island recordings were the same as the D.E.T.T. recordings. Fisher Tr., attached hereto as Exhibit C, at 159:14-20.

13. TufAmerica also questioned the authenticity of the Island Agreements. In explaining why it would not withdraw its claims, TufAmerica asserted that there were "still questions concerning the authenticity of the 'Exclusive Recording Agreement.'" Email from K. Talcott to N. Benforado, Apr. 23, 2014, attached hereto as Exhibit Q. A week later, however, Mr. Avery and Mr. Fisher confirmed that they had entered into the Island Agreements and had signed all of the underlying agreements. Fisher Tr., attached hereto as Exhibit C, at 122:22-123:7, 125:10-130:12, 137:15-19, 166:21-167:10, 169:12-14; Avery Tr., attached hereto as Exhibit D, at 21:18-22:20, 25:7-26:6, 132:7-133:22, 139:5-140:2, 157:6-13, 161:14-21, 164:15-

4

21, 195:10-15, 201:16-18.

**UMG Defendants' Request for Attorneys' Fees**

14. The UMG Defendants request attorneys' fees totaling $245,752.30 for the work performed by attorneys and paralegals at Jenner. The invoices issued by Jenner in this matter are attached hereto as Exhibit R. The UMG Defendants have paid all of these invoices in full.

15. As reflected in the invoices, Jenner has billed UMG Defendants for its work on an hourly basis. Jenner generates invoices monthly and each invoice includes a summary of the charges, along with detailed billing records that describe the work performed by each attorney or paralegal and how much time was spent on the task. To the extent Jenner has discounted its invoices, the UMG Defendants are requesting only this discounted amount as reflected in the invoices. Entries for which the UMG Defendants are not seeking fees have been redacted.

16. The information contained in the invoices is also summarized in Exhibit S. Exhibit S summarizes each individual's fees on a month-by-month basis, listing the attorney or paralegal who billed time, the number of hours billed, the hourly rate that was charged, the invoiced amount for each individual, and that month's total fees.

17. The primary attorneys who billed on this matter are identified below, along with their experience, hourly rates, and involvement with the case. The work performed by other individuals on this matter, including paralegals and other support staff that were supervised by the primary attorneys, is detailed in the invoices attached as Exhibit R.

18. I am Co-Chair of the Content, Media & Entertainment practice group at Jenner, a national law firm respected for its litigation expertise. Our practice group won *Chambers USA's* "Award for Excellence in Media & Entertainment" in 2012 and 2014, and was also named by *Law360* as the "Practice Group of the Year: Media & Entertainment" in 2013.

19. I have acted as lead counsel for UMG Defendants in this matter. I have been the

5

supervising partner on this case and have had ultimate-decision making responsibility since its inception. I have practiced law for over 36 years and litigated numerous trials as lead counsel, including many involving complicated copyright matters. A true and correct copy of my work experience from Jenner's website is attached hereto as Exhibit T. My billing rate on this matter ranged from $700 per hour to $720 per hour.

20. Carletta Higginson is a former partner at Jenner who litigated this case until her departure from Jenner in September 2013. Ms. Higginson is an experienced copyright litigation partner who had day-to-day responsibility for running the case from its inception until her departure. A true and correct copy of Ms. Higginson's work experience from a previous version of Jenner's website is attached hereto as Exhibit U. Ms. Higginson's billing rate on this matter ranged from $525 per hour to $580 per hour.

21. Nathaniel Benforado is an experienced litigation associate. Mr. Benforado took over the day-to-day responsibilities of the case after Ms. Higginson's departure in 2013. A true and correct copy of Mr. Benforado's work experience form Jenner's website is attached hereto as Exhibit V. Mr. Benforado's billing rate has ranged from $429 per hour to $490 per hour.

### **Reasonableness of Attorneys' Fees**

22. As reflected in the contemporaneous time records, the time spent by Jenner was both reasonable and necessary to defend this action. The litigation, while frivolous, required significant efforts to defend. Jenner has spent nearly three-years briefing multiple motions to dismiss, drafting responsive pleadings, engaging in lengthy discovery—including multiple depositions in April and May 2014, and intensive factual research into the ownership and chain

of title issues from three decades ago—and briefing the summary judgment motion papers.[2] Throughout the litigation, Jenner never staffed more than two primary attorneys on the matter—one handling day-to-day responsibilities and one supervising the matter.

23. In addition, the UMG Defendants coordinated their efforts closely with the Beastie Boys Defendants to eliminate duplicative work wherever possible. For example, the Beastie Boys Defendants took the lead on drafting the motions to dismiss, to which the UMG Defendants joined. The UMG Defendants took the lead on the summary judgment motion, to which the Beastie Boys Defendants joined. Likewise during depositions, the UMG Defendants took the lead on deposing Mr. Fisher and Mr. Avery, whereas the Beastie Boys Defendants took lead on Mr. Fuchs and Mr. Scott. Moreover, the UMG Defendants only had one Jenner attorney attend each deposition, further reducing attorneys' fees and costs.

### Costs Recoverable as Attorneys' Fees

24. UMG Defendants also incurred reasonable costs totaling $10,543.90. These costs were necessary to the litigation of this case, including, *inter alia*, shipping charges, telephone expenses, out-of-town travel to Washington D.C. for the depositions of Mr. Fisher and Mr. Avery, court reporter and transcript charges for depositions, and photocopy and color printing charges. All of these costs are ordinarily charged by Jenner to its client, which is what occurred here, as reflected in the invoices attached hereto as Exhibit R. A summary of the costs, described on a month-to-month basis, is attached as Exhibit W.

\* \* \* \*

---

[2] UMG Defendants are not seeking fees relating to a motion that was drafted but ultimately not filed. These entries have been redacted from the invoices attached as Exhibit R, and are not included in the total attorneys' fees request, or in the attorneys' fees summary attached as Exhibit S.

25. For the foregoing reasons, UMG Defendants' request for an award in the amount of $245,752.30 in attorneys' fees should be granted in its entirety. UMG Defendants' request for $10,543.90 in non-taxable costs should also be awarded in its entirety.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
April 9, 2015

By:   <u>*/s/ Andrew H. Bart*</u>
     Andrew H. Bart