UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

:

TUFAMERICA, INC.,                                      :

:                          Case No. 12 CV 3529 (AJN)

Plaintiff,                  :

:

v.                          :

:

MICHAEL DIAMOND, ADAM HOROVITZ,        :
and ADAM YAUCH, p/k/a BEASTIE BOYS,    :
UNIVERSAL MUSIC PUBLISHING, INC.,      :
UNIVERSAL MUSIC PUBLISHING GROUP,      :
BROOKLYN DUST MUSIC, and CAPITOL       :
RECORDS, LLC,                          :

:

Defendants.                 :

------------------------------------------------------------x


# MEMORANDUM OF LAW IN SUPPORT OF THE
# BEASTIE BOYS DEFENDANTS' MOTION FOR ATTORNEY'S FEES AND COSTS

SHEPPARD MULLIN RICHTER & HAMPTON LLP
Theodore C. Max
Kenneth B. Anderson
Thomas Monahan
30 Rockefeller Plaza
New York, New York  10112
(212) 653–8700

*Counsel for Defendants Michael Diamond,
Adam Horovitz, the Estate of Adam Yauch,
p/k/a Beastie Boys and Brooklyn Dust Music*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

RELEVANT FACTS ................................................................................................2

ARGUMENT .........................................................................................................6

I.     BEASTIE BOYS DEFENDANTS ARE ENTITLED TO AN AWARD OF
ATTORNEY'S FEES AND COSTS UNDER THE COPYRIGHT ACT .........................6

     A.     The Beastie Boys Defendants Are A Prevailing Party ...........................................8

     B.     TufAmerica's Conduct In This Action Was Objectively Unreasonable...............8

II.    THE FEES AND COSTS SOUGHT BY BEASTIE BOYS DEFENDANTS ARE
REASONABLE ...............................................................................................10

     A.     The Attorney's Fees Sought By The Beastie Boys Defendants Are
Reasonable...................................................................................................12

     B.     The Costs Sought By The Beastie Boys Defendants Are Reasonable.................15

CONCLUSION.....................................................................................................16

# TABLE OF AUTHORITIES

Page(s)

<u>Cases</u>

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*
369 F.3d 91 (2d Cir. 2004) ...................................................................................16

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*
522 F.3d 182 (2d Cir. 2007) .................................................................................10

*Bldg. Serv. 32BJ Health Fund v. Renaissance Equity Holdings, LLC*
2010 WL 1438117 (S.D.N.Y. Apr. 9, 2010) ........................................................10

*Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*
2009 WL 4276966 (S.D.N.Y. Nov. 30, 2009) ........................................................8

*Bryant v. Media Right Prods., Inc.*
603 F.3d 135 (2d Cir. 2010) ...................................................................................7

*Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*
532 U.S. 598 (2001) ................................................................................................8

*Canal Image UK Ltd. v. Lutvak*
792 F. Supp. 2d 675 (S.D.N.Y. 2011) ....................................................................7

*Crown Awards, Inc. v. Discount Trophy & Co., Inc.*
564 F. Supp. 2d 290 (S.D.N.Y. 2008) .................................................................8, 9

*Farrar v. Hobby*
506 U.S. 103 (1992) ..............................................................................................11

*Fogerty v. Fantasy, Inc.*
510 U.S. 517 (1994) ................................................................................................7

*Hensley v. Eckerhart*
461 U.S. 424 (1983) ..............................................................................................11

*J.S. Nicol, Inc. v. Peking Handicraft, Inc.*
2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008) ..........................................11, 15, 16

*Kahil v. Original Old Homestead Rest., Inc.*
657 F. Supp. 2d (S.D.N.Y. 2009) .........................................................................13

*Klinger v. Conan Doyle Estate Ltd.*
761 F.3d 789 (7th Cir. 2014) ..................................................................................8

*Kroll-O'Gara Co. v. First Defense Int'l, Inc.*
2000 WL 369721 (S.D.N.Y. April 11, 2000) ..........................................................7

*Matthew Bender & Co., Inc. v. West Publ'g Co.*
    240 F.3d 116 (2d Cir. 2001) ........................................................................7, 8

*Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*
    831 F.3d 407 (2d Cir. 1987) ...........................................................................11

*Miroglio S.P.A. v. Conway Stores, Inc.*
    629 F. Supp. 2d 307 (S.D.N.Y. 2009) .............................................................11

*Mostly Memories, Inc. v. For Your Ease Only, Inc.*
    526 F.3d 1093 (7th Cir. 2008) .........................................................................15

*Mostly Memories, Inc. v. For Your Ease Only, Inc.*
    594 F. Supp. 2d 931 (E.D. Ill. 2009) ...............................................................15

*N.Y. State Ass'n for Retarded Children, Inc. v. Carey*
    711 F.2d (2d Cir. 1983) ...................................................................................13

