UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

TUFAMERICA, INC.,

       Plaintiff,                                 12 cv 3529 (AJN)

v.

MICHAEL DIAMOND, ADAM HOROVITZ,
and ADAM YAUCH, p/k/a BEASTIE BOYS,
UNIVERSAL MUSIC PUBLISHING, INC.,
UNIVERSAL MUSIC PUBLISHING GROUP,
BROOKLYN DUST MUSIC, and CAPITOL
RECORDS, LLC,

       Defendants.
-----------------------------------------------------------x

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTIONS FOR ATTORNEYS' FEES AND COSTS

Kelly D. Talcott
The Law Offices of Kelly D. Talcott
200 Sea Cliff Avenue, #43
Sea Cliff NY 11579
v.516.515.1545
f.516.871.0682

Attorney for Plaintiff
TufAmerica, Inc.

## Contents

I. INTRODUCTION .................................................................................................. 1

II. ARGUMENT......................................................................................................... 1

   A. TufAmerica's Suit was Neither Objectively Unreasonable Nor Frivolous ............. 5

   B. In the Event the Court Awards Attorneys' Fees, the Amounts Defendants Request Should be Reduced Substantially. ...................................................................... 9

      1. There is no Indication of the Parties' Actual Billing Arrangement ..................... 9

      2. Defendants' Counsel Engaged in Impermissible Block Billing ........................ 10

      3. Defendants' Counsel Provide Impermissibly Vague Billing Entries................. 11

      4. Defendants Fail to Demonstrate That Their Hourly Rates are Reasonable ...... 13

      5. Defendants' Costs Are Excessive ...................................................................... 15

III. CONCLUSION................................................................................................... 16

## Cases

*Adorno v. Port Auth. of N.Y. & N.J.*, 685 F.Supp.2d 507 (S.D.N.Y. 2010)....................... 10

*Ann Howard Designs, LP v. Southern Frills, Inc.*, 7 F.Supp.3d 388 (S.D.N.Y. 1998) .. 1, 2

*Arclightz and Films Pvt. Ltd* v. *Video Palace Inc. ("Arclightz IF"),* No. 01-Civ-l0135

   (S.D.N.Y. Oct. 24, 2003) ................................................................................................ 13

*Barclays Capital Inc. v. Theflyonthewall.com*, No. 06 Civ. 4908 (S.D.N.Y. June 30,

   2010) ................................................................................................................................ 12

*Belair v. MGA Entertainment, Inc.*, 09 Civ. 8870 (SAS) (S.D.N.Y. May 9, 2012) ....... 2, 3

*Blum v. Stenson*, 465 U.S. 866 (1984) ............................................................................... 13

*Brown v. Perdue*, No. 04 Civ. 7417 (S.D.N.Y. Sept. 15, 2006) ......................................... 3

*Bryant v. Media Right Productions, Inc.*, 603 F.3d 135 (2d Cir. 2010) ............................. 4

*Canal+Image UK Ltd.*, 792 F.Supp.2d 675 (S.D.N.Y. 2011) ........................................ 4, 5

*Chivalry Film Prods v. NBC Universal, Inc.*, No. 05 Civ. 5627 (GEL) (S.D.N.Y. Nov. 27, 2007) .................................................................................................................. 2

*CK Co. v. Burger King Corp.*, No. 92 Civ. 1488 (S.D.N.Y. Jan. 24, 1995) ....................... 3

*Crescent Publishing Group v. Playboy Enter.*, 246 F.3d 142 (2d Cir. 2001) ..................... 9

*DeMarco v. Ben Krupinsky Gen'l Contractor, Inc.*, No. 12-CV-0573 (SJF)(ARL)(E.D.N.Y. July 23, 2014) ................................................................ 10, 12

*Diamond v. Am-Law Publishing Corp.*, 745 F.2d 142 (2d Cir. 1984) ............................... 2

*Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 Civ. 139 (GEL) (S.D.N.Y. Apr. 7, 2009) ....... 3

*Dweck v. Amadi*, 10 Civ. 2577 (RMB)(HBP) (S.D.N.Y. July 6, 2012) ........................... 14

*Effie Film, LLC v. Pomerance*, No. 11 Civ. 7087 (JPO) (S.D.N.Y. April 24, 2013) ..... 2, 4

*Farbotko v. Clinton Co.*, 433 F.3d 2049 (2d Cir. 2005) ................................................... 13

*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ................................................................... 2

*HarperCollins Publishers LLC v. Open Road Integrated Media, LLP*, No. 11 Civ. 9499 (NRB) (S.D.N.Y. Nov. 6, 2014) ............................................................................. 3

