UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TUFAMERICA, INC.,

        Plaintiffs

- v -

MICHAEL DIAMOND, *et al.*,

        Defendants.

Case No. 12 Civ. 3529 (AJN)

---

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF UNIVERSAL–POLYGRAM INTERNATIONAL PUBLISHING, INC. AND CAPITOL RECORDS, LLC FOR ATTORNEYS' FEES AND COSTS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................1

ARGUMENT .........................................................................................................................2

I.  TUFAMERICA'S LAWSUIT AND LITIGATION CONDUCT WERE
    OBJECTIVELY UNREASONABLE. ...................................................................................2

    A.  TufAmerica Knew It Had No Standing to File this Lawsuit. ................................2

    B.  TufAmerica Engaged in Unreasonable Litigation Conduct...................................4

    C.  Awarding Fees Will Serve the Purposes of the Copyright Act. .............................6

II. THE UMG DEFENDANTS' ATTORNEYS' FEES ARE REASONABLE. .....................6

III. THE UMG DEFENDANTS' COSTS ARE REASONABLE. ............................................9

CONCLUSION ......................................................................................................................10

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Baker v. Urban Outfitters, Inc.*,
 431 F. Supp. 2d 351 (S.D.N.Y. 2006).................................................................................6

*Barclays Capital Inc. v. Theflyonthewall.com*,
 No. 06 Civ. 4908, 2010 WL 2640095 (S.D.N.Y. June 30, 2010).........................................8, 9

*Canal+Image UK Ltd. v. Lutvak*,
 792 F. Supp. 2d 675 (S.D.N.Y. 2011).................................................................................5

*Diplomatic Man, Inc. v. Nike, Inc.*,
 No. 08 Civ. 139, 2009 WL 935674 (S.D.N.Y. Apr. 7, 2009)................................................7

*Dweck v. Amadi*,
 No. 10 Civ. 2577, 2012 WL 3020029 (S.D.N.Y. July 6, 2012) ...........................................8

*J.S. Nichol, Inc. v. Peking Handicraft, Inc.*,
 No. 03 Civ. 1548, 2008 WL 4613752 (S.D.N.Y. Oct. 17, 2008) .........................................10

*M. Lady, LLC v. AJI, Inc.*,
 No. 06 Civ. 0194, 2009 WL 1150279 (S.D.N.Y. Apr. 29, 2009)..........................................8

*Miroglio S.P.A. v. Conway Stores, Inc.*,
 629 F. Supp. 2d 307 (S.D.N.Y. 2009).................................................................................8

*S.E.C. v. Yorkville Advisors, LLC*,
 No. 12 Civ. 7728, 2015 WL 855796 (S.D.N.Y. Feb. 27, 2015) ..........................................8

*United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*,
 No. 12 Civ. 275, 2015 WL 1726474 (S.D.N.Y. Apr. 15, 2015)...........................................8

*Vargas v. Transeau*,
 No. 04 Civ. 9772, 2008 WL 3164586 (S.D.N.Y. Aug. 6, 2008) ..........................................5

**STATUTES**

28 U.S.C. § 1920................................................................................................................10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 37...............................................................................................................8

Fed. R. Civ. P. 54...............................................................................................................1

The UMG Defendants,[1] by and through their attorneys, respectfully submit this reply memorandum of law in further support of their motion for attorneys' fees and costs pursuant to Section 505 of the Copyright Act and Rule 54 of the Federal Rules of Civil Procedure, together with such other and further relief as this Court may deem just and proper.

## **PRELIMINARY STATEMENT**

TufAmerica—a sophisticated licensing entity well-experienced in copyright litigation—filed the instant lawsuit knowing that it lacked standing to do so. TufAmerica knew that the 1999 Agreements did not convey standing to sue because the grantors of the purportedly "exclusive" administration rights were only two of the three original authors of the works at issue. Moreover, the 1999 Agreements expressly referenced Trouble Funk's prior recording contract with Island Records. Although the Court did not base its grant of summary judgment on the prior transfers to Island (among other entities), the undisputed evidence reflects that TufAmerica never bothered to perform any meaningful due diligence into whether the two members of Trouble Funk who executed the 1999 Agreements possessed the rights they were purporting to convey.

