UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TufAmerica Inc.,

            Plaintiff,

—v—

Michael Diamond et al.,

            Defendants.



12-CV-3529 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

    Plaintiff filed this copyright infringement action on May 3, 2012. Dkt. No. 1. On September 10, 2013, the Court granted Defendants' motion to dismiss with respect to four of Plaintiff's claims. Dkt. No. 43. On March 24, 2015, the Court granted Defendants' motion for summary judgment with respect to Plaintiff's remaining claims. Dkt. No. 101. Shortly thereafter, Defendants Michael Diamond, Adam Horovitz, the Estate of Adam Yauch, and Brooklyn Dust Music (the "Beastie Boys Defendants") and Universal-Polygram International Publishing, Inc. and Capitol Records, LLC (the "UMG Defendants") moved for attorneys' fees and costs pursuant to Section 505 of the Copyright Act and Federal Rule of Civil Procedure 54. Dkt. Nos. 103, 106. For the reasons set forth below, Defendants' motions are GRANTED.

I.    AVAILABLITY OF ATTORNEYS' FEES

    The background of the instant action is described in the Court's March 24, 2015 Memorandum and Order granting summary judgment to Defendants. Dkt. No. 101 at 2-5. In connection with that ruling, the Beastie Boys Defendants now seek attorneys' fees for their representation by the law firm Sheppard Mullin. Dkt. No. 107 ("BB Br.") at 11. The Beastie Boys have been billed by their attorneys and "have agreed to pay the fees . . . whether or not Sheppard Mullin is successful in this motion." Dkt. No. 119 ¶ 2. Similarly, the UMG

1

Defendants seek attorneys' fees for their representation by the law firm Jenner & Block. Dkt. No. 104 ("UMG Br.") at 10. The UMG Defendants have already paid their attorneys in full. Dkt. No. 105 ("Bart Decl.") ¶ 14.

### A. Legal Standard

Section 505 of the Copyright Act provides that

> [i]n any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party[1] as part of the costs.

17 U.S.C. § 505.

As the text of the statute indicates, "[a]n award of attorney's fees and costs is not automatic but rather lies within the sole and rather broad discretion of the Court." *Baker v. Urban Outfitters, Inc.*, 431 F. Supp. 2d 351, 357 (S.D.N.Y. 2006) *aff'd*, 249 F. App'x 845 (2d Cir. 2007) (citing *Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1011 (2d Cir. 1995)). The crux of the analysis in awarding fees or costs under section 505 is whether doing so furthers the purposes of the Copyright Act. *See Matthew Bender & Co. v. W. Publ'g. Co.*, 240 F.3d 116, 124-25 (2d Cir. 2001) (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

Although "[t]here is no precise rule or formula for making [attorneys' fees] determinations," the Supreme Court has identified "frivolousness, motivation, objective unreasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence" as relevant factors. *Fogerty*, 510 U.S. at 534 & n.19 (first quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436–437 (1983); then quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986)). The

---

[1] The parties do not dispute that Defendants were the "prevailing party" for purposes of this motion.

Second Circuit and other courts have afforded "substantial weight" to the objective reasonableness factor in particular. *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (citing *Matthew Bender & Co.*, 240 F.3d at 121-22 (collecting cases)). In fact, objective unreasonableness alone is sufficient to award attorneys' fees and costs. *See Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47, 52 (S.D.N.Y. 1994) (Sotomayor, J.) (fees may be awarded "once the court finds that the plaintiff's claim was objectively unreasonable").

Claims are objectively unreasonable if they "have no legal or factual support." *Viva Video, Inc. v. Cabrera*, 9 F. App'x 77, 80 (2d Cir. 2001); *see also Silberstein v. Fox Entm't Grp., Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008) (quoting *Penguin Books U.S.A. Inc. v. New Christian Church of Full Endeavor, Ltd.*, 96-CV-4126 (RWS), 2004 WL 728878, at *3 (S.D.N.Y. Apr. 6, 2004)) ("[C]ourts of this Circuit have generally concluded that . . . claims that are clearly without merit or . . . devoid of legal or factual basis ought to be deemed objectively unreasonable."). However, the "mere fact that a [party] has prevailed does not necessarily equate with an objectively unreasonable claim." *Berry v. Deutsche Bank Trust Co. Ams.*, 632 F. Supp. 2d 300, 305 (S.D.N.Y.2009) (quotation marks and alteration omitted). Indeed, the purposes of the Copyright Act are served when "close infringement cases are litigated." *Lotus Dev. Corp. v. Borland Int'l, Inc.*, 140 F.3d 70, 75 (1st Cir. 1998). For this reason, district courts are disinclined to award fees in cases that are close calls or which present novel legal issues or theories. *See, e.g., Earth Flag Ltd. v. Alamo Flag Co.*, 154 F. Supp. 2d 663, 666 (S.D.N.Y. 2001); *Canal+ Image UK Ltd. v. Lutvak*, 792 F. Supp. 2d 675, 683 (S.D.N.Y. 2011).

