UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



TufAmerica Inc.,

        Plaintiff,

—v—

Michael Diamond et al.,

        Defendants.

12-CV-3529 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

In the Court's July 12, 2016 Memorandum and Order granting in part and denying in part Plaintiff's motion for reconsideration, the Court called for supplemental briefing on two issues. First, in light of the Court's decision to allow reconsideration to account for the relative financial strength of the parties, the parties were asked to submit their proposals on the appropriate amount of the fee award. Dkt. No. 136 at 6. Second, the Court called for additional briefing on the impact, if any, of the Supreme Court opinion in *Kirtsaeng v. John Wiley & Sons, Inc.*, which was issued on the same day in which briefing of the motion for reconsideration was completed. *Id.* The Court now addresses these supplemental submissions.

For the following reasons, the Court enters an adjusted fee award of $450,000.

I. **Background**

The Court assumes the parties' familiarity with the facts and history of this case. For the purposes of the issues presented by this motion, the following synopsis will suffice.[1]

Plaintiff filed this copyright infringement action on May 3, 2012. Dkt. No. 1. On September 10, 2013, the Court granted Defendants' motion to dismiss with respect to four of

---

[1] For more detail, see the Court's September 10, 2013 Opinion & Order, Dkt. No. 43, and March 24, 2015 Memorandum & Order, Dkt. No. 101.

1

Plaintiff's six claims. Dkt. No. 43. On March 24, 2015, the Court granted Defendants' motion for summary judgment on Plaintiff's remaining claims. Dkt. No. 101. Shortly thereafter, Defendants Michael Diamond, Adam Horovitz, the Estate of Adam Yauch, and Brooklyn Dust Music (the "Beastie Boys Defendants") and Universal-Polygram International Publishing, Inc. and Capitol Records, LLC (the "UMG Defendants") moved for attorney's fees and costs pursuant to Section 505 of the Copyright Act and Federal Rule of Civil Procedure 54. Dkt. Nos. 103, 106.

On March 9, 2016, the Court granted Defendants' motions, collectively awarding them approximately $845,000 in total costs and fees. Dkt. No. 124 at 16. In that opinion, the Court held that Plaintiff's arguments with respect to standing were "objectively unreasonable." *Id.* at 3-5.

Plaintiff then retained new counsel, who filed a motion for reconsideration of the Court's grant of attorney's fees. Dkt. No. 128. Plaintiff made three arguments in support of its motion for reconsideration. Dkt. No. 136 at 2-6. The Court was persuaded by one of these arguments – that the Court should reconsider the amount of its fee award based on Plaintiff's weak financial position. *Id.* at 4-6. The Court concluded that it will "likely adjust downward" from its previous fee award, *id.* at 5 (internal quotation marks and edits omitted), and called upon the parties to attempt to agree on the appropriate fee awards, or "to submit proposals to the Court on the appropriate amount of a fee award in light of the Court's decision to allow reconsideration on this point." *Id.* at 6. The parties submitted such proposals, see Dkt. Nos. 145-46, 150-51, 153, and these proposals are now before the Court.

Additionally, on the same day on which the parties concluded briefing Plaintiff's motion for reconsideration, the Supreme Court issued its opinion in *Kirtsaeng v. John Wiley & Sons, Inc.*

2

136 S. Ct. 1979 (2016). Because the parties had not had the opportunity to brief the Court on *Kirtsaeng*'s effects on the fees and costs award in this matter, the Court invited additional briefing on that question. Dkt. No. 136 at 6. The parties filed submissions on *Kirtsaeng*'s effects, Dkt. Nos. 144, 149, 153, and this too is presently before the Court.