*Nat'l Football League v. PrimeTime 24 Joint Venture*
    131 F. Supp. 2d 458 (S.D.N.Y. 2001) .............................................................15

*Ritchie v. Gano*
    754 F. Supp. 2d 605 (S.D.N.Y. 2010) ...............................................................8

*Roth v. Pritikin*
    787 F.2d 54 (2d Cir. 1986) ...............................................................................7

*The Yankee Candle Co., Inc. v. The Bridgewater Candle Company, LLC*
    140 F. Supp. 2d 111 (D. Mass 2001)...........................................................9, 15

*Tuff 'N' Rumble Mgm't, Inc. d/b/a Tuff City Records v. Profile Records, Inc.*
    1997 WL 470114 (S.D.N.Y. Aug. 15, 1997)..............................................4, 10

*United States Football League v. Nat'l Football League*
    887 F.2d 408 (2d Cir. 1989) ...........................................................................11

*Vargas v. Transeau*
    2008 WL 3164586 (S.D.N.Y. Aug. 6, 2008)......................................................8

*Williams v. Crichton*
    891 F. Supp. 120 (S.D.N.Y. 1994).....................................................................7

Statutes

17 U.S.C. § 505............................................................................... 1, 2, 6, 7, 15

Defendants Michael Diamond, Adam Horovitz, the Estate of Adam Yauch and Brooklyn Dust Music (collectively, the "Beastie Boys Defendants"), by their attorneys, Sheppard Mullin Richter & Hampton LLP ("Sheppard Mullin"), respectfully submit this memorandum of law and accompanying declaration of Theodore C. Max (the "Max Dec.") in support of their motion for an award of attorney's fees and costs pursuant to Section 505 of the Copyright Act, Rule 54 of the Federal Rules of Civil Procedure, and any other applicable statutes and rules.

## PRELIMINARY STATEMENT

On May 3, 2012, Plaintiff TufAmerica, Inc. ("Plaintiff" or "TufAmerica") sued the Beastie Boys Defendants and defendants Universal Music Publishing, Inc., Universal Music Publishing-Polygram International Publishing, Inc., and  Capitol Records, LLC (collectively the "UMG Defendants" and together with the Beastie Boys Defendants, "Defendants"), alleging infringement of both the sound recording and musical composition copyrights of  "Say What," "Drop the Bomb," "Good to Go" and "Let's Get Small."  However, as TufAmerica knew or should have known from since at least as early as 2010, it never had standing to bring those claims because it had not secured an exclusive license from all three of the owners of those copyrights.  As TufAmerica admitted under oath, it failed to undertake any due diligence in advance of filing its Complaint or its subsequent Amended Complaint.  TufAmerica failed to conduct this due diligence despite the Beastie Boys Defendants' counsel's warning in 2010 – in response to TufAmerica's demand – that there were gaps in TufAmerica's chain of title.

TufAmerica commenced and pursued this lawsuit for nearly two years before finally: (1) producing, in their entirety, the agreements that it claimed conferred standing to assert the claims in the Amended Complaint; and (2) investigating the public copyright database regarding registrations for the musical compositions and sound recordings at issue.  When faced with Defendants' summary judgment motion, TufAmerica put forward the specious argument that the

2012 Agreement with James Avery conferring "the right to sue" remedied the lack of an exclusive license. The 1999 and 2012 agreements did not confer standing to TufAmerica, and, in granting Defendants' motions for summary judgment, this Court dismissed all of TufAmerica's outstanding claims. TufAmerica's other claims had been dismissed in light of Defendants' successful motion pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief could be granted.

The Beastie Boys Defendants should be awarded the attorney's fees and costs incurred as the prevailing party successfully defending this action pursuant to Section 505 of the Copyright Act because: (1) Defendants succeeded in defeating all of TufAmerica's claims through their motions to dismiss and for summary judgment; (2) TufAmerica's conduct in this action— including its complete absence of due diligence with respect to its claims and its pursuit and maintenance of its frivolous claims even after being given notice as early as 2010 that it lacked standing to bring them—was objectively unreasonable; (3) TufAmerica's failure to disclose the entirety of its flawed agreements, including the 2012 agreement with Mr. Avery at the outset, drastically increased the fees and costs that the Beastie Boys incurred in defending this action; and (4) an award of attorney's fees to the Beastie Boys Defendants also would further the objectives of the Copyright Act by compensating the Beastie Boys Defendants for having to defend TufAmerica's frivolous copyright claims and deterring TufAmerica, a serial copyright litigant with a history of asserting baseless copyright claims, from pursuing claims without first conducting necessary due diligence with respect to the copyrights at issue.