*Harrell v. Van Der Plas* No. 08 Civ. 8252 (S.D.N.Y. Nov. 9, 2009). .............................. 13

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................................................... 13

*John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08-CV-7834 (DCP) (S.D.N.Y. Dec. 20, 2013) ............................................................................................................................... 4

*Kerin v. United States Postal Service*, 218 F.3d 185 (2d Cir. 2000) ................................. 4

*Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996 (2d Cir. 1995) ........................................... 2

*Lady v. AJI Inc.*, No. 06 Civ. 0194 (HBP) (S.D.N.Y. April 29, 2009) ............................. 13

*Linde v. Arab Bank. PLC*, 293 F.R.D. 138 (E.D.N.Y. 2013) ........................................... 10

*Little v. Twentieth Century Fox Film Corp.*, 37 U.S.P.Q.2d 1796 (S.D.N.Y. 1996) .......... 1

*LV v. New York City Dept. of Education*, 700 F. Supp. 2d 510 (S.D.N.Y. 2010) ...... 10, 12

*M. Lady LLC v. AJI, Inc*., No. 06 Civ. 1094 (HBP) (S.D.N.Y. April 29, 2009)............... 14

*Mallery* v. *NBC Universal, Inc.,* No. 07 Civ. 2250 (S.D.N.Y. Mar. 18, 2008) ................ 13

*Matthew Bender & Co, Inc. v. West Pub. Co*., 240 F.3d 116 (2d Cir. 2001), ................ 2, 4

*Miroglio S.P.A. v. Conway Stores, Inc.,* 629 F.Supp.2d 307 (S.D.N.Y. 2009) .... 10, 12, 14

*Nicholls v. Tufenkian Import/Export Ventures, Inc*., No. 04 Civ. 2110 (S.D.N.Y. Aug. 11, 2005) ........................................................................................................................ 3

*Nicholls v. Tufenkian Import-Export Ventures, Inc*., No. 04-CV-2110 (JCF) (S.D.N.Y. Aug. 11, 2005) ............................................................................................................. 4

*Porto v. Guirgis*, 659 F.Supp.2d 597 (S.D.N.Y. 2009) ....................................................... 3

*Securities and Exchange Commission v. Yorkville Advisors, LLC*, No. 12 Civ. 7728 (GBD)(HBP) (S.D.N.Y. Feb. 27, 2015) ....................................................................... 14

*Sierra Club v. United States Army Corps of Eng'rs*, 776 F.2d 383 (2d Cir.1985).............. 4

*Silberstein v. Fox Entm't Grp., Inc*., 536 F. Supp. 2d 440 (S.D.N.Y. 2008) ....................... 3

*Tucker v. City of New York*, 704 F.Supp.2d 347 (S.D.N.Y. 2010) ................................... 12

## I. INTRODUCTION

Defendants – who never seriously disputed the fact that they used without license or permission portions of Trouble Funk recordings in a number of Beastie Boys songs – now seek to recover more than $800,000 in attorneys' fees and costs from TufAmerica following this Court's grant of defendants' motion for summary judgment. Ignoring, of course, their use of music that did not belong to them, defendants attempt to claim the moral high ground and argue that it was "objectively unreasonable" and/or "frivolous" of TufAmerica to bring this lawsuit[1].

The facts of this case, however, do not support defendants' position. TufAmerica had a good-faith basis to bring and continue to pursue this lawsuit, and no legitimate purpose would be served by granting defendants' motion. In fact, doing so would seriously discourage future rights holders from attempting to protect their interests against much larger, better-financed parties such as the defendants in this case.

## II. ARGUMENT

An award of attorneys' fees and costs to a prevailing party in a copyright lawsuit is "by no means automatic." *Ann Howard Designs, LP v. Southern Frills, Inc.*, 7 F.Supp.3d 388, 390 (S.D.N.Y. 1998)(denying motion for attorneys' fees and costs), *citing Little v. Twentieth Century Fox Film Corp.*, 37 U.S.P.Q.2d 1796, 1797 (S.D.N.Y. 1996). Indeed, "the Supreme Court has rejected an automatic award of attorneys' fees to prevailing parties, instructing that such fees should be awarded 'only as a matter of the court's discretion.'" *Belair v. MGA Entertainment, Inc.*, 09 Civ. 8870 (SAS) (S.D.N.Y. May 9, 2012) (denying motion for attorneys' fees), *quoting*

---

[1] As they did with each of their motions in this lawsuit, defendants filed two sets of briefing papers; one set on behalf of Universal-Polygram International Publishing and Capitol Records, LLC (the "Universal-Capitol" defendants), and a second set on behalf of Michael Diamond, Adam Horovitz, the Estate of Adam Yauch, and Brooklyn Dust Music (the "Beastie Boys" defendants). This memorandum of law addresses arguments raised in both motions.