Instead of performing any diligence to ensure its claims were reasonable, TufAmerica entered into another legally insufficient agreement with a third member of the group in 2012. However, that agreement was insufficient to grant standing as it merely conveyed a bare right to sue, in contravention of basic copyright law. TufAmerica then forced the Defendants to litigate its meritless claims for nearly three years. Even after Defendants adduced undisputed evidence

---

[1] This memorandum adopts and incorporates the definitions and abbreviations used in the UMG Defendants' Memorandum of Law in Support of the Motion of Universal-Polygram International Publishing, Inc. and Capitol Records, LLC for Attorneys' Fees and Costs. In addition, the UMG Defendants refer to their opening brief as "Br." and Plaintiff's Memorandum of Law in Opposition to Defendants' Motions for Attorneys' Fees and Costs as "Opp."

demonstrating that it lacked standing, TufAmerica insisted on moving forward with its baseless claims, forcing the Defendants to waste more time and money on costly depositions of the Trouble Funk members, which confirmed that TufAmerica's litigation positions lacked any factual basis.

Having no meaningful basis to refute Defendants' entitlement to attorneys' fees as the prevailing parties, TufAmerica's opposition improperly attempts to shift the Court's focus from its own lack of diligence and unreasonable litigation positions by acting as if it had proven its underlying infringement claims. In fact, the Court dismissed two of TufAmerica's claims as a matter of law, and, given TufAmerica's manifest lack of standing, the Court never reached the allegations of infringement as to the two tracks that remained at summary judgment.

Simply put, TufAmerica's claims and litigation positions were objectively unreasonable, and the UMG Defendants' request for attorneys' fees and costs should be granted.

## ARGUMENT

### I. TUFAMERICA'S LAWSUIT AND LITIGATION CONDUCT WERE OBJECTIVELY UNREASONABLE.

#### A. TufAmerica Knew It Had No Standing to File this Lawsuit.

When it filed this action, TufAmerica relied on the 1999 Agreements as the grant of rights that permitted it to assert the claims herein. However, it knew that many of the recordings and compositions purportedly covered by the 1999 Agreements were originally co-authored by a third member of Trouble Funk, James Avery, who was not a party to the 1999 Agreements. Br. at 2-3. These same agreements expressly put TufAmerica on notice of the group's prior agreement with Island, raising a red flag as to validity of the "exclusive" rights the 1999 Agreements purported to convey. *Id.* at 3. But TufAmerica failed to perform any meaningful diligence into either of these serious issues, and instead, blindly assumed they had the "exclusive" rights they had drafted into the 1999 Agreements. *Id.* at 3-4.

Aware of the "gap" in its purported rights, TufAmerica finally decided to enter into an agreement with the "missing" original co-owner in December 2012—*after* it had filed its original complaint in this case. *Id.* at 4. Even then, TufAmerica only obtained a bare right to sue—a far cry from the exclusive rights needed to pursue claims under the Copyright Act. *Id.*

Accordingly, TufAmerica's lawsuit was objectively unreasonable and Defendants should be awarded their attorneys' fees. *Id.* at 7-8.