**B. Discussion**

The issue in dispute at the summary judgment stage of this action was Plaintiff's standing to enforce the copyright in question. Under the Copyright Act, holders of an exclusive

3

license may sue for copyright infringement, while holders of a nonexclusive license may not. *See Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27, 32-33 & n.3 (2d Cir. 1982) (citing 17 U.S.C. § 501(b)); *John Wiley & Sons, Inc. v. DRK Photo,* 998 F. Supp. 2d 262, 277 (S.D.N.Y. 2014) (quoting *Davis v. Blige*, 505 F.3d 90, 100-01 (2d Cir. 2007). It is a well-established principle of copyright law that "a co-owner cannot unilaterally grant an exclusive license." *Davis*, 505 F.3d at 101 (citing *Maurel v. Smith*, 271 F. 211, 216 (2d Cir. 1921)). Relatedly, "[w]here . . . an agreement transfers nothing more than a bare right to sue . . . [it] cannot be the basis for standing under the Copyright Act." *John Wiley & Sons,* 998 F. Supp. 2d at 280-81 (internal quotation marks omitted).

Ultimately, the Court granted summary judgment to Defendants. Dkt. No. 101 at 10. In support of this conclusion, the Court noted that one co-owner of the copyright was not a signatory to one agreement purporting to convey an exclusive license to Plaintiff. *Id.* at 7. With respect to the other agreement purporting to convey an exclusive license, the Court observed that the agreement conveyed a bare right to sue, *id.* at 9, and that as a result, Plaintiff did not have an exclusive license and thus lacked standing. *Id.* at 9-10.

Plaintiff claims that it was not objectively unreasonable for it to contend that "its agreement with Dr. Avery did give it standing." Dkt. No. 114 ("Opp. Br.") at 5. Essentially, Plaintiff argues that it intended for the agreement to convey an exclusive license, and the fact that the agreement "failed in its wording to accomplish its goal does not mean that [Plaintiff] was acting unreasonably." *Id.* This position is unpersuasive given the Court's summary judgment ruling that "the clear and unambiguous intent of the parties to assign the bare right to sue permeates nearly every provision of the agreement." Dkt. No. 101 at 9. In light of the well-settled principle of law that "an agreement transfer[ring] nothing more than a bare right to sue . .

4

. cannot be the basis for standing under the Copyright Act," *John Wiley & Sons,* 998 F. Supp. 2d at 280 (internal quotation marks omitted), the Court now concludes that the deficiencies of the agreements cited by Plaintiff as conveying an exclusive license were readily apparent, rendering its claim "clearly without merit" and "objectively unreasonable." *Silberstein,* 536 F. Supp. 2d at 444 (quoting *Penguin Books U.S.A.,* 2004 WL 728878, at *3).

Plaintiff also argues that an award of attorneys' fees "would not serve the purposes of the Copyright Act" because, despite Plaintiff's standing issue, Defendants "unlawfully used [the relevant] recordings without permission or license." Opp. Br. at 8-9. The Court did not reach the substantive copyright infringement question in its summary judgment order, *see* Dkt. No. 101, and thus has not ruled on the lawfulness of Defendants' actions. Furthermore, the Court finds that the purposes of the Copyright Act are furthered by deterring the filing and pursuit of lawsuits in which chain of title has not been adequately investigated by the plaintiff. For these reasons, the Court finds that an award of attorneys' fees under section 505 is justified. *See Maljack Prods., Inc. v. GoodTimes Home Video Corp.,* 81 F.3d 881, 885, 890 (9th Cir. 1996) (awarding fees under the Copyright Act where plaintiff's standing argument was objectively unreasonable); *see also Contractual Obligation Prods., LLC v. AMC Networks, Inc.,* 546 F. Supp. 2d 120, 126 (S.D.N.Y. 2008) (same).