## II. Discussion

### a. Reconsideration Based Upon *Kirtsaeng*

Plaintiff's standing to enforce the copyright in question was the central disputed issue at summary judgment, the stage of this litigation for which attorney's fees were awarded. Under the Copyright Act, holders of an exclusive license may sue for infringement, while holders of a nonexclusive license may not. 17 U.S.C. § 501(b). It is a well-established principle of copyright law that a "co-owner cannot unilaterally grant an exclusive license," *Davis v. Blige*, 505 F.3d 90, 101 (2d Cir. 2007) (citation omitted), while an agreement that "transfers nothing more than a bare right to sue...cannot be the basis for standing under the Copyright Act." *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 280-81 (S.D.N.Y. 2014) (internal quotation marks and citation omitted), *appeal docketed*, No. 15-1134 (2d Cir. Apr. 9, 2015). The Court granted summary judgment to Defendants based on Plaintiff's lack of standing, noting that one co-owner of the copyright was not a signatory to the agreement purporting to convey an exclusive license to Plaintiff. Dkt. No. 101 at 7. Rather, Plaintiff had a "bare right to sue" from that third co-owner, Dr. James Avery, thus vitiating an exclusive license and, in turn, Plaintiff's standing. *Id.* at 9-10.

The Court found that Plaintiff acted unreasonably in bringing suit given that the "clear and unambiguous intent" of this third co-owner "to assign the bare right to sue permeates nearly every provision of the agreement." *Id.* at 9. In light of the well-established principle that a "right

3

to sue" cannot be the basis for standing, the Court concluded that these apparent deficiencies rendered Plaintiff's claim "clearly without merit" and "objectively unreasonable." Dkt. No. 124 at 5 (quoting *Silberstein v. Fox Entm't Grp., Inc.*, 536 F. Supp. 2d 440, 444 (S.D.N.Y. 2008) (internal quotation marks and citation omitted)).

In this Court's initial decision on whether to grant attorney's fees under Section 505, the Court identified all of the relevant factors under *Fogerty v. Fantasy, Inc.*, including "frivolousness, motivation, objective reasonableness (both in the factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Dkt. No. 124 at 2 (quoting 510 U.S. 517, 534 & n.19 (1994)). However, the Court's analysis focused almost entirely on "objective reasonableness," which, the Court noted, had been considered sufficient alone to award fees by courts in this circuit. *Id.* at 3 (citing *Screenlife Establishment v. Tower Video, Inc.*, 868 F. Supp. 47, 52 (S.D.N.Y. 1994) (Sotomayor, J.)).

In *Kirtsaeng*, the Supreme Court was asked to consider how much weight to place on the "objective reasonableness" of a losing party's litigating position. The Supreme Court held that courts should "give substantial weight to the objective reasonableness" because that would "predictably encourage…useful copyright litigation" that furthers the Copyright Act's goals. 136 S. Ct. at 1983, 1986. However, the Supreme Court also held that courts must "give due consideration to all other circumstances relevant to granting fees." *Id.* at 1983. Ultimately, "§ 505 confers broad discretion on district courts and, in deciding whether to fee-shift, they must take into account a range of considerations beyond the reasonableness of litigating positions." *Id.* at 1988.

Given *Kirtsaeng*'s directive that "objective reasonableness" be given "substantial weight" but that district courts "give due consideration to all other circumstances relevant to granting fees," the Court now analyzes the remaining factors. 136 S. Ct. at 1983. Plaintiff argues that under a more extensive analysis pursuant to *Kirtsaeng*, the Court should vacate its award of attorney's fees to Defendants. Dkt. No. 144.

### i. Frivolousness

While frivolousness and objective reasonableness "are not necessarily coextensive," *see Gordon v. McGinley*, No. 11-CV-1001(RJS), 2013 WL 1455122, at *2 n.3 (S.D.N.Y. Mar. 28, 2013), for the same reasons that the Court previously found Plaintiff's litigation position to be "objectively unreasonable," it also finds the action frivolous. *See, e.g., Bisson-Dath v. Sony Comput. Entm't Am. Inc.*, No. 08-CV-1235(SC), 2012 WL 3025402, at *2 (N.D. Cal. July 24, 2012) (analyzing frivolousness and objective reasonableness together); *Corbis Corp. v. Starr*, No. 3:07-CV-3741, 2010 WL 11561862, at *3 (N.D. Ohio Sept. 3, 2010) (same); *Browne v. Greensleeves Records, Ltd.*, No. 03-CV-7696(MGC), 2005 WL 2716568, at *2 (S.D.N.Y. Oct. 21, 2005) (same). A complaint is frivolous "where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Because Plaintiff's agreement with Dr. Avery clearly only conferred a right to sue and not an exclusive license, Plaintiff's complaint lacked a basis in law.