## **RELEVANT FACTS**

As this Court ruled in its March 24, 2015 Memorandum and Order, (the "Summary Judgment Order") (Dkt. No. 101), TufAmerica lacked standing to maintain the claims asserted in this action. TufAmerica lacked standing when it first complained to the Beastie Boys

Defendants in 2010, and again when it filed the April 30, 2012 Complaint (Dkt. No. 1) and the

December 6, 2012 Amended Complaint (Dkt. No. 25).  As of the filing of the Complaint,

TufAmerica had entered into two purportedly "exclusive" administration agreements with

members of the band Trouble Funk, Robert Reed and Tony Fisher (the "1999 TufAmerica

Agreements") that made clear that TufAmerica had no basis to assert the claims alleged in those

pleadings. (Max Dec. Exs. A-B.)  The 1999 TufAmerica Agreements did not include James

Avery, an admitted co-owner of the copyrights that those agreements purported to convey an

exclusive interest in.  In 2012, TufAmerica entered into a separate agreement with Mr. Avery

(the "2012 Agreement"), that purported to exclusively license "his right to sue and recover on all

accrued and future causes of action in connection with" the copyrights at issue in this case. (Max

Dec. Ex. C.)  The 2012 Agreement fails to even specify the recordings or agreements that it

purported to convey to TufAmerica. (*Id.*)  As set forth in the Summary Judgment Order, even if

Messrs. Reed, Fisher and Avery had the rights that they purported to convey under the 1999 and

2012 Agreements, those Agreements failed to convey the exclusive license required to maintain

this action. (Summary Judgment Order at 7-10.)[1]

TufAmerica is no stranger to initiating copyright litigation over claimed copyright

usages, having initiated at least 27 such copyright litigations, including this one, since 1999.

(Max Dec. Ex. E.)  At the time TufAmerica initiated this action, it was aware of the 1999 and

2012 Agreements, because it was a party to them. (Max Dec. Exs. A-C.)  TufAmerica also was

aware of Island's rights to the copyrights at issue, as it specifically identified recordings released

by 4th & Broadway, an Island entity, in Defendants' Requests for Admission and which also are

---

[1] In fact, Messrs. Reed, Fisher and Avery did not retain the rights they purported to convey in the 1999 and 2012 Agreements, as the undisputable documentary evidence developed in discovery shows that they transferred the copyrights at issue to Island Records ("Island"), the UMG Defendants' predecessor-in-interest, in 1984, well before the alleged infringement occurred and decades before this action was commenced. (Max Dec. Ex. D.)

referred to in the 1999 Agreements. (Max Dec. Ex. F.)  It also appears that, notwithstanding Defendants' admonitions before this litigation, TufAmerica undertook no due diligence to determine whether or not Messrs. Reed, Fisher and Avery actually maintained the rights they purported to convey in the 1999 and 2012 Agreements, which Defendants contend had, in fact, already been conveyed to Island decades earlier.[2]  This is not the first time that TufAmerica has failed to conduct proper due diligence in connection with its claims, as fees were awarded against its subsidiary for, among other things, failing to conduct due diligence regarding "the law or facts involved in its claims." *See Tuff 'N' Rumble Mgm't, Inc. d/b/a Tuff City Records v. Profile Records, Inc.*, 1997 WL 470114, at *1 (S.D.N.Y. Aug. 15, 1997).[3]

TufAmerica made its initial demands to Defendants with respect to its alleged rights in the musical composition and sound recording copyrights for "Say What" and "Drop the Bomb" in March and April 2010. (Max Dec. Exs. I-J.)  At that time, TufAmerica had not yet entered into the 2012 Agreement, and TufAmerica was purporting to assert claims as to copyrighted works that had been conveyed to Island in 1984. (Max Dec. Exs. C-D.)  In response to TufAmerica's demand, the Beastie Boys Defendants denied any infringement, made clear "that there are other parties who claim exclusive ownership of sound recording and musical composition copyrights in 'Drop the Bomb,'" and challenged TufAmerica's claimed exclusive rights to "Say What." (Max Dec. Ex. K.)  Following receipt of the Beastie Boys Defendants' letter, TufAmerica took

---

[2] In fact, Aaron Fuchs, TufAmerica's President and sole shareholder, testified that he saw the Island Agreement for the first time when it was produced by the UMG Defendants in this litigation. (Max Dec. Ex. G at 149-51.) Mr. Fuchs also swore under oath that he did not know whether a search of the records at the United States Copyright Office was ever performed with respect to the copyrights at issue.  (*Id.* at 71.)  Additionally, William Scott, TufAmerica's general manager, testified that he had never seen the due diligence that TufAmerica allegedly performed in connection with the 1999 Agreements, and that he did not review any due diligence or even make an attempt to obtain due diligence materials before TufAmerica filed the Complaint in this action. (Max Dec. Ex. H at 102-11.)  In fact, Mr. Scott testified that he had not even searched the copyright databases to determine whether there were competing claims to the copyrights at issue until a few weeks before his deposition.  (*Id.* at 200-09.)