1

*from Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994); *see also Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1011 (2d Cir. 1995) (same).

Courts consider a number of factors when deciding whether to award attorneys' fees and costs to prevailing parties in copyright infringement lawsuits. While "[t]here is no precise rule or formula for making [attorneys' fees] determinations," courts typically consider a number of nonexclusive factors including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 and n.19.

Of these factors, the most significant is whether the non-prevailing party's claims were objectively unreasonable. "The emphasis on objective unreasonableness is firmly rooted in *Fogerty's* admonition that any factor a court considers in deciding whether to award attorneys' fees must be 'faithful to the purposes of the Copyright Act.'" *Matthew Bender & Co, Inc. v. West Pub. Co.*, 240 F.3d 116,122 (2d Cir. 2001), *quoting Fogerty*, 510 U.S. at 534. Indeed, because "[t]he 'principle purpose of the [Copyright Act] is to encourage the origination of creative works by attaching enforceable property rights to them,'" "the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *Matthew Bender*, 240 F.3d at 122, *quoting Diamond v. Am-Law Publishing Corp.*, 745 F.2d 142, 147 (2d Cir. 1984).

"[A]n unsuccessful claim does not necessarily equate with an objectively unreasonable claim." *Ann Howard Designs*, 7 F.Supp.3d at 390; see also *Chivalry Film Prods v. NBC Universal, Inc.*, No. 05 Civ. 5627 (GEL) (S.D.N.Y. Nov. 27, 2007) and *Effie Film, LLC v. Pomerance*, No. 11 Civ. 7087 (JPO) (S.D.N.Y. April 24, 2013) (*each quoting Ann Howard*). "To hold otherwise would establish a *per se* entitlement of attorney's fees whenever issues pertaining to judgment are resolved against a copyright plaintiff . . . .This is not a correct

construction of the law." *Nicholls v. Tufenkian Import/Export Ventures, Inc.*, No. 04 Civ. 2110 (S.D.N.Y. Aug. 11, 2005) (*quoting from CK Co. v. Burger King Corp.*, No. 92 Civ. 1488 (S.D.N.Y. Jan. 24, 1995)(internal punctuation omitted)).

Similarly, the fact that a defendant has prevailed on a motion to dismiss or on summary judgment does not require the court to award fees. *See, e.g., Brown v. Perdue*, No. 04 Civ. 7417 (S.D.N.Y. Sept. 15, 2006). "To the contrary, 'the courts of this Circuit have generally concluded that only those claims that are clearly without merit or otherwise patently devoid of legal or factual basis ought to be deemed objectively unreasonable.'" *Silberstein v. Fox Entm't Grp., Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008) (quotation marks and citation omitted). *See also Porto v. Guirgis*, 659 F.Supp.2d 597, 617 (S.D.N.Y. 2009) ("A copyright infringement claim is objectively unreasonable when [it] is clearly without merit or otherwise patently devoid of a legal or factual basis." *quoting Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 Civ. 139 (GEL) (S.D.N.Y. Apr. 7, 2009)).

To fall to the level of "objectively unreasonable," "[t]he infirmity of the claim, while falling short of branding it as frivolous or harassing, must nonetheless be pronounced." *CK Co. v. Burger King Corp.*, No. 92 Civ. 1488 (S.D.N.Y. Jan. 24, 1995). Indeed, "the mere fact that the Court was able to interpret [a] contract as a matter of law does not mean that the contrary argument was clearly unmeritorious or patently devoid of support." *HarperCollins Publishers LLC v. Open Road Integrated Media, LLP*, No. 11 Civ. 9499 (NRB) (S.D.N.Y. Nov. 6, 2014). Similarly, a "finding that no reasonable juror could find in favor of one party is not the same as a finding that the losing party's claim was objectively unreasonable – something more is required." *Belair*, 09 Civ. 8870 (SAS).

While the objective reasonableness factor "should be given substantial weight," the other factors noted above, such as the frivolousness of the non-prevailing party's claims, the party's

motivation, and the deterrent effect of such an award, may be considered as well. *Bryant v. Media Right Productions, Inc.*, 603 F.3d 135, 144 (2d Cir. 2010). Though a party's "bad faith in the conduct of the litigation is a valid ground for an award of fees," *Matthew Bender & Co., Inc. v. West Publishing Co*., 240 F.3d 116, 125 (2d Cir. 2001), "[i]n order to award bad faith fees, the district court *must* find that the losing party's claim was (1) meritless; *and* (2) brought for improper purposes such as harassment or delay." *Canal+Image UK Ltd*., 792 F.Supp.2d 675, 687 (S.D.N.Y. 2011)(emphasis added), *quoting from Kerin v. United States Postal Service*, 218 F.3d 185, 190 (2d Cir. 2000). "The test is conjunctive and neither meritlessness alone nor improper purpose alone will suffice." *Canal+Image UK Ltd*., 792 F.Supp.2d at 687, *quoting from Sierra Club v. United States Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir.1985).