Tellingly, in its opposition, TufAmerica does not (and cannot) deny that it failed to perform diligence into the ownership red flags raised by both the group's prior deal with Island and its own failure to obtain rights from the third original co-owner of the compositions. Instead, TufAmerica argues that it subjectively "believed" that the 1999 Agreements and the 2012 Agreement with Dr. Avery "would secure TufAmerica the rights it needed." Opp. at 5. However, TufAmerica's purported subjective belief is neither credible nor reasonable especially coming from a sophisticated entity that, by its own allegations, has operated in the music industry for more than three decades and "acquir[ed] the rights to thousands of musical recordings and compositions." Am. Compl. ¶ 12, ECF No. 25.[2]

TufAmerica's fall back argument—that its belated agreement with Dr. Avery was not unreasonable because the agreement "recognized the need for exclusivity," Opp. at 5—has

---

[2] As during summary judgment, TufAmerica relies heavily on the original copyright registrations filed by Messrs. Fisher, Reed, and Avery in the early 1980s, arguing that since these recordings predated the Island Agreements, they were "arguably not covered by any latter [sic] rights transfers . . . ." Opp. at 8. However, TufAmerica never even investigated the possibility of competing transfers of ownership rights. Had TufAmerica performed any basic diligence, it would have discovered serious issues that challenge the "exclusive" administration rights it purported to receive under the 1999 Agreements. But TufAmerica never did so, instead turning a blind eye to the possibility that, in the 15 years preceding the 1999 Agreements, the members of Trouble Funk had entered into agreements that limited the rights they could convey to TufAmerica.

already been rejected by this Court, which explained that merely "inserting the word 'exclusive'" is not sufficient to create an exclusive license especially where the "purported contingent exclusive license is only 'for the purpose of filing and maintaining Trouble Funk Infringement Actions.'" SJ Op. at 8. Thus, TufAmerica's "beliefs", if indeed they were bona fide beliefs, were objectively unreasonable.

## B. TufAmerica Engaged in Unreasonable Litigation Conduct.

After filing a suit that it knew it had no standing to assert, TufAmerica continued to engage in unreasonable litigation conduct that needlessly prolonged resolution of this dispute. Br. at 5-6. After admitting that Island had released one of the recordings at issue (further supporting the conclusion that Trouble Funk had transferred rights in the recording to Island), TufAmerica attempted to recant that admission and questioned the authenticity of the Island Agreements. *Id.* However, TufAmerica's baseless positions were flatly contradicted a few weeks later by the very witnesses that TufAmerica represented. *Id.* TufAmerica's assertion of litigation positions without factual basis, further supports an award of attorneys' fees. *Id.* at 8-9.

Lacking any factual basis to explain its change of position, TufAmerica instead argues that Mr. Fisher's testimony, which established that the two released versions of "Let's Get Small" were the same recording, should be discounted, because "neither recording was played for him at his deposition." Opp. at 7 n.4. That assertion is specious. Mr. Fisher was a founding member of Trouble Funk who was present for the recording sessions in question, and he testified unequivocally that the group only made one recording of "Let's Get Small." Br. at 6. Defendants thus had no reason, nor any legal burden, to play the recordings for him under circumstances where Mr. Fisher testified unambiguously that they were the same.

Likewise, TufAmerica plainly had no reasonable basis for questioning the authenticity of the Island Agreements, especially where Dr. Avery and Mr. Fisher confirmed they had entered

into the Island Agreements and authenticated their signatures at their depositions. *See* Br. at 6. Instead, TufAmerica makes the irrelevant point that the Island Agreements were not the basis for the dismissal of its case. Opp. at 6. However, TufAmerica's continuation of its baseless positions undeniably created substantial and needless cost for the UMG Defendants.

In the absence of a meaningful factual defense, TufAmerica attempts to distort the Defendants' legal burden, by suggesting that Defendants must show that such conduct was done in bad faith to be awarded fees. *See* Opp. at 4. In fact, a court "need not make a finding of frivolousness or bad faith to award fees . . . rather, a consistent lack of evidentiary support for the claim typically will render it objectively unreasonable." *Vargas v. Transeau*, No. 04 Civ. 9772, 2008 WL 3164586, at *2 (S.D.N.Y. Aug. 6, 2008) (internal quotations and citations omitted). As explained in the very case TufAmerica relies on, "[o]bjective unreasonableness is not the same as bad faith, which is not a prerequisite to an award of fees." *Canal+Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 681-82 (S.D.N.Y. 2011) (internal quotations and citation omitted).