## II.   CALCULATING THE APPROPRIATE FEE AWARD

Section 505 of the Copyright Act permits the Court to "award a reasonable attorney's fee to the prevailing party." 17 U.S.C. § 505. "The party seeking fees bears the burden of demonstrating that its requested fees are reasonable." *Abel v. Town Sports Int'l, LLC,* No. 09-CV-10388 (DF), 2012 WL 6720919, at *26 (S.D.N.Y. Dec. 18, 2012) (citing *Blum v. Stenson,* 465 U.S. 886, 897 (1984). "Both [the Second Circuit] and the Supreme Court have held that the

lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. Cty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). The Court will first evaluate the "reasonable number of hours required by the case," and will then turn to the "reasonable hourly rate" before calculating the resulting reasonable fee.

### A. Reasonable Number of Hours

To receive attorneys' fees, a party "must document [its] application with contemporaneous time records . . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983). From this, the Court makes "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" *Reiter v. Metro. Transp. Auth. of State of N.Y*, No. 01-CV-2762 (GWG), 2007 WL 2775144, at *9 (S.D.N.Y. Sept. 25, 2007) (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). When confronted with questionable documentation, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application,'" *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (quoting *Carey*, 711 F.2d at 1146). Similarly, courts can deduct a percentage of the total number of hours to account for overbilling and "duplicative or repetitive work." *LV v. New York City Dep't of Educ.*, 700 F. Supp. 2d 510, 524 (S.D.N.Y.

2010) (quoting *Simmonds v. New York City Dep't of Corr.*, No. 06-CV-5298 (NRB), 2008 WL 4303474, at *6 (S.D.N.Y. Sept. 16, 2008).

### 1. Beastie Boys Defendants

The Beastie Boys Defendants seek recovery for "1,155.4 hours of work by Sheppard Mullin attorneys and litigation support staff."[2] Dkt. No. 108 ("Max Decl.") ¶ 37. In support of its motion, the Beastie Boys Defendants provide attorney invoices and fee detail from November 2012 through March 2015, as well as a summary chart. *Id.* Ex. V, Ex. W. The contemporaneous records specify the initials of the attorney who performed the work, the date on which the work was performed, the hours expended to the nearest tenth of an hour, and a description of the work done. *Id.* Ex. V. For example, on September 4, 2012, partner Theodore C. Max spent 1.1 hours on "Follow-up up with K. Talcott, counsel for TufAmerica regarding extension of time to answer and status of service of other parties; email to K. Talcott regarding proposed extension of time to answer or otherwise move." *Id.* at 5.

Plaintiff argues that "time records provided by defendants are replete with examples of block billing." Opp. Br. at 11. Block billing, defined as "aggregating multiple tasks into one billing entry," is "not prohibited," but may "make it exceedingly difficult for courts to assess the reasonableness of the hours billed." *LV*, 700 F. Supp. 2d at 525 (quoting *Wise v. Kelly*, 620 F. Supp. 2d 435, 450 (S.D.N.Y. 2008) (internal quotation marks omitted). For this reason, block billing combined with vague descriptions in the "sparest of terms," *id.*, can justify the deduction of "a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat

---

[2] Partner Kenneth Anderson billed 323.9 hours, partner Theodore C. Max billed 422.5 hours, partner Edwin Komen billed 13 hours, associate Valentina Shenderovich billed 165.4 hours, associate Thomas Monahan billed 127.2 hours, associate Valerie Alter billed 21.5 hours, associate Tyler Baker billed 13.5 hours, paralegal Lisa Rodriguez billed 35.5 hours, managing clerk Brian Simpson billed 26.4 hours, and litigation support specialist Giles Mitchell billed 6.5 hours. BB Br. at 12-13 & n. 6, 7; Dkt. No. 108 ("Max Decl.") Ex. W.

from a fee application.'" *Kirsch*, 148 F.3d at 173 (quoting *Carey*, 711 F.2d at 1146); *see also LV*, 700 F. Supp. 2d at 525 (reducing hours for vague block billing entries like "meeting" and "conference"); *Soler v. G & U, Inc.*, 658 F. Supp. 1093, 1098–99 (S.D.N.Y.1987) (reducing hours for vague block billing entries like "outline," "writing," and "research").