### ii. Good Faith Motivation

Plaintiff asserts that it had a "good faith belief that it had all the necessary rights in the copyrights at issue to vest it with standing." Dkt. No. 144 at 2. Plaintiff points to communication between Plaintiff's in-house counsel at the time it entered into an agreement with Dr. Avery (the third co-owner of the license) and Plaintiff's counsel in this action, in which Plaintiff's in-house

5

counsel wrote, "I have gotten Avery's signed agreement back allowing us to pursue copyright infringement actions on his behalf. I believe that this provides the final piece to allow an action against the Beastie Boys...." *Id.* at 3 (citing Fuchs Decl. ¶ 36, Ex. A). Plaintiff argues that the Court's ultimate conclusion that this agreement did not support Plaintiff's belief "does not in any way detract from the good faith nature of that belief." *Id.*

The good faith factor does not weigh heavily in either direction. Plaintiff may have held the subjective belief that its agreement with Dr. Avery granted the company grounds to file this action. And even if Plaintiff is a "serial copyright litigant," Dkt. No. 151 at 2, it does not automatically follow that this claim was brought for improper purposes.

However, neither does the overall context of this litigation suggest a clear good faith motivation. Plaintiff's earlier actions in this matter undermine its present claim of good faith. While the Court never reached the merits of the substantive copyright infringement question, Defendants have persuasively argued that Plaintiff was not diligent in investigating its claims before bringing this action. *See* Dkt. No. 104 at 2-5; Dkt. No. 149 at 2, 4. Additionally, as the Court previously noted in the context of deterrence that "chain of title ha[d] not been adequately investigated by the plaintiff." Dkt. No. 124 at 5. These failures undermine Plaintiff's claim to good faith, as a litigant cannot remain willfully ignorant and then use that ignorance to its advantage. If Plaintiff were clearly acting in good faith, it likely would have undertaken further investigation. It is no mere coincidence that in each case cited by Plaintiff in which the court had found good faith motivation, the court had also found that the losing party's position was *not* unreasonable.

Overall, the Court concludes that this factor does not militate strongly in either direction.

### iii. Need to Advance Considerations of Compensation and Deterrence

In the Court's first decision to award attorney's fees to Defendants, the Court found 'that the purposes of the Copyright Act are furthered by deterring the filing and pursuit of lawsuits in which chain of title has not been adequately investigated by the plaintiff." *Id.* Plaintiff attempts to create space between its actions and those of its attorney by arguing that its belief was "grounded upon an assertion by its attorneys that the necessary rights had been secured from James Avery" and that requiring a plaintiff "to take steps above and beyond relying on the representations of its counsel in order to ensure that it has the necessary ownership rights in a copyright to file suit would be to impose an undue burden on Plaintiff." Dkt. No. 144 at 5.

Plaintiff cannot escape the consequences of its action by shifting blame, and the Court cannot accept that the blame lies solely at the feet of counsel. Plaintiff has been an active copyright infringement litigant for over twenty years. In another matter in this district, Plaintiff has apparently expressed its satisfaction with counsel's representation in this matter. *See TufAmerica, Inc. v. Codigo Music LLC*, No. 11-CV-1434(ER), 2017 WL 3475499, at *6 (S.D.N.Y. Aug. 11, 2017). And Plaintiff has previously been criticized for its "failure to research properly the law or facts involved in its claims." *See Tuff 'N' Rumble Mgmt., Inc. v. Profile Records, Inc.*, 1997 WL 470114, at *1 (S.D.N.Y. Aug. 15, 1997). In fact, in that same matter, Plaintiff made a similar attempt at shifting the blame onto its attorney. *Id.* at *2. In response, Judge Stein quoted the Supreme Court in *Link v. Wabash R.R. Co.*: "Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Id.* (quoting 370 U.S. 626, 633-34 (1962)). While Judge Stein's award of $40,000 in attorney's fees to the defendants in that matter did not seem to deter Plaintiff from filing a frivolous suit here, the Court will again

attempt to further the purposes of the Copyright Act by deterring inadequately investigated lawsuits.