[3] Mr. Fuchs testified that Tuff City Records is a subsidiary of TufAmerica. (Max Dec. Ex. G at 12-14.)

no legal action until May 3, 2012, when it filed the Complaint in this action asserting four copyright claims with respect to "Say What" and "Drop the Bomb." (Dkt. No. 1.) Defendants moved to dismiss the Complaint on November 26, 2012 and TufAmerica subsequently filed its Amended Complaint to assert two additional claims with respect to copyrights in "Let's Get Small" and "Good to Go," while withdrawing its previously asserted equitable claims. (Dkt. No. 25.) Defendants moved to dismiss the Amended Complaint and the Court issued its September 10, 2013 Opinion and Order dismissing TufAmerica's claims with respect to "Drop the Bomb" and "Good to Go" on the grounds that the claimed use of those works was, as a matter of law, not possibly quantitatively or qualitatively significant as compared with those works. (Dkt. No. 43 at 21-27.) The Court also limited any recovery on TufAmerica's remaining claims with respect to "Say What" and "Let's Get Small" to the three years prior to TufAmerica filing this action. (*Id.* at 30.)

After this Court granted Defendants' motion to dismiss as to four of the six claims in the Amended Complaint, the Beastie Boys Defendants served requests for the production of documents. (Max Dec. Ex. L.) On March 7, 2014, the UMG Defendants produced the Island Agreement, which made clear that the rights that TufAmerica purported to assert in this action had been conveyed to Island decades earlier. (Max Dec. Ex. M.) TufAmerica delayed in producing documents for over four months and ultimately produced the 2012 Agreement on March 10, 2014. (Max Dec Ex. N-O.) On April 11, 2014, Defendants wrote to TufAmerica outlining the serious standing issues raised by, among other things, the 1999, 2012 and Island Agreements, and demanding that TufAmerica withdraw its claims. (Max Dec. Ex. P.) TufAmerica's counsel responded to Defendants' letter on April 14, 2014, indicating that he had been unable to confer with Messrs. Avery or Fisher or their counsel and refusing to withdraw

TufAmerica's claims. (Max Dec. Ex. Q.)  On April 14, 2014, Defendants sent another letter to

TufAmerica demanding that it withdraw its claims. (Max Dec. Ex. R.)  TufAmerica responded

on April 16, 2014, again refusing to withdraw its claims and suggesting that the Island

Agreement was not valid or properly executed. (Max Dec. Ex. S.)  At their depositions, Messrs.

Avery and Fisher ultimately confirmed the validity of the Island Agreement, contrary to

TufAmerica's baseless assertion. (Max. Dec. Exs. T at 122-30, 166-69; U at 21-26, 132-33,

139-40, 161-64.)

On April 25, 2014, the parties appeared before this Court for a conference.  At that

conference, Defendants suggested that, in light of TufAmerica's refusal to withdraw its claims

and in order to mitigate litigation costs, the parties should engage in limited discovery with

respect to TufAmerica's standing to bring the claims asserted in this action and postpone expert

discovery until after the limited discovery was completed.  TufAmerica agreed to this proposal,

implicitly acknowledging that chain of title and standing were potentially dispositive issues.

After engaging in limited standing discovery, Defendants made their motions for summary

judgment. (Dkt. Nos. 74-84.)  On March 24, 2015, this Court issued the Summary Judgment

Order, finding that TufAmerica lacked standing to bring the claims asserted in this action and

dismissing all claims.  The Court's Summary Judgment Opinion makes clear that the governing

law regarding standing, upon which TufAmerica's claims were dismissed, is settled, well

established and should be known by all copyright practitioners.

## **ARGUMENT**

### I. BEASTIE BOYS DEFENDANTS ARE ENTITLED TO AN AWARD OF ATTORNEY'S FEES AND COSTS UNDER THE COPYRIGHT ACT

The Copyright Act provides that "the court in its discretion may allow the recovery of

full costs by or against any party other than the United States or an office thereof."  17 U.S.C.

§ 505.  That portion of the Act further provides that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs."  *Id.*  Attorney's fees are awarded under the Copyright Act in the court's discretion.  *See Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994).  However, an award of attorney's fees is "the rule rather than the exception and [they] should be awarded routinely."  *Kroll-O'Gara Co. v. First Defense Int'l, Inc.*, 2000 WL 369721, at *1 (S.D.N.Y. April 11, 2000) (quoting *Micromanipulator Co., Inc. v. Bough*, 779 F.2d 255 (5th Cir. 1985)); *see also Roth v. Pritikin*, 787 F.2d 54, 57 (2d Cir. 1986) ("Because the Copyright Act is intended to encourage suits to redress copyright infringement, fees are generally awarded to a prevailing plaintiff.").