That said, "an 'award [that] essentially punishes [a party] for availing itself of a right provided by the Federal Rules' is an abuse of discretion, since '[t]o allow fees on this basis would be to deter the exercise of rights afforded to litigants in federal court.'" *Canal+Image UK Ltd.*, 792 F.Supp.2d at 681 (*quoting from Matthew Bender & Co. Inc.* 240 F.3d at 126). "Because 'any factor a court considers in deciding whether to award attorney's fees must be faithful to the purposes of the Copyright Act . . . the imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright act*." Effie Film, LLC v. Pomerance*, No. 11 Civ. 7087 (JPO) (S.D.N.Y. April 24, 2013), *quoting from Matthew Bender & Co., Inc*., 240 F.3d at 122; *see also John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08-CV-7834 (DCP) (S.D.N.Y. Dec. 20, 2013) (same); *Nicholls v. Tufenkian Import-Export Ventures, Inc*., No. 04-CV-2110 (JCF) (S.D.N.Y. Aug. 11, 2005) (same); Indeed, "the propriety of a fee award under the Copyright Act turns on the reasonableness of a party's claim, not on the reason with which counsel has argued it." *Canal+Image UK Ltd*., 792 F.Supp.2d at 691.

### A. TufAmerica's Suit was Neither Objectively Unreasonable Nor Frivolous

The Court in this case awarded summary judgment to defendants because it determined that TufAmerica's agreement with James Avery – one of the three artists who composed the tracks used by defendants without license – even when considered together with TufAmerica's earlier agreements with Messrs. Fisher and Reed, failed to provide TufAmerica with sufficient exclusive rights to give it with standing to sue defendants under the Copyright Act. TufAmerica's position that its agreement with Dr. Avery did give it standing was by no means objectively unreasonable, for several reasons.

First, TufAmerica clearly made efforts to secure sufficient rights from Dr. Avery before bringing suit. It thus recognized the benefits of doing so under the law, and made an agreement with Mr. Avery that both TufAmerica and Dr. Avery believed would secure TufAmerica the rights it needed to protect both Dr. Avery's legitimate interests as well as those of the other two composers, Tony Fisher and the late Robert Reed. Keeping in mind, of course, that defendants essentially stole the Trouble Funk samples at issue when they used them in their recordings without license or permission, TufAmerica and the three artists had a legitimate mutual interest in seeing the unlicensed uses of their songs vindicated.

Second, TufAmerica's agreement with Dr. Avery recognized the need for exclusivity. It provided that Dr. Avery was granting TufAmerica an exclusive license of his rights to Trouble Funk master recordings and compositions, albeit "[t]o the extent that exclusive licenses . . . are necessary for 'standing' or similar reasons in connection with" a lawsuit such as the present one. See Avery agreement, para. 3 (Exhibit C to Declaration of Theodore C. Max). The fact that Dr. Avery's agreement ultimately failed in its wording to accomplish its goal does not mean that TufAmerica was acting unreasonably when it brought and maintained this suit.

Third, defendants base much of their argument in favor of an award of attorneys' fees and costs on matters that were not resolved by their summary judgment motion and were never decided in the lawsuit. For example, both sets of defendants argue that TufAmerica should not have contested the authenticity or interpretation of a purported agreement that none of the Trouble Funk artists ever signed (Universal-Capitol Mem. at 6, Beastie Boys Mem. at 6), though even if authentic it did not establish that any third party ever acquired rights to music the group had created before October of 1984.[2] None of the agreements they refer to were the basis for this Court's ruling on defendants' summary judgment motion, and TufAmerica's legitimate questioning of their authenticity and meaning was by no means frivolous or unreasonble.

Indeed, in the case of the Trouble Funk song "Let's Get Small," Dr. Avery and Messrs. Fisher and Reed had registered its copyright in their own names in 1982. Talcott Decl. Exh. A. Similarly, while the three artists registered their copyright to the album "In Times of Trouble" (which included the other song here at issue, "Say What") in 1985, the registration reflects the creation and publication date of the song as December 29, 1983, which of course predates the October 1984 agreements as well. Talcott Decl. Exhs. B (registration) and C (Discogs Website Track listing for In Times of Trouble, showing release date of 1983 and inclusion of "Say What" on the album)[3]. These actions are perfectly consistent with an understanding that the three artists retained the rights to all of their pre-October 1984 recordings, even if Island may have had limited rights to re-release them after that date.