Finally, TufAmerica attempts to distract the Court from the relevant issues by alleging that Defendants "never seriously disputed the fact that they used without license or permission portions of Trouble Funk recordings in a number of Beastie Boys songs." Opp. at 1; *see also id.* at 8-9. However, because TufAmerica's lack of standing emerged during the early stages of fact discovery, the Defendants never had cause to litigate those issues to resolution.[3] More importantly, this is an irrelevant distraction; the issue before the Court is the objective reasonableness of TufAmerica's legal arguments and litigation tactics.

---

[3] Moreover, since all of the evidence supports the conclusion that Island—a record label division of UMG Recordings—owns the recordings at issue, TufAmerica's argument lacks any credible support, and is more bluster than substance.

TufAmerica had no factual foundation for its positions, and thus has no defense to the evidence demonstrating the unreasonableness of its conduct.

### C. Awarding Fees Will Serve the Purposes of the Copyright Act.

Awarding attorneys' fees and costs in a case that should never have been asserted will further the purposes of the Copyright Act by discouraging parties from burdening courts with meritless and unreasonable infringement claims. Br. at 9-10. A party with TufAmerica's level of sophistication may not rely on non-exclusive and poorly drafted agreements as a defense to the demonstrable unreasonableness of its positions. Awarding fees to Defendants is "crucial here, so as to deter this plaintiff, and other similarly situated plaintiffs, from bringing unreasonable claims based on a cost/benefit analysis that tells such plaintiffs they can score big if they win and that there will be no adverse consequences if they lose." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 359 (S.D.N.Y. 2006).

To avoid this controlling precedent, TufAmerica attempts to rely on case law that states the "imposition of a fee award against a copyright holder with an objectively reasonable litigation position will generally not promote the purposes of the Copyright Act." *See* Opp. at 4. However, as demonstrated, TufAmerica is not a copyright holder, nor did it ever have an objectively reasonable litigation position.[4] Thus, the case law cited by TufAmerica is wholly inapplicable.

## II. THE UMG DEFENDANTS' ATTORNEYS' FEES ARE REASONABLE.

By filing its baseless suit, TufAmerica forced the UMG Defendants into litigation for nearly three years. Counsel for the UMG Defendants staffed the case leanly and incurred

---

[4] In fact, TufAmerica has chosen not to appeal the Court's ruling that it has no standing under the Copyright Act.

reasonable attorneys' fees in the amount of $278,854.80 all of which were necessary to the UMG Defendants' defense.[5]

Importantly, the UMG Defendants have paid or will soon pay all of the invoices in full, Bart Decl. ¶ 14; Bart Reply Decl. ¶ 6.[6] The fact that "a highly sophisticated business client, has paid these bills, presumably after careful review . . . is prima facie evidence of the reasonableness of the amount as a whole (beyond just the reasonableness of the hourly rates charged) . . . ." *Diplomatic Man*, 2009 WL 935674, at *6. Moreover, counsel for the UMG Defendants has already discounted its fees, as reflected throughout the invoices that include the individual's "standard rate" and "discounted rate," the latter representing the rate actually billed to and paid by the UMG Defendants. Bart Decl. ¶ 15 & Ex. R.[7]

Further evidencing the reasonableness of the fees, the hourly rates charged by counsel for the UMG Defendants fall in line with, and in many cases are lower than, rates charged by comparably experienced law firms in this District. Br. at 11-12. TufAmerica chooses to ignore this evidence, erroneously claiming that the UMG Defendants have provided no evidence that "its billing rates . . . are reasonable in this market." Opp. at 13. This is simply untrue.