Having carefully reviewed the time records from the Beastie Boys Defendants' attorneys, the Court concludes that vagueness and block billing do not require a substantial reduction here. Most of the Sheppard Mullin time entries are not described in the "sparest of terms" but instead contain considerable detail. *See LV*, 700 F. Supp. 2d at 526; *see also* Max Decl. Ex. V-1. at 20 ("Coordinated retrieval of complaint and briefs for Tuff N Rumble. Reviewed and summarized all Second Circuit cases regarding standard for establishing and/or negating substantial similarity. Attended meeting with K. Anderson and T. Max regarding infringing songs. Conducted preliminary research regarding judicial admissions."); *Id*. at 24 ("Reviewed, proofed, and revised memorandum of law in support of motion to dismiss TufAmerica's complaint. Conferred with T. Max."). Perhaps unavoidably, some entries have less detail or cover longer periods of time. *See id*. Ex. V-2 at 15 (2 hour entry with description: "Reviewed case status. Prepared for meeting with Ted Max"). As a result, the Court will "deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application.'" *Kirsch*, 148 F.3d at 173 (quoting *Carey*, 711 F.2d at 1146). The Court has chosen a modest deduction of 5% because the majority of the attorneys' time appears to be well-documented and accounted for in detail.

The potential for duplicative work also requires consideration. Here, Sheppard Mullin, representing the Beastie Boys Defendants, and Jenner & Block, representing the UMG Defendants, acted as co-counsel. UMG Br. at 12. Although counsel made admirable efforts to

avoid duplicative work (for example, Sheppard Mullin drafted the motion to dismiss while Jenner & Block drafted the motion for summary judgment, *see id.*), "duplication of effort" and "inefficiencies" arising from the co-counsel relationship were likely "inevitable, if unintentional." *See LV*, 700 F. Supp. 2d at 525. In recognition of these inefficiencies, the Court will make a modest reduction of 5% of hours.

In sum, to arrive at a reasonable number of hours for the Beastie Boys Defendants' attorneys' fees award, the Court will reduce by 10% the amount of hours billed by Sheppard Mullin. As a result, the Beastie Boys Defendants may be compensated for 291.51 hours of work from Anderson, 380.25 hours from Max, 11.7 hours from Komen, 149.31 hours from Shenderovich, 114.48 hours from Monahan, 19.35 hours from Alter, 12.15 hours from Baker, 31.95 hours from Rodriguez, 23.76 hours from Simpson, and 5.85 hours from Mitchell, for a total of 1039.86 hours.

## 2. UMG and Capitol Records

The UMG Defendants seek recovery for 464.6 hours of work by Jenner & Block attorneys and support staff.[3] Bart Decl. Ex. S. Like the Beastie Boys Defendants, the UMG Defendants provide attorney invoices and fee detail from Jenner & Block dating from January 2013 to November 2014 in support of their fee application. *Id.* Ex. R. As a general matter, Jenner & Block's time records are less detailed than those of Sheppard Mullin. *See, e.g., id.* at 18 (three entries for "emails"); *id.* at 30 (four entries for "emails"); *see also Soler*, 658 F. Supp. at 1098–99 (reducing hours for block billing entries like "outline," "writing," "research"). In light of the sparser descriptions, which "make it . . . difficult for courts to assess the

---

[3] Andrew Bart billed 118.5 hours, Carletta Higginson billed 15.1 hours; Nathaniel Benforado billed 309.3 hours, Mark Scholl billed 13.7 hours, Judy Lao billed 1.7 hours, Rebecca Miller billed 1.9 hours, Steven Englund billed .3 hours, Ryan Gerber billed 3.3 hours, Paul Ramonas billed .3 hours, and Francis Aul billed .5 hours. *See* Bart Decl. Ex. S.

reasonableness of the hours billed," *LV*, 700 F. Supp. 2d at 525 (quoting *Wise*, 620 F. Supp. 2d at 450) (internal quotation marks omitted), the Court will deduct 10% from "the number of hours claimed [by Jenner & Block] 'as a practical means of trimming fat from [the UMG Defendants'] fee application.'" *Kirsch*, 148 F.3d at 173 (quoting *Carey*, 711 F.2d at 1146). As discussed above, the Court will also deduct 5% of hours to reflect "inevitable, if unintentional" duplication of efforts with co-counsel. *See LV*, 700 F. Supp. 2d at 525.