### iv. Weighing the Factors

When inviting additional briefing, the Court noted that it "does not, as an initial matter, read the Supreme Court's decision as affecting the outcome of the Court's order." Dkt. No. 136 at 6. Now, upon further review, the Court concludes that its award is still warranted under *Kirtsaeng*. In light of the "substantial weight" afforded the Court's original analysis of the "objective reasonableness" of Plaintiff's litigation position, and the relative weakness of Plaintiff's arguments on the other factors considered, the Court finds no reason to vacate its prior decision. Exercising the "broad discretion" that section 505 confers on district courts, the Court maintains its grant of attorney's fees to Defendants.

### b. Reduction in Fees Award

Defendants initially requested approximately $918,000 in attorney's fees and costs in connection with this litigation. *See* Dkt. No. 104 at 10, 13; Dkt. No. 107 at 15. After applying some reductions, the Court awarded approximately $845,000 in fees and costs. Dkt. No. 124 at 16. In its motion for reconsideration, Plaintiff argued that awarding fees of this magnitude would put it out of business. Dkt. No. 129 at 11. In the Court's initial consideration of Plaintiff's argument and the profit and loss statements submitted in support, the Court concluded that it "will likely 'adjust[] downward' from the presumptively reasonable fee calculated in its March 9, 2016 Memorandum and Order, Dkt. No. 124 at 14, to account for 'the relative financial strength of the parties.'" Dkt. No. 136 at 5-6 (quoting *Barclays Capital Inc. v. Theflyonthewall.com*, No. 06-CV-4908(DLC), 2010 WL 2640095, at *6 (S.D.N.Y. June 30, 2010)). The Court asked the

parties to submit their proposals on the appropriate amount of a fee award in light of this decision to allow reconsideration. *Id.* at 6.

Plaintiff argues the Court should adjust the attorneys' fees award down to $50,000. Dkt. No. 145 at 2. This number approximates what TufAmerica represents was its net income in 2015, and slightly less than two months of Plaintiff's average monthly revenues for the last three years. *Id.* The President and sole owner of TufAmerica, Aaron Fuchs, avers that an award greater than $50,000 would likely require the company "to lay off some of its employees and possibly abandon its new offices." Dkt. No. 146 ¶ 33. Plaintiff draws a comparison to *Theflyonthewall.com*, in which the court granted a downward adjustment to the equivalent of one month of the defendant's revenue. Dkt. No. 145 at 2-3 (citing 2010 WL 2640095, at *6-7).

Defendants argue that the award should stand unaltered. Dkt. No. 150 at 3. They make three principal arguments. First, they argue that TufAmerica's "willingness to assert baseless legal positions" comes with a price. *Id.* at 2-3, 5. A significant portion of Plaintiff's revenue comes from prosecuting copyright claims. *Id.* at 3 (citing Dkt. No. 108-8 at 153-54). Plaintiff knew that Section 505 of the Copyright Act makes attorney's fees available to the prevailing party – indeed Plaintiff was on the losing end of that provision in 1997, as described above – and so assumed that risk in bringing the lawsuit. *Id.* And so, Defendants argue, TufAmerica should not "be allowed to reap the benefits…and to simultaneously escape liability by pleading poverty when baseless claims impose needless costs upon innocent third parties." *Id.*

Second, Defendants argue that Plaintiff bases its claims of financial distress on profit-and-loss statements, which, unlike balance sheets, "reveal nothing about the existence of assets out of which TufAmerica might be able to pay the fee award." *Id.* at 4. They note that these

9

statements are "uncertified and unaudited," and that Defendants have not been given the opportunity to conduct discovery on Plaintiff's financial state. *Id.*

Finally, Defendants highlight that Plaintiff seeks a 94% reduction in the award, which, unlike the 39% reduction in *Theflyonthewall.com*, would fail to compensate Defendants "who paid counsel fees in excess of the fee award," and would be insufficient to advance the goals of the Copyright Act in deterring the filing of frivolous claims in the future. *Id.* at 4-5.