In considering whether to award attorney's fees to a prevailing party, courts consider several nonexclusive factors, including:  "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Fogerty*, 510 U.S. at 534 n. 19 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)).  "The third factor—objective unreasonableness—should be given substantial weight."  *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010).

In fact, a non-prevailing party's objective factual or legal unreasonableness may itself provide a basis for awarding attorney's fees to the prevailing party.  *Williams v. Crichton*, 891 F. Supp. 120, 122 (S.D.N.Y. 1994) (awarding fee because non-prevailing party's claims were objectively unreasonable).  However, an award of attorney's fees is not contingent upon a finding that the non-prevailing was objectively unreasonable.  *See Canal Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 681 (S.D.N.Y. 2011); *see also Matthew Bender & Co., Inc. v. West Publ'g Co.*, 240 F.3d 116, 122 (2d Cir. 2001) ("the presence of other factors might justify an

award of fees despite a finding that the nonprevailing party's position was objectively reasonable"); *Briarpatch Ltd. L.P. v. Geisler Roberdeau, Inc.*, 2009 WL 4276966, at *5 (S.D.N.Y. Nov. 30, 2009) ("It is not necessary that this Court make a finding of frivolousness or bad faith in order to award a fee.").

## A.     The Beastie Boys Defendants Are A Prevailing Party

A "prevailing party" is one who "secure[s] a judgment on the merits or a court-ordered consent decree." *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600 (2001); *see also Ritchie v. Gano*, 754 F. Supp. 2d 605, 607 (S.D.N.Y. 2010). After making their motion to dismiss, the Beastie Boys Defendants secured dismissal of all four claims with respect to "Drop the Bomb" and "Good to Go."   After conducting limited discovery regarding TufAmerica's standing to bring the remaining claims in this action, the Beastie Boys Defendants made a motion for summary judgment, which dismissed all remaining two claims and resulted in a judgment in Defendants' favor.  The dismissal of all of TufAmerica's claims and judgment in Defendants' favor represented an overwhelming victory for the Beastie Boys Defendants. *See Crown Awards, Inc.*, 564 F. Supp. 2d at 295; *see also Klinger v. Conan Doyle Estate Ltd.*, 761 F.3d 789, 791 (7th Cir. 2014) (awarding attorney's fees to prevailing party). Under these circumstances, the Beastie Boys Defendants are clearly the prevailing parties.

## B.     TufAmerica's Conduct In This Action Was Objectively Unreasonable

Objective unreasonableness is "a factor that should be given substantial weight in determining whether an award of attorney's fees is warranted."  *Matthew Bender & Co., Inc.*, 240 F.3d at 122.  Such a finding may, on its own, merit an award of attorney's fees.  *See Crown Awards, Inc.*, 564 F. Supp. 2d at 294.  "The Court need not make a finding of frivolousness or bad faith to award a fee; rather, a consistent lack of evidentiary support for the claim typically will render it objectively unreasonable."  *Vargas v. Transeau*, 2008 WL 3164586, at *2

(S.D.N.Y. Aug. 6, 2008). As discussed above, TufAmerica failed to conduct due diligence with respect to its claims against Defendants.

TufAmerica not only failed to investigate the existence and import of the Island Agreement, but it also failed to consider the clear legal deficiency of the 1999 and 2010 Agreements, which it was a party to and fully aware of *ab initio*. TufAmerica also failed to consider the fact that the Beastie Boys Defendants alleged use of "Drop the Bomb" and "Good to Go" was not qualitatively or quantitatively sufficient to support a claim as a matter of law. Moreover, even after it became apparent that TufAmerica lacked standing to assert the claims at issue, TufAmerica refused to withdraw them. TufAmerica's decision to continue to pursue "such a factually weak claim, frivolous or not, is a relevant consideration in the determination of whether to award attorney's fees." *The Yankee Candle Co., Inc. v. The Bridgewater Candle Company, LLC*, 140 F. Supp. 2d 111, 116 (D. Mass 2001) (recognizing that the court had noted the "marked weaknesses" of the plaintiff's claims in its earlier decisions and awarding fees based on objective unreasonableness).

TufAmerica's pursuit of frivolous claims that were not legally cognizable as a matter of law, as well as its continued pursuit of claims that it never had standing to assert were objectively unreasonable, both as to the law, and its factual behavior in this case. TufAmerica's conduct is made even more unreasonable in light of its complete lack of due diligence with respect to chain of title. Accordingly, an award of attorney's fees to the Beastie Boys Defendants would further the purpose of the Copyright Act as it would both compensate them for having to defend against baseless claims and deter future plaintiffs asserting such claims in bad faith and taking objectively unreasonable factual and legal positions in copyright cases. *Crown Awards, Inc. v. Discount Trophy & Co., Inc.*, 564 F. Supp. 2d 290, 295 (S.D.N.Y. 2008).