---

[2] This point was extensively discussed in TufAmerica's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment at III.A, pp. 4-15, incorporated herein by reference. The Beastie Boys continue to argue (albeit in a conclusory fashion) otherwise, Beastie Boys Mem. at 3 n.1, simply highlighting the fact that this unresolved issue is not one that justifies their requested award of attorneys' fees.

[3] The Discogs website also confirms that the album "In Times of Trouble" was issued by the band's own label, D.E.T.T., which is not to be confused with Maxx Kidd's label T.E.D.D. or, of course, Island Records or any of its labels. Talcott Decl. Exh. C.

Defendants also make much of a designation made by counsel for TufAmerica following Defendants' refusal to respond to TufAmerica's requests to admit. Defendants argue that TufAmerica defined the term "Let's Get Small" as used in those requests as covering specifically identified recordings released by 4th & Broadway, an Island entity. The requests to admit, however, say more than that. The requests, found at Max Decl. Exh. F, state for purposes of clarification that as used in the requests to admit, "'Let's Get Small' means the recording of that title performed by the musical group Trouble Funk as it appears on *any* of the following: DETT 12 501 (single); 4th & Broadway 12 80 (single)" (emphasis added). Thus even if the language of a definition set forth in a request to admit can somehow be construed as an admission (and no authority supports this), TufAmerica never stated that the actual recording that the Beastie Boys stole was the version of "Let's Get Small" that appeared on the 4th & Broadway release.[4] Indeed, TufAmerica still doesn't know what the source was of the "Let's Get Small" recording the Beastie Boys used when they created "Hold It Now Hit It."

Further, when responding to TufAmerica's initial requests to admit, the Beastie Boys essentially acknowledged that the issue was one of some complexity. When asked to admit "that a portion of 'Let's Get Small' is incorporated as part of 'Hold It Now Hit It,'" they responded first that the request was "vague, ambiguous and/or unintelligible as to what recording 'Let's Get Small' refers to and what the phrase 'a portion of "Let's Get Small" is incorporated as a part of' refers." Talcott Decl. Exh. D at Request 2. In fact, rather than responding to the request to admit, the Beastie Boys took the position that the request "calls for a legal conclusion which a party can neither admit nor deny." *Id.*

---

[4] While Mr. Fisher did testify that he believed the recording of "Let's Get Small" released by Trouble Funk in 1983 was the same as the one later released by Island, neither recording was played for him at his deposition.

7

The Beastie Boys defendants similarly dodged the request to admit that they had "no license to use any part of 'Let's Get Small' in 'Hold It Now Hit It.'" Talcott Decl. Exh. D at Request 4. Here too, instead of stating whether the Beastie Boys had ever licensed *any* song titled "Let's Get Small" for use in connection with "Hold It Now Hit It," the Beastie Boys defendants objected that they did not understand what "Let's Get Small" referred to and further stated that "it calls for a legal conclusion which a party can neither admit nor deny." *Id.*

In the end, the Beastie Boys defendants never responded to the amended requests to admit, despite TufAmerica's good-faith attempts to address their alleged objections. See Talcott Decl. Exh. E, an email exchange between counsel for the parties. It is clear from the exchange in Talcott Exh. E, however, that the Beastie Boys' counsel never bothered to ask their clients what recordings they used when they created "Hold It Now Hit It," and now seek to exploit an ambiguity they created to justify their claims for attorneys' fees.

TufAmerica brought legitimate claims against defendants to enforce exclusive rights that it had attempted to secure from Dr. Avery and Messrs. Fisher and Reed, albeit as the Court determined in its order on defendants' motion for summary judgment, unsuccessfully. As noted, the three artists registered their rights to both "Let's Get Small" and "Say What" with the United States Copyright Office, and both recordings predated and thus were arguably not covered by any latter rights transfers made part of any agreements between the artists and Maxx Kidd and, consequently, between Kidd and Island Records. Defendants' disagreement with TufAmerica's interpretation of the Kidd and Island agreements does not make TufAmerica's position frivolous or objectively unreasonable, and does not justify an award of attorneys' fees.