---

[5] The UMG Defendants seek reasonable attorneys' fees in the amount of $245,752.30 in their opening brief, along with $33,102.50 in fees incurred in briefing this fee application. *See* Reply Declaration of Andrew H. Bart ("Bart Reply Decl.") ¶ 2 & Exs. A, B. The UMG Defendants intend to submit a supplemental declaration for fees incurred in the month of May.

[6] The only invoices that have not yet been paid were those issued in connection with the drafting of the instant fees motion. Bart Reply Decl. ¶ 6. These bills are only unpaid because they are so recent and the UMG Defendants will pay such invoices in the ordinary course. *Id.* In these circumstances, the Court may still award such fees in full. *Diplomatic Man, Inc. v. Nike, Inc.*, No. 08 Civ. 139, 2009 WL 935674, at *6 n.6 (S.D.N.Y. Apr. 7, 2009) (awarding all fees, including those that had been billed but not yet paid, as there was "no reason to believe the lack of payment of bills beyond that date is attributable to anything other than processing time").

[7] TufAmerica's claim that the UMG Defendants have not submitted evidence of their actual billing arrangement with counsel is false. *See* Opp. at 9. As described above, the UMG Defendants have submitted the actual invoices that were issued.

In fact, TufAmerica's own citations support the reasonableness of the hourly rates paid by the UMG Defendants. The courts in *Dweck*, *Miroglio*, and *M. Lady*, all approved the hourly rates that were actually charged by counsel, without any downward departure. *See Dweck v. Amadi*, No. 10 Civ. 2577, 2012 WL 3020029, at *4 (S.D.N.Y. July 6, 2012); *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 315-316 (S.D.N.Y. 2009); *M. Lady, LLC v. AJI, Inc.*, No. 06 Civ. 0194, 2009 WL 1150279, at *7 (S.D.N.Y. Apr. 29, 2009). None of these cases hold that hourly rates above the rates specifically requested in those cases would be unreasonable.[8]

The reasonableness of the hours incurred is also amply supported by the detailed invoices, which indicate the individual billing time to this matter, the date of the work, the hours spent on the work, and a description of the task(s) performed. *See* Bart Decl. Ex. R; Bart Reply Decl. Ex. A. All of this detailed information demonstrates that these expenses were reasonable and necessary to the defense of the UMG Defendants, and should not be reduced. The detail provided confirms the reasonableness of the work performed and disposes of any argument that certain entries may be reduced as "block billing." *See United States ex rel. Fox Rx, Inc. v. Omnicare, Inc.*, No. 12 Civ. 275, 2015 WL 1726474, at *3 (S.D.N.Y. Apr. 15, 2015) ("The use of 'block billing' here is perfectly reasonable; the specific tasks in each 'block' are described with sufficient detail and clarity to confirm the reasonableness of the work performed.'"); *Barclays Capital Inc. v. Theflyonthewall.com*, No. 06 Civ. 4908, 2010 WL 2640095, at *4-5 (S.D.N.Y. June 30, 2010) (same).

---

[8] TufAmerica's citation to *S.E.C. v. Yorkville Advisors, LLC*, No. 12 Civ. 7728, 2015 WL 855796 (S.D.N.Y. Feb. 27, 2015), is also misleading and wholly inapplicable to the circumstances here. *See* Opp. at 14. Those attorneys' fees related to expenses incurred in connection with a single motion to compel (which involves a completely different set of standards for awarding fees under Federal Rule of Civil Procedure 37), a task that the court held was "not significantly complex" and required only "minimal expertise." *S.E.C. v. Yorkville Advisors, LLC*, 2015 WL 855796, at *18-19.