Thus, to arrive at a reasonable number of hours for the UMG Defendants' attorneys' fees award, the Court will make a total 15% reduction of hours billed by Jenner & Block. As a result, the UMG Defendants may recover for 100.725 hours of work from Bart, 12.835 hours from Higginson, 262.905 hours from Benforado, 11.645 hours from Scholl, 1.445 hours from Lao, 1.615 hours from Miller, .255 hours for Englund, 2.805 hours from Gerber, .255 hours from Ramonas, and .425 hours from Aul, for a total of 394.91 hours.

### B. Reasonable Hourly Rate

An attorney's reasonable hourly rate is what "a reasonable, paying client would be willing to pay." *Arbor Hill*, 522 F.3d at 184. For the purpose of an award of attorneys' fees, this rate must be "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Miroglio S.P.A. v. Conway Stores, Inc.*, 629 F. Supp. 2d 307, 314 (S.D.N.Y. 2009) (quoting *Reiter v. MTA N.Y. City Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006)). In determining this rate, the Court "consider[s] factors including, but not limited to, the complexity and difficulty of the case, . . . the resources required to prosecute the case effectively, . . . the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation . . . and other returns (such as reputation, etc.) that an attorney might expect from the representation."

10

*Arbor Hill*, 522 F.3d at 184. The Court also considers the *Johnson* factors laid out in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[4] *See Arbor Hill*, 522 F.3d at 186 n.3.

### 1. Rates for Beastie Boys Defendants' Attorneys

The Beastie Boys Defendants request rates of $675 per hour for partners Anderson and Max, $678.23 per hour for partner Komen, $404.92 per hour for associate Shenderovich, $460 per hour for associate Monahan, $560 per hour for associate Alter, $455.67 per hour for associate Baker, $255.51 per hour for paralegal Rodriguez, $202.80 per hour for managing clerk Simpson, and $206.85 per hour for litigation support specialist Mitchell, discounted across the board by $10,000. *See* Max. Decl. Ex. W. The Court finds that the hourly rates sought by the Beastie Boys Defendants for Sheppard Mullin partners Anderson, Max, and Komen are reasonable. Not only are these rates below the partners' customary hourly rates, *see* BB Br. at 14 n.8, but they are also in the range of fees recently authorized for similarly experienced attorneys in this district. *See Regulatory Fundamentals Grp. LLC v. Governance Risk Mgmt. Compliance, LLC*, No. 13-CV-2493 (KBF), 2014 WL 4792082, at *2 (S.D.N.Y. Sept. 24, 2014) ("In recent years, New York district courts have approved rates for experienced law firm partners in the range of $500 to $800 per hour."); Max Decl. ¶ 39 (surveys indicate the average hourly rate for a New York-based partner is $883.18). As a result, the Court is satisfied that these rates are reasonable. *See Miroglio*, 629 F. Supp. 2d at 315-16 (billing below customary hourly rate is reasonable); *Regulatory Fundamentals Grp. LLC*, 2014 WL 4792082, at *3 ($700 hourly fee is reasonable).

---

[4] The *Johnson* factors include:
(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.
*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717-19).

The requested rates for associates, however, require adjustment. Data provided by Defendants suggests that the average hourly rate for an associate in New York is $531.21, *see* Max Dec. ¶ 39, a figure slightly higher than suggested by recent cases from this district. *See Mahan v. Roc Nation, LLC*, No. 14-CV-5075 (LGS), 2015 WL 4388885, at *1, *3 (S.D.N.Y. July 17, 2015) (approving associate rates between $460 and $565); *see also Regulatory Fundamentals Grp. LLC*, 2014 WL 4792082, at *3 (approving associate rates between $325 and $390). Given these figures, the $560 rate requested for Alter, a senior associate who has been with the firm since 2005, is reasonable. *See* BB Br. at 13 n.7. However, rates requested for the other, more junior, associates are too high. Shenderovich and Baker began working on the case just over a year after their graduation from law school, while Monahan had one additional year of experience. *See* BB Br. at 12, 13 & n.7; Max. Decl. Ex. V-1 at 7, 12, 58. Based on rate data presented by Defendants, rates recently approved by courts in this district, and the different levels of experience of the junior associates, the Court will approve rates of $375 for Shenderovich and Baker, and $425 for Monahan.