As Judge Cote stated in *Theflyonthewall.com*, even after the "presumptively reasonable fee" is calculated, a fee award may be adjusted based on the relative financial strength of the parties. 2010 WL 2640095, at *6 (citing *Toliver v. Cty. of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992)). Nonetheless, while the economic disparities between the parties are considerable, the fee award must still be sufficient to accomplish the goals of Section 505 fee awards, namely "considerations of compensation and deterrence." *Fogerty*, 510 U.S. at 534 n. 19 (quoting *Lieb v. Topstone Indus., Inc.*, 788 F.2d 151, 156 (3d Cir. 1986) (internal quotation marks omitted)); *accord Vargas v. Transeau*, No. 04-CV-9772(WHP), 2008 WL 3164586, at *4 (S.D.N.Y. Aug. 6, 2008) ("[T]he court may consider the defeated litigant's economic circumstances to determine whether a lesser sum assessed would [fulfill] the statute's deterrent purpose, without subjecting [the losing party] to financial ruin." (internal quotation marks and citation omitted)).

The Court accepts Plaintiff's profit and loss statements as evidence of the financial hardship it would incur were the fee award imposed unchanged. Despite Defendants' valid concerns about additional, unaccounted assets at Plaintiff's disposal, bankruptcy courts regularly accept profit and loss statements as "financial statements" that reflect a debtor's ability to pay, *see In re Wong*, 291 B.R. 266, 276-77 (Bankr. S.D.N.Y. 2003) (collecting cases), and the Court sees no reason to differ in this context. The statements show approximate total revenues between

$300,000 and $500,000 and total profits approximately between net gains of $85,000 and net losses of $22,000. Dkt. No. 130, Exs. A-C. By contrast, UMG Defendants are self-described as the "world's leading music company," Ex. E, with revenues in 2015 of over 5.1 billion euros, Ex. F. While the source Plaintiff submits as to the Beastie Boys Defendants' net worth is not credible, see Ex. G, it seems safe to assume that a group which sold more than 40 million records is not strained financially.

However, Plaintiff's proposal of $50,000 is baldly insufficient as a deterrent, nor can the Court accept Plaintiff's argument that any higher award would subject it to financial ruin. This litigation has persisted for five years – through the motion to dismiss stage, discovery, summary judgment practice, motions for reconsideration, and more. Based on the profit and loss statements Plaintiff provided, TufAmerica seems to have expended over $80,000 on legal fees in 2015 alone. Dkt. 130, Ex. C. While Plaintiff ostensibly retained the services of counsel for matters beyond this action, the point remains that since TufAmerica was able to locate resources needed to file, escalate, and prolong this frivolous litigation, it can also be expected to locate assets necessary to cover the fees award. *See Harrell v. Van der Plas*, No. 08-CV-8252(GEL), 2009 WL 3756327, at *7 (S.D.N.Y. Nov. 9, 2009). Moreover, given that the $40,000 award of attorney's fees Plaintiff faced in 1997 seemed not to have deterred the "objective unreasonable" litigating position present here, the Court finds that a substantially higher award is both warranted and necessary here.

Upon balancing the equities, the Court concludes that the award of attorney's fees shall be reduced to $450,000. Plaintiff proposed $50,000 as an approximation of Plaintiff's gross *profit* for 2015. Instead, the Court finds that a number more closely approximating Plaintiff's average gross *income* for the years for which profit and loss statements were submitted is

appropriate. This award is sufficient to compensate Defendants' for their trouble, necessary to deter Plaintiff from similarly frivolous future litigation, and appropriate considering the relative financial strength of the parties.

This reduction of approximately 47% from the original award shall be shared in proportion by the two sets of Defendants. However, in recognition of the more extensive work performed by the UMG Defendants in briefing this motion, a modest 1% of the Beastie Boys Defendants' fees award is shifted to the UMG Defendants. Accordingly, the Beastie Boys Defendants are awarded $317,596.94 in total fees and costs, and the UMG Defendants are awarded $132,403.06 in total fees and costs.

### III. Conclusion

For the foregoing reasons, the Court awards the Beastie Boys Defendants $317,596.94 in total fees and costs, and the UMG Defendants $132,403.06 in total fees and costs

The Clerk of Court is directed to enter judgment and close the case.

SO ORDERED.

Dated: January ____, 2018
New York, New York

ALISON J. NATHAN
United States District Judge