This is not the first time that TufAmerica has engaged in such objectively unreasonable conduct. In *Tuff 'N' Rumble Mgm't, Inc. d/b/a Tuff City Records*, fees were awarded against TufAmerica's subsidiary, because of its "failure to research properly the law or facts involved in its claims." 1997 WL 470114, at *1. Suing for copyright infringement represents a significant portion of TufAmerica's revenue and is one of TufAmerica's chief businesses. (Max Dec. Ex. H at 153-154.) As such, TufAmerica cannot plead ignorance of blackletter copyright law. TufAmerica's apparent neglect to research the law and the facts with respect to its claims in this action led TufAmerica to assert claims without any factual basis or standing and resulted in three years of litigation regarding those frivolous claims and significant costs to Defendants. In light of TufAmerica's objectively unreasonable conduct, an award of the Beastie Boys Defendants' attorney's fees and costs is appropriate.

## II. THE FEES AND COSTS SOUGHT BY BEASTIE BOYS DEFENDANTS ARE REASONABLE

In *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182 (2d Cir. 2007), the Second Circuit described its method of determining reasonable attorney's fees as requiring a review of "all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to attorney's fees in setting a reasonable hourly rate" to determine the "presumptively reasonable fee." *Id.* at 190. The presumptively reasonable fee is primarily derived by multiplying the attorney's reasonable hourly rate by the number of hours reasonably expended. *Id.* at 183; *Bldg. Serv. 32BJ Health Fund v. Renaissance Equity Holdings, LLC*, 2010 WL 1438117, at *2 (S.D.N.Y. Apr. 9, 2010).

To determine the reasonable hourly rate, courts consider "what a reasonable, paying client would be willing to pay" by applying the market rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation. *Arbor*

*Hill* at 189-90.  Additional factors to consider include, but are not limited to:  (1) time and labor; (2) novelty and difficulty of the questions presented; (3) skills requisite to perform the legal service properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.  *See United States Football League v. Nat'l Football League*, 887 F.2d 408, 415 (2d Cir. 1989).  Many of these factors are subsumed within the initial calculation of the attorney's hours and hourly rate. *Id.*  A court may rely on its own knowledge of private firms' current hourly rates in its analysis.  *See Miele v. N.Y. State Teamsters Conf. Pension & Ret. Fund*, 831 F.3d 407, 409 (2d Cir. 1987).

Moreover, the Supreme Court has emphasized that the degree of the prevailing party's success is "the most critical factor" in determining the reasonableness of a fee award. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).  Indeed, where the prevailing party "has obtained excellent results, his attorney should recover a fully compensatory fee[,]" which will normally "encompass all hours reasonably expended on the litigation[.]"  *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983).  As discussed in detail below, by this motion, the Beastie Boys Defendants are seeking an award of $676,846.69, representing $662,079 of attorney's fees and $14,767.69 of costs that the Beastie Boys Defendants reasonably expended in this action.[4]

---

[4] Once fully briefed and argued, the Beastie Boys Defendants will submit a supplemental declaration regarding the costs and fees incurred in making this fee application, which would also be recoverable from TufAmerica upon an award of attorney's fees from this Court. *See, e.g., Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 314 (S.D.N.Y. 2009) (awarding fees incurred for time spent preparing application for cots and fees under the Copyright Act); *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 2008 WL 4613752, at *6 (S.D.N.Y. Oct. 17, 2008) (same).  The (footnote continued)

## A. The Attorney's Fees Sought By The Beastie Boys Defendants Are Reasonable

Here, the amount of work performed by Sheppard Mullin, and the billing rates charged by the attorneys representing the Beastie Boys Defendants over the three years it has taken to win dismissal of all of TufAmerica's frivolous claims, are reasonable. The Beastie Boys Defendants have been represented by Kenneth Anderson since 1985.[5] Mr. Anderson defended the Beastie Boys Defendants with Theodore C. Max. Mr. Max has over thirty years of experience as an attorney, with a practice primarily focusing on intellectual property litigation and counseling. Together with Mr. Anderson, Mr. Max's legal services included, but were not limited to, appearing in court, preparing and drafting the Bestie Boys Defendants' initial motion to dismiss the Complaint and subsequent motion to dismiss the Amended Complaint, preparing and drafting initial disclosures and discovery requests and responses, preparing for and deposing four fact witnesses, overseeing the review and production of the Beastie Boys Defendants' document productions, overseeing the review of TufAmerica and the UMG Defendants' document productions, and preparing and drafting the Beastie Boys Defendants' summary judgment motion. Messrs. Max and Anderson were primarily assisted in this work by associates Valentina Shenderovich and Thomas M. Monahan, as well as paralegals and other litigation support staff.[6] Mr. Monahan graduated from Brooklyn Law School in 2010 and has been working as a litigation associate in New York City since that time. Mr. Monahan has significant

---

Beastie Boys Defendants also intend to seek any additional costs and fees necessarily incurred in connection with this action, including any costs and fees incurred in the event that TufAmerica seeks to appeal the final judgment herein.