Further, such an award would not serve the purposes of the Copyright Act. The Court has listened to the Beastie Boys recordings at issue, and there is little doubt that they incorporate samples from Trouble Funk recordings. No licenses permitting the Beastie Boys to use the

Trouble Funk recordings were ever produced in discovery, and the Beastie Boys defendants did not assert as a defense to the amended complaint that they had ever secured any.  See Beastie Boys' Answer to Amended Complaint, docket entry 47, at 11-12.  TufAmerica had reasonable grounds to assert that it controlled all rights it needed to in order to enforce the copyrights to "Say What" and "Let's Get Small," and that defendants had unlawfully used those recordings without permission or license.  An award of attorneys' fees – particularly in the magnitude requested by defendants – would send a chilling signal to small recording labels and publishing companies that enforcing rights in all but the clearest-cut cases means risking a devastating financial loss.  This Court should thus exercise its discretion to deny defendants' motions.

**B.     In the Event the Court Awards Attorneys' Fees, the Amounts Defendants Request Should be Reduced Substantially.**

There are significant issues with defendants' proposed fee requests that, in the event the Court elects to award fees, should require a substantial reduction in the amounts awarded.

**1.     There is no Indication of the Parties' Actual Billing Arrangement**

When evaluating a motion for attorneys' fees under section 505, "the actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'"  *Crescent Publishing Group v. Playboy Enter.*, 246 F.3d 142, 151 (2d Cir. 2001).  "[I]n no event should the fees awarded amount to a windfall for the prevailing party."  *Id*.  There is no indication from either the Universal-Capitol defendants or the Beastie Boys defendants of what the actual terms are of the billing arrangement between the parties.  Indeed, the Beastie Boys' fee request consistently redacts all references to accounts payable; there is thus no indication whether or to what extent the Beastie Boys defendants have paid any of the Sheppard Mullin counsel fees.  See Max Exh. V at pp. 29/90, 30/90, 40/90, 49/90, 50/90, 61/90, 62/90,

71/90, 72/90, 73/90, 79/90, 80/90, 81/90, 88/90, 89/90, 90/90 (all from the first half of Exhibit V filed with the Court), and 18/93, 26/93, 45/93, 59/93, 74/93 (from the second half of the same exhibit). Neither sets of counsel provided their respective fee agreements with their clients, so there is no indication to what extent the fees reflected in Max. Exh. V and Bart Exh. R were subject to any special considerations or adjustments.

### 2. Defendants' Counsel Engaged in Impermissible Block Billing

When evaluating fee requests, "[c]ourts may make reductions for 'block-billing,' that is, the practice of 'aggregating multiple tasks into one billing entry.'" *DeMarco v. Ben Krupinsky Gen'l Contractor, Inc*., No. 12-CV-0573 (SJF)(ARL)(E.D.N.Y. July 23, 2014); *see also Adorno v. Port Auth. of N.Y. & N.J*., 685 F.Supp.2d 507, 515 (S.D.N.Y. 2010)(same); *Linde v. Arab Bank. PLC*, 293 F.R.D. 138, 142 (E.D.N.Y. 2013) ("Where billing records include a large number of block-billed entries and there is an issue as to the reasonableness of the number of hours counsel spent on the matter, an across-the-board reduction in billing hours is appropriate" because "block-billing makes it difficult if not impossible for a court to determine the reasonableness of the time spent on each of the individual services or tasks provided."); *LV v. New York City Dept. of Education*, 700 F. Supp. 2d 510, 525 (S.D.N.Y. 2010) (since "block-billing can make it exceedingly difficult for courts to assess the reasonableness of the hours billed[,] * * * courts have found it appropriate to cut hours across the board by some percentage."); *Miroglio S.P.A. v. Conway Stores, Inc.,* 629 F.Supp.2d 307, 313-314 (S.D.N.Y. 2009) ("Block entries * * * have a tendency to obfuscate the amount of time expended on distinct tasks and introduces an element of vagueness into a fee application, making it difficult to determine if the reported hours are duplicative or unnecessary. * * * Reductions are appropriate based on such entries as well." (quotations, alterations and citations omitted)).

The time records provided by defendants are replete with examples of block billing. Almost every single page of each invoice reflects at least one time entry where multiple tasks were combined and billed as a block, rendering any sort of analysis of the reasonableness of the time expended on the listed tasks virtually impossible. See, for example, the 3.5 hours charged by timekeeper KBA from Sheppard Mullin on 9/7/12, found at Max Exh. V, page 6 of 90:

> (TufAmerica) Telephone conference with B. Cohen regarding engagement letter. Telephone conference with B. Cohen regarding litigation strategy. Telephone conference with D. Kokakis UMPG regarding TufAmerica. Worked on organizing defense. Telephone conference with Universal.