TufAmerica had ample opportunity to specify the records it believes should be reduced, including a ten-day extension to which the Defendants consented,[9] but chose only to highlight two purportedly "block-billed" or vague time entries for the UMG Defendants. Opp. at 11-12. Even these hand-picked examples, however, do not support TufAmerica's argument and instead show the reasonableness of the time spent by the UMG Defendants' counsel. *See id.* (citing Bart Decl. Ex. R at p. 23). The entry for 3.5 hours billed by Mr. Benforado, thoroughly describes every task performed, including information about the type of task, the general subject-matter, and other individuals who were involved in the task, and the 0.9 hours billed by Mr. Bart also sufficiently describes the time spent on two quick tasks. *See* Bart Decl. Ex. R at p. 23. Both of these entries contain sufficient detail to award attorneys' fees, as "it would be unreasonable to expect a detailed description for a snippet of time related to an email or a telephone call [and] [s]imilarly, a file review conducted over many hours by a junior associate does not require a more detailed description of the precise files reviewed." *Barclays*, 2010 WL 2640095, at *5 (rejecting challenges to the reasonableness of time entries that were purportedly vague or block-billed). There is simply no basis to reduce the fees associated with these two examples or any of the other time entries.

## III.  THE UMG DEFENDANTS' COSTS ARE REASONABLE.

The UMG Defendants seek costs relating to shipping charges, telephone expenses, out-of-town travel for depositions, and other fees, in the amount of $8,098.90,[10] all of which

---

[9] *See* TufAmerica's Request for Extension, ECF No. 109.

[10] In their opening brief, the UMG Defendants sought $10,543.90 in costs. *See* Br. at 13. After the filing of that brief, the UMG Defendants filed a Bill of Costs, ECF No. 111, and on May 12, 2015, the District Clerk taxed $2,445.00 of costs in favor of the UMG Defendants, ECF No. 116. The UMG Defendants' request for costs has therefore been reduced to reflect only the remaining non-taxable costs.

represent non-taxable costs that were necessary to the litigation of this case and passed through to the UMG Defendants. *See* Br. at 13; Bart Reply Decl. ¶¶ 7-8.[11] In fact, if it were not for the Defendants' request to move for summary judgment on the ownership issues, which also served to stay remaining discovery,[12] TufAmerica's frivolous lawsuit would have resulted in far greater costs in the form of expert discovery and additional depositions of the Defendants' witnesses.

Although all of these charges were detailed in the already-submitted invoices, *see* Bart Decl. Ex. R, for the avoidance of doubt, the UMG Defendants submit the original invoices issued to Jenner, to further substantiate the reasonableness of these costs. Bart Reply Decl. Ex. C.

## **CONCLUSION**

For the reasons set forth above, the UMG Defendants respectfully request that their motion for attorneys' fees and costs be granted.

---

[11] Without any legal citation, TufAmerica argues that the UMG Defendants' costs for "video-recorded depositions that were never used" should be reduced. Opp. at 15. As a threshold matter, three of the four depositions in this case were in fact used at summary judgment, *see* Declaration of Nathaniel Benforado, ECF No. 80, Exs. 1, 2, 23, and two of those deponents are located out-of-state. More fundamentally, TufAmerica appears to be applying standards reserved for taxable costs pursuant to 28 U.S.C. § 1920; the Copyright Act, however, allows for the recovery of identifiable "out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *J.S. Nichol, Inc. v. Peking Handicraft, Inc.*, No. 03 Civ. 1548, 2008 WL 4613752, at *18 (S.D.N.Y. Oct. 17, 2008) (internal quotations and citation omitted). All of these costs were charged through to the UMG Defendants and should be awarded. *See* Bart Decl. ¶ 24 & Ex. R; Bart Reply Decl. ¶ 8 & Ex. A.

[12] *See* Scheduling Order, ECF No. 71.

Dated: New York, New York
May 21, 2015

JENNER & BLOCK LLP

*/s Andrew H. Bart*
Andrew H. Bart
Nathaniel H. Benforado
919 Third Avenue
New York, New York 10022-3908
(212) 891-1645
*Attorneys for Defendants Universal–Polygram International Publishing, Inc. and Capitol Records, LLC*