Similarly, the requested support staff rates require adjustment. The Beastie Boys Defendants provide little information on the prevailing rates for support staff; their supporting declaration merely indicates that the requested rates are "equivalent or comparable to the prevailing rates charged for the time of similarly experienced" staff in other New York law firms. Max Dec. ¶¶ 34-36. Recent cases in this district suggest that the prevailing rate for paralegals is between $100 and $200 per hour. *See Regulatory Fundamentals Grp. LLC*, 2014 WL 4792082, at *3 (collecting cases affording a paralegal rate around $125). Based on the levels of experience of the support staff, *see* Max Decl, ¶¶ 34-36, the Court will reduce the

12

allowable billing amount for the support staff to $175 per hour for Rodriguez and $150 per hour for Simpson and Mitchell.

### 2. Rates for UMG Defendants' Attorneys

The UMG Defendants request rates of $715.44 for Bart, $572.71 for Higginson, $476.17 for Benforado, $220.69 for Scholl, $225 for Lao, $190 for Miller, $743 for Englund, $270 for Gerber, $225 for Ramonas, and $190 for Aul.[5] Bart Decl. Ex. S. Partners Bart and Higginson, along with senior associate Benforado, were the primary attorneys on the case, while the other individuals were "paralegals and other support staff . . . supervised by the primary attorneys." Bart Decl. ¶ 17.

The Court finds that rates charged by primary attorneys Bart, Higginson, and Benforado are reasonable, as those rates are well within the range of approved rates for attorneys with similar experience in this district. *See Mahan*, 2015 WL 4388885, at *1; *Regulatory Fundamentals Grp. LLC*, 2014 WL 4792082, at *3. However, the UMG Defendants have not provided enough information about the "paralegals and other support staff" to justify the requested rates. Although the Court is satisfied that the work of these individuals is sufficiently documented, Defendants do not explain with any specificity what position these individuals have at the firm.[6] Because "[t]he party seeking fees bears the burden of demonstrating that its requested fees are reasonable," *see Abel*, 2012 WL 6720919, at *26, the Court will limit recovery for unspecified "support staff" to the $150 paralegal rate approved above.

---

[5] These average rates, which include all discounts given to the UMG Defendants, are derived from the table of data provided in Exhibit S.
[6] From the rates described, these individuals may be junior associates, paralegals, or other support staff. In fact, one individual for whom a rate of $743 is requested appears to be a partner. *See* Bart Decl. Ex. S.

13

### C. Lodestar Calculation

"[T]he lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—creates a 'presumptively reasonable fee.'" *Millea*, 658 F.3d at 166 (quoting *Arbor Hill*, 522 F.3d at 183). Based on the analysis above, the Court calculates approved attorneys' fees for the Beastie Boys Defendants and UMG Defendants as described below.

**BEASTIE BOYS DEFENDANTS' ATTORNEYS' FEES**

| Individual | Approved Hours | Approved Hourly Rate | Resulting Fee |
|---|---|---|---|
| Anderson | 291.51 | $675.00 | $196,769.25 |
| Max | 380.25 | $675.00 | $256,668.75 |
| Komen | 11.7 | $678.23 | $7,935.29 |
| Shenderovich | 148.86 | $375.00 | $55,822.50 |
| Monahan | 114.48 | $425.00 | $48,654.00 |
| Alter | 19.35 | $560.00 | $10,836.00 |
| Baker | 12.15 | $375.00 | $4,556.25 |
| Rodriguez | 31.95 | $175.00 | $5,591.25 |
| Simpson | 23.76 | $150.00 | $3,564.00 |
| Mitchell | 5.85 | $150.00 | $877.50 |
| | | **Total approved fees:** | **$591,274.79** |