[5] Mr. Anderson has over twenty-five years of experience in counseling clients in connection music industry transactional and litigation matters, including sound recording and music publishing agreements, and music copyright infringement claims and related matters. Mr. Anderson has represented the Beastie Boys Defendants since 1985. That representation has included high-profile and landmark cases that he supervised and actively participated in.

[6] This included Lisa S. Rodriguez, a paralegal, Brian Simpson, the Managing Clerk of the Firm's New York office, and Giles Mitchell, a Litigation Support Specialist.

copyright litigation experience, having represented the Beastie Boys Defendants in other copyright litigations in this Court and in the Northern District of California. Mr. Monahan also has pursued copyright claims on behalf of other clients. Ms. Shenderovich graduated from Fordham law school in 2011 and worked as a litigation associate at Sheppard Mullin from her graduation through 2013.[7]

Sheppard Mullin's contemporaneous monthly time records, describing the work performed on this matter by Sheppard Mullin attorneys and litigation support staff, are attached as Exhibit V to the Max Declaration. These records identify the hourly fees accrued in connection with this litigation and, for each entry, specify "the date, the hours expended, and the nature of the work done." *N.Y. State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d, 1136, 1154 (2d Cir. 1983). In these records, each timekeeper recorded his or her time contemporaneously in tenths of hours and provided a detailed description of the services rendered. Billing records which are similar to those of Sheppard Mullin have been found to be reasonable. *See Kahil v. Original Old Homestead Rest., Inc.*, 657 F. Supp. 2d, 470, 477 (S.D.N.Y. 2009) (collecting cases in the district discussing billing entries).

---

[7] Messrs. Max and Anderson were also assisted by Valerie Alter, Tyler Baker and Edwin Komen. Ms. Alter graduated from Stanford Law School in 2005. Ms. Alter is a litigation associate who represents clients in intellectual property and media law matters, including trademark, copyright, right of publicity, trade secret, and privacy claims. Ms. Alter drafted the Beastie Boys Defendants' reply in support of their summary judgment motion because Mr. Monahan was engaged in a trial at that time and unable to assist with those papers. Mr. Baker graduated from the Georgetown University Law Center in 2011. Mr. Baker is an associate in Sheppard Mullin's Intellectual Property Practice Group focusing on litigating business and commercial disputes involving false advertising claims, trademark and trade dress infringement claims, copyright infringement claims, and patent infringement claims. Mr. Baker assisted with the Beastie Boys Defendants' motions to dismiss, and drafted the Beastie Boys Defendants' Answer to the Amended Complaint. Mr. Komen graduated from George Washington Law School in 1976. Mr. Komen is a partner whose practice focuses on Entertainment and Intellectual Property law. Mr. Komen practices extensively before the United States Copyright Office and the United States Patent and Trademark Office and worked in this matter to obtain deposit copies, copyright registrations and other materials from the United States Copyright Office. (Max Dec. ¶ 31.)

The Beastie Boys Defendants seek to recover fees and costs from TufAmerica for 1,155.4 hours of work by Sheppard Mullin attorneys and litigation support staff, as set forth in the billing summary attached as Exhibit W to the Max Declaration. The accrued hours were both necessary and reasonable in order to fully defend against TufAmerica's claims in this action. The hours worked produced a significant victory for the Beastie Boys Defendants, who prevailed on their motion to dismiss and again when this Court dismissed the remaining two claims on their motion for summary judgment.

The billing rates for Sheppard Mullin attorneys and litigation support staff who worked on this matter are set forth in the billing summary. These rates are reasonable and equivalent or comparable to the prevailing rates charged by similarly experienced attorneys at other law firms practicing in the United States District Court for the Southern District of New York. (Max Dec. ¶ 38)[8] The reasonableness of Sheppard Mullin's rates is supported by the 2014 National Law Journal Billing Survey, which provides hourly billing rates for 169 of the nation's 350 largest law firms. (Max Dec. Ex. Z, ¶ 39.)[9] Furthermore, this matter involved complex issues of copyright law and required seasoned trial counsel with experience in intellectual property law and the music industry. The Beastie Boys Defendants also were provided with courtesy discounts

---

[8] Sheppard Mullin also billed the Beastie Boys Defendants at a reduced rate to offset the significant financial burden of defending the claims brought by TufAmerica. The Beastie Boys Defendants were charged an hourly rate of $675 for Messrs. Max and Anderson's time. During the time they billed to this case, Mr. Max's scheduled hourly rate was between $680 and $785, and Mr. Anderson's scheduled hourly rate was between $695 and $840.