There are many, many other examples such as this one in the 183 pages of billing records provided by the Beastie Boys' counsel in support of their fee request. Similarly, the Universal-Capitol invoices also include numerous instances of block-billing, such as this one for 3.5 hours charged by timekeeper NXB from Jenner & Block on 1/9/14, found at Bart Exh. R, page 23 of 54:

> Reviewed ownership materials and discussed issues with A. Bart and B. Cohen; finalized discovery requests and served to opposing counsel; revised confidentiality order and circulated to counsel; participated in call with A. Bart and co-counsel to discuss discovery issues; wrote up summary of case developments for client.

The invoices provided by Universal-Capitol are filled with block entries such as these, much in the same way the Beastie Boys' counsel's invoices are. There is simply no way to determine to what extent the amount of time expended on the tasks described in these sorts of block time entries were reasonable. The Court should either disallow such block entries, or discount heavily the time claimed in each such entry.

### 3. Defendants' Counsel Provide Impermissibly Vague Billing Entries

"Courts may reduce the number of hours in a fee application where the tim entries submitted by counsel are too vague to sufficiently document the hours claimed." *DeMarco*, No. 12-CV-0573(SJF)(ARL)(E.D.N.Y. July 23, 2014), *quoting from Barclays Capital Inc. v. Theflyonthewall.com*, No. 06 Civ. 4908 (S.D.N.Y. June 30, 2010). Time records must "adequately identify the general subject matter of the work that the attorney did during each time slot," a requirement that "is generally not satisfied by vague entries such as 'conference call with' or 'call to' a specified person . . . ." *Tucker v. City of New York*, 704 F.Supp.2d 347, 355 (S.D.N.Y. 2010). Time entries that "omit information about the subject matter of the work, e.g. 'meeting w/co-counsel' and 'conference w/co-counsel,' justify a reduction in the hours expended," as do entries such as "'letter to [opposing counsel], 'telephone call to [opposing counsel]' and 'discussion with [opposing counsel].'" *DeMarco*, No. 12-CV-0573, *citing LV v. New York City Dept. of Education*, 700 F.Supp.2d 510, 526 (S.D.N.Y. 2010) and *Miroglio S.P.A. v. Conway Stores, Inc*., 629 F.Supp.2d at 313.

Both sets of invoices contain numerous examples of improperly vague time entries. See, for example, Max. Exh. V, page 6 of 90, where timekeeper KDA bills .20 hours as follows: "(TufAmerica) Correspond with T. Max and Capitol regarding status." Or Bart Exh. R, page 23 of 54, where timekeeper AHB bills .90 hours for "Confidentiality Order; emails." Both Max Exh. V and Bart Exh. R are filled with similar examples of overly-vague time entries.

In the event the Court elects to award attorneys' fees, TufAmerica respectfully requests an opportunity to more fully address the block-billing and vague billing issues described herein so that it may identify each instance where defendants have engaged in these improper billing practices.

### 4. Defendants Fail to Demonstrate That Their Hourly Rates are Reasonable

This Court has broad discretion to determine what constitutes a reasonable attorneys' fee. When considering the appropriate amount of an award of attorneys' fees under 17 U.S.C. § 505, courts in this Circuit use the so-called "lodestar" method, multiplying the number of hours reasonably expended by a reasonable hourly rate to come up with a fees award. *Harrell v. Van Der Plas* No. 08 Civ. 8252 (S.D.N.Y. Nov. 9, 2009). *Arclightz and Films Pvt. Ltd* v. *Video Palace Inc. ("Arclightz IF"),* No. 01-Civ-l0135 (S.D.N.Y. Oct. 24, 2003). The reasonable hourly rate for each attorney is assessed by comparing the requested rates to "rates of lawyers of similar skill and experience in the community." *Mallery* v. *NBC Universal, Inc.,* No. 07 Civ. 2250 (S.D.N.Y. Mar. 18, 2008).

"In determining what a reasonable hourly rate is, the court should not only consider the rates approved in other cases in the District, but should also consider any evidence offered by the parties*." Lady v. AJI Inc.*, No. 06 Civ. 0194 (HBP) (S.D.N.Y. April 29, 2009), *citing Farbotko v. Clinton Co*., 433 F.3d 204, 208-09 (2d Cir. 2005). Indeed, the burden of proof is on the fee applicant to provide evidence of the relevant market and the rate charged in that market. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Blum v. Stenson*, 465 U.S. 866, 895 n.11 (1984). It is "the fee applicant [who] has the burden of showing by 'satisfactory evidence – in addition to the attorney's own affidavits' – that the requested hourly rates are the prevailing market rates." *Farbotko v. Clinton Co. of New York*, 433 F.3d at 209, *quoting Blum*, 465 U.S. at 895 n.11.

Universal-Capitol provides no evidence that its counsels' billing rates – which range from $429 per hour to $720 per hour, depending on the attorney and the point in time during which the time was billed – are reasonable in this market. The Beastie Boys attorneys provide only a copy of a (copyrighted) billing survey compiled by the National Law Journal that purports to identify

13

associate and partner billing rates for 169 of the nation's 350 largest firms (giving no indication that American Lawyer Media consented to the copying, interestingly enough). Max Exh. Z. Only 28 New York firms are reflected in the survey, so it is hardly representative and by design covers only the largest of firms and, consequently, the highest of billing rates.

Recent attorneys' fees cases decided in the Southern District appear to provide more reasonable guidance. For example, in *Securities and Exchange Commission v. Yorkville Advisors, LLC*, No. 12 Civ. 7728 (GBD)(HBP) (S.D.N.Y. Feb. 27, 2015), the defendants' counsel – as did the Beastie Boys' counsel in this case – submitted survey articles from the National Law Journal in support of their requested billing rates, which ranged from $765 to $915 per hour for partners, $505 to $540 per hour for an associate, and $295 to $305 for a paralegal. Id.

The court in that case noted that the prevailing rates in the Southern District of New York for similar types of work (in that case, a discovery motion) ranged from $450 to $600 for partners, $220 to $400 for associates, and $100 to $200 for paralegals. It ultimately reduced the awarded compensation to $500 per hour for the partners, $300 per hour for the associate, and $150 per hour for the paralegal. Id. This, together with a reduction for excessive time billed, reduced the defendants' $95,736 fee request to an award of $22,757. *Id*.

In *Dweck v. Amadi*, 10 Civ. 2577 (RMB)(HBP) (S.D.N.Y. July 6, 2012), the court found $250 per hour to be a reasonable fee for an associate involved in a copyright infringement lawsuit. In the *Miroglio* copyright infringement case cited above, the court agreed to a rate of $285 per hour. *Miroglio SPA*, 629 F.Supp.2d at 316. In *M. Lady LLC v. AJI, Inc.*, No. 06 Civ. 1094 (HBP) (S.D.N.Y. April 29, 2009), a copyright infringement case, the court awarded fees of between $350 and $375 to an attorney with 14 years' experience. The court there listed other cases in which the approved hourly rates ranged from $400 per hour in a trademark infringement

14

case up to $560 in a copyright infringement case, with some in between. *Id*. at para. 27-28. In each of these cases, the approved rates were substantially below those being requested by counsel for defendants. Given their lack of support that the requested rates are reasonable in the context of this district for this type of work, the Court should reduce the rates accordingly in the event it grants defendants' motion.

### 5. Defendants' Costs Are Excessive

Defendants together seek more than $24,000 in costs associated with this lawsuit. These charges are excessive and should be reviewed and reduced by this Court.

For example, the Beastie Boys defendants seek to recover $2622.82 for video-recorded depositions, which were not used and were not necessary to the resolution of the suit. Max Exh. X. There is an unexplained charge for "Additional Hours – Aaron Fuchs" for $1849.47. Id. Westlaw research charges, which are assessed on top of the billable rate of the attorney performing the research, total $1000.80. Id.

The Universal-Capitol defendants similarly seek to recover for video-recorded depositions that were never used, to the tune of $3450.27. Bart Exh. W. There are also two "Court Reporter Charge" entries, one for "May 2014" and one for "June 2014" that do not identify the deposition or break down the charges. These total $5998.09.

In all there are nearly $15,000 in costs that have dubious support, and that should be rejected by this Court.

15

## III. CONCLUSION

TufAmerica did not act unreasonably, frivolously, or maliciously when it brought this lawsuit. It made a good-faith effort to secure the rights it needed to have standing to sue, and had good-faith arguments that the defendants did not have the rights to use Trouble Funk's "Let's Get Small" and "Say What" in defendants' recordings. Granting defendants' motions for attorneys' fees would chill future litigants whose rights have been ignored by much larger, better-financed defendants, and would not serve the interests of the Copyright Act. Defendant's motions should be denied.

Defendants' invoices are filled with instances of block billing, vague billing, and unsupported billing rates that are significantly in excess of what is typical in this district. Their costs are likewise excessive, and in the event either fees or costs are awarded, the amount requested should be reduced substantially.

Respectfully submitted,

May 4, 2015

    /s/ *Kelly D. Talcott*
Kelly D. Talcott
The Law Offices of Kelly D. Talcott
P.O. Box 43
34 Grove Street
Sea Cliff NY 11579
v.516.515.1545
f.516.871.0682

Attorney for Plaintiff
TufAmerica, Inc.