**UMG DEFENDANTS' ATTORNEYS' FEES**

| Individual | Approved Hours | Approved Hourly Rate | Resulting Fee |
|---|---|---|---|
| Bart | 100.725 | $715.44 | $72,062.69 |
| Higginson | 12.835 | $572.71 | $7,350.73 |
| Benforado | 262.905 | $476.17 | $125,187.47 |
| Scholl | 11.645 | $150.00 | $1,746.75 |
| Lao | 1.445 | $150.00 | $216.75 |
| Miller | 1.615 | $150.00 | $242.25 |
| Englund | 0.255 | $150.00 | $38.25 |
| Gerber | 2.805 | $150.00 | $420.75 |
| Ramonas | 0.255 | $150.00 | $38.25 |
| Aul | 0.425 | $150.00 | $63.75 |
| | | **Total approved fees:** | **$207,367.65** |

In addition to these fees spent litigating the motion to dismiss and summary judgment stages of the case, the UMG Defendants have requested an additional $33,102.50 in attorneys' fees for 83.3 hours of work spent preparing their motion for fees. *See* Dkt. No. 121 & Ex. B; *see also Miroglio*, 629 F. Supp. 2d at 314 (permitting party "to recover its fees for the hours spent preparing the application for costs and fees"). For the reasons stated above, the Court will deduct 15% from the total hours billed by Jenner & Block for work on this motion, approve the rates charged by Bart and Benforado,[7] and limit recovery for other individuals to the $150 paralegal rate. The approved fees are detailed below.

| Individual | Approved Hours | Approved Hourly Rate | Resulting Fee |
|---|---|---|---|
| Bart | 9.435 | $747 | $7,047.95 |
| Benforado | 38.165 | $510 | $19,464.15 |
| Covarrubias | 2.805 | $150 | $420.75 |
| Lao | 1.36 | $150 | $204.00 |
| Miller | 1.105 | $150 | $165.75 |
| | | **Total fees:** | **$27,302.60** |

### III. COSTS

The Second Circuit has consistently "held that attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *U.S. Football League v. Nat'l Football League,* 887 F.2d 408, 416 (2d Cir. 1989); *accord LeBlanc-Sternberg v. Fletcher,* 143 F.3d 748, 763 (2d Cir. 1998). The Beastie Boys Defendants seek $11,553.29 in costs, while the UMG Defendants request $8,098.90 in costs. Dkt. No. 118 at 8 n.3; Dkt. No. 120 at 9 & n.10. These costs generally include mailing, postage, printing, legal

---

[7] Although Bart and Benforado's rates have increased since the summary judgment briefing in 2014, the Court finds that the increased rates remain within the range of rates for attorneys with similar experience in this district. *See Mahan,* 2015 WL 4388885, at *1; *Regulatory Fundamentals Grp. LLC,* 2014 WL 4792082, at *3.

research, and deposition-related expenses. Bart. Decl. Ex. W; Max Decl. Ex. X; Dkt. No. 119 Ex. 1.

Plaintiff contests these costs on two grounds. First, Plaintiff argues that the UMG Defendants' "Court Reporter Charges" and the Beastie Boys Defendants' "Aaron Fuchs" charges are insufficiently documented. Opp. Br. at 15. Despite Plaintiff's allegations, the Court is satisfied that Defendants' have adequately documented these deposition-related expenses. *See* Bart. Decl. Ex. W; Dkt. No. 119 Ex. 1; Dkt. No. 121 Ex. C.

Second, Plaintiff argues that costs related to one video-recorded deposition are improper because Defendants did not use that deposition as evidence in support of their motion for summary judgment. Opp. Br. at 15. Unlike the more limited costs recoverable under 28 U.S.C. § 1920, costs recoverable under section 505 of the Copyright Act include any "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *U.S. Football League,* 887 F.2d at 416. Plaintiff points to no authority suggesting that discovery costs incurred to obtain evidence not ultimately presented to the Court are not recoverable costs under section 505. As a result, the Court finds that costs associated with the video-deposition represent "reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients" and are thus recoverable costs. *Id.*

For these reasons, the Court awards Defendants' their requested costs.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motions for fees are GRANTED. The Beastie Boys Defendants are awarded $591,274.79 in attorneys' fees and $11,553.29 in costs. The UMG Defendants are awarded $234,670.25 in attorneys' fees and $8,098.90 in costs.

The Clerk of Court is directed to close the case.

SO ORDERED.

Dated: March \_\_9\_\_, 2016
       New York, New York

_____
ALISON J. NATHAN
United States District Judge