[9] As reflected in that survey, the rates charged for Sheppard Mullin partners is below the $883.18 average partner billing rate in New York and slightly higher than the $613.05 national average. Similarly, the rates for Sheppard Mullin associates are largely below the $531.21 New York average and slightly higher than the $376.66 national average.

in the amount of $10,005. Accordingly, the Beastie Boys Defendants should be awarded attorney's fees in the amount of $662,079.[10]

**B.      The Costs Sought By The Beastie Boys Defendants Are Reasonable**

The Copyright Act also allows for the recovery of "full costs" as a matter of the court's discretion, *see* 17 U.S.C. § 505, and courts "routinely award costs to the prevailing party in copyright cases." *Nat'l Football League v. PrimeTime 24 Joint Venture*, 131 F. Supp. 2d 458, 484 (S.D.N.Y. 2001). The Beastie Boys Defendants seek to recover $14,767.69 in costs incurred by Sheppard Mullin and the Beastie Boys Defendants, as set forth in the costs summary attached as Exhibit X to the Max Declaration. The costs summarized in Exhibit X are also individually itemized on Sheppard Mullin's bills. (Max Dec., Ex. V.) The costs and expenses include court reporter fees and costs relating to deposition transcripts, postage, messenger and overnight delivery services, duplicating and reproduction, supplies, transportation and electronic legal research costs.

These costs are reasonable because they are not associated with ordinary office overhead, but instead relate to identifiable "out-of-pocket expenses incurred by attorneys *and ordinarily charged to their clients.*" *J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, 2008 WL 4613752, at *18 (S.D.N.Y. Oct. 17, 2008) (emphasis in original) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 762 (2d Cir. 1998). Moreover, these are all costs for which clients usually reimburse

---

[10] Such an award would be reasonable and commensurate with attorney's fees awards issued by other district courts in connection with claims under the Copyright Act. In 2001, the United States District Court for the District of Massachusetts awarded a prevailing defendant $890,282.40 in attorney's fees after that defendant prevailed on summary judgment and the parties agreed to dismiss the only remaining claim. *Yankee Candle Co.*, 140 F. Supp. 2d 111, 127. Similarly, the United States District Court for the District of Illinois noted that "on average, copyright cases in Chicago involving between $1-25 million in damages result in $760,000 in fees incurred through the close of discovery. *Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 594 F. Supp. 2d 931, 935 (E.D. Ill. 2009) (awarding $592,729.10 in attorney's fees to one defendant, and another $90,946.25 to its co-defendant). In that case, the plaintiff voluntarily dismissed the action while discovery was ongoing. *See Mostly Memories, Inc. v. For Your Ease Only, Inc.*, 526 F.3d 1093, 1096 (7th Cir. 2008) (noting that "the prevailing party in Copyright Act litigation is presumptively entitled to an award of fees under § 505").

Sheppard Mullin and for which the Beastie Boys Defendants agreed to pay for as part of its engagement.[11]

## **CONCLUSION**

For the foregoing reasons, the Beastie Boys Defendants respectfully request that the Court grant this motion for attorney's fees and costs in its entirety, together with such other and further relief as the Court may deem just and proper.

Dated: New York, New York
        April 9, 2015

Respectfully submitted,

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:        /s/ Theodore C. Max
        Theodore C. Max, Esq. (TM-1742)
        Kenneth B. Anderson, Esq. (KA-9923)
        Thomas M. Monahan, Esq. (TM-1984)
        30 Rockefeller Plaza
        New York, New York 10112
        Tel:    (212) 653-8700
        Fax:    (212) 653-8701

        *Attorneys for Defendants*
        *Michael Diamond, Adam Horovitz,*
        *the Estate of Adam Yauch, p/k/a Beastie Boys*
        *and Brooklyn Dust Music*

---

[11] These costs include legal research expenses incurred by attorneys on Westlaw, Lexis and PACER. These charges should be reimbursed by TufAmerica, because Sheppard Mullin "pass[es] these expenses on to clients as separately chargeable disbursements." *J.S. Nicol*, 2008 WL 4613752, at *18 (awarding costs for legal research fees where firm "treated Westlaw charges as a disbursement billed separately from its attorney's hourly rates and separately from its general overhead"); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 369 F.3d 91, 97-98 (2d Cir. 2004) ("If [plaintiff's counsel] normally bills its paying clients for the cost of online research services, that expense should be included in the fee award."). These costs also include travel expenses associated with the Beastie Boys Defendants' counsel's travel to Washington, D.C. for the depositions of Messrs. Fisher and